**SEALED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80181-RUIZ/REINHART



FILED BY _____PE_____ D.C.

Dec 17, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**          **FILED UNDER SEAL**

vs.

**MINAL PATEL,**
                **Defendant**.
_____/

### GOVERNMENT'S UNOPPOSED MOTION FOR HEARING REGARDING POTENTIAL CONFLICT OF INTEREST

The Government, by and through its undersigned attorneys, files the instant Motion to request a hearing consistent with *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259 (1984) (requiring a hearing to determine whether defendants competently waived their right to conflict-free counsel), and *In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976) (same) to independently consider a potential conflict involving counsel, and make a record of any necessary waiver. [1]

Specifically, counsel from Polsinelli, LLP ("Polsinelli") recently filed an appearance in this case representing Defendant Minal Patel ("Defendant"). Polsinelli also represents James Simmons, a cooperating witness who the government is seeking to meet with in preparation for the Defendant's trial. The government has spoken with counsel from Polsinelli, who—after consulting with their clients and reviewing the appropriate rules—stated that no conflict exists. Nonetheless, counsel from Polsinelli does not oppose this request for a hearing.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Additionally, the parties respectfully request that, if the Court grants this motion and schedules a *Garcia* hearing, that it do so via video/telephonic conference as defense counsel is located out of state and undersigned counsel for the government is unable to travel for a few weeks due to family obligations.[2]

## BACKGROUND

On September 24, 2019, a grand jury in the Southern District of Florida issued an indictment in this case charging Defendant with health care fraud, wire fraud, kickback, and money laundering offenses for his role in owning and operating LabSolutions, LLC, an independent clinical laboratory that billed Medicare and Medicare Advantage Plans approximately $494 million in false and fraudulent claims. *See generally* (ECF Dkt. #1). Defendant is represented by (i) Steven H. Sadow, Esq.; (ii) Donald F. Samuel, Esq.; (iii) Robyn Lynn Sztyndor, Esq.; and (iv), as of October 29, 2021, Brian T. Rafferty, Esq., of Polsinelli (ECF Dkt. #220) (collectively, "Defense Counsel").

In September 2019, a grand jury in the Southern District of Florida issued an indictment charging James Simmons with health care fraud and kickback offenses. On October 11, 2019, Polsinelli, through attorneys Brian F. McEvoy, Esq. and Grace W. Zoller, Esq., appeared on behalf of James Simmons. On February 27, 2020, Mr. Simmons pled guilty to one count of conspiracy to commit health care fraud for his role in referring false and fraudulent genetic tests to laboratories in exchange for kickbacks. *See* **Exhibit 1** (Mr. Simmons's Plea Agreement). According to the Agreed Factual Basis for Guilty Plea, Mr. Simmons owned two telemedicine companies and was paid by patient brokers for consultations with telemedicine doctors that resulted in signed requisition orders for genetic testing. *See* **Exhibit 2** (Mr. Simmons's Agreed Factual Basis for

---

[2] Additionally, as noted in this pleading, James Simmons is incarcerated at FCI Edgefield in South Carolina and will likely have to appear by telephone or video.

Guilty Plea).  Mr. Simmons knew the telemedicine doctors were not treating the beneficiary for any specific medical problem, symptom, illness, or diagnosis, and were not going to use the results in the management of the beneficiary's specific medical problems.  *Id*.  Instead, Mr. Simmons knew the patient brokers sold the doctor's orders to laboratories, who then billed Medicare for the tests, and knew that the laboratories paid kickbacks to the patient brokers based on a set percentage of the amount of the laboratories received from Medicare.  *Id*.

On November 2, 2020, the Court sentenced James Simmons to 35 months imprisonment and ordered him to pay $2,502,953 in restitution.  On or about September 24, 2021, James Simmons surrendered to the custody of the Federal Bureau of Prisons and is currently incarcerated at FCI Edgefield in Edgefield, South Carolina.

Under the terms of James Simmons's Plea Agreement, he "shall cooperate . . . with the United States Department of Justice . . . in ongoing investigations. [And] [i]f called upon to do so, the Defendant shall provide complete and truthful testimony before any . . . trial jury in any criminal case . . . ." Exhibit 1 ¶7.  This has included cooperating in Defendant's case.  On or about December 23, 2020, the government interviewed Mr. Simmons related LabSolutions, LLC as well as certain marketing companies that worked with the laboratory.  *See* **Exhibit 3** (Report of Interview along with documents shown to Mr. Simmons).  Specifically, in 2017, telemedicine doctors affiliated with Mr. Simmons's telemedicine companies issued doctor's orders for genetic tests that were sent to, and processed by, LabSolutions, LLC—Defendant's laboratory.  *See Id*. at 1-2.

The government seeks to meet with James Simmons to obtain additional information related to LabSolutions, LLC and Defendant.  The government additionally seeks to determine whether it will call Mr. Simmons as a witness at Defendant's trial.  However, as Polsinelli is

currently representing both Mr. Simmons and Defendant, the government is concerned of a potential conflict in representation and has not yet scheduled the meeting. The government informed defense counsel of its concerns. Polsinelli, through Attorney McEvoy, informed the government that his firm does not believe there is a conflict. Nonetheless, Attorney McEvoy does not oppose this request for a hearing.

It is the government's belief that James Simmons's anticipated testimony is relevant to the government's investigation and trial preparation involving Defendant. Therefore, in the government's opinion, there exists at least the potential for a conflict between James Simmons and Defendant. Before proceeding further, the government respectfully seeks guidance from this Court pursuant to *Garcia*, 517 F.2d at 277, and *Gopman*, 531 F.2d at 265–66, regarding Polsinelli's representation of Mr. Simmons and Defendant.

## **LEGAL STANDARDS**

The "essential aim" of the Sixth Amendment of the U.S. Constitution "is to guarantee an effective advocate for each criminal defendant," and not "to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (affirming lower court's decision refusing defendant to substitute his counsel for the same counsel as his codefendant). Thus, although a criminal defendant has a "presumptive right" to the counsel of his choice, "that right is not absolute." *United States v. Ross*, 33 F.3d 1507, 1522-23 (11th Cir. 1994) (holding that trial court did not abuse its discretion in refusing defendant's conflict waiver). The presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *United States v. Register*, 182 F.3d 820, 829 (11th Cir. 1999) (quoting *Wheat*, 486 U.S. at 164) (holding, *inter alia*, that the trial court did not abuse its discretion in disqualifying defendant's attorney due to a conflict of interest); *see also Ross*, 33

F.3d at 1523 (explaining that "[w]hen an actual conflict of interest exists, the client is denied effective assistance of counsel," and, "[i]ndeed, even a potential conflict suffices for disqualification"). Accordingly, the Sixth Amendment requires a court to balance "(1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *Id.*

Even if an actual or potential conflict exists, however, "the defendant 'may waive this conflict of interest and elect to have the attorney continue representation, so long as that waiver is knowing, intelligent, and voluntary.'" *United States v. Garcia*, 447 F.3d 1327, 1337 (11th Cir. 2006) (quoting *Ross*, 33 F.3d at 1524) (holding that there was no abuse of discretion in not conducting a subsequent conflict of interest one trial commenced and after the defendant had waived the conflict at prior hearing); *see also Garcia*, 517 F.2d at 277 ("defendants may waive the right to conflict-free assistance of counsel"). The Court must "actively participate in the waiver decision." *Garcia*, 517 F.2d at 277. To be valid, a waiver must be "established by clear, unequivocal, and unambiguous language," and the record must "show . . . that the defendant was aware of the conflict of interest; realized the conflict could affect the defense; and knew of the right to obtain other counsel." *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993) (quoting. *Garcia*, 517 F.2d at 278) (holding that the defendant waived claims resulting from an alleged conflict of interest when he consented to joint representation with his codefendants).

But even when these requirements are met, the "court need not accept a waiver of the right." *Ross*, 33 F.3d at 1524. Rather, a district court enjoys "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists." *Wheat*, 486 U.S. at 163. The justification for this is two-fold. First, the defendant's right to choose his or her own

counsel is circumscribed by the Sixth Amendment "right to a defense conducted by an attorney who is free of conflicts of interest." *Ross*, 33 F.3d at 1524. Second, "[t]he need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice . . . ." *Id.* at 1523.

Local Rule 11.1(c) provides that the standards of professional conduct in this jurisdiction include the current Rules Regulating the Florida Bar. Accordingly, counsel must comply with the Florida Rules of Professional Conduct (the "RPC") outlined in Chapter 4 of the Rules Regulating the Florida Bar. Rule 4-1.7(a) provides that a lawyer must not represent a client if:

> (1) the representation of 1 client will be directly adverse to another client; or
>
> (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

As the Comment to the Rule explains, subdivision (a)(1) expresses the general rule that a lawyer may not represent a client when doing so would be "directly adverse to the other and where the lawyer's responsibility of loyalty and confidentiality of the other client might be compromised." RPC 4-1.7 Comment. Subdivision (a)(2) addresses situations in which "a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interest." *Id.* The "critical question" is whether the conflict will "materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* Under these circumstances, the lawyer would be precluded from representing the client absent the client's informed consent. *Id.*

The RPC also regulate the circumstances under which lawyers are to communicate information to their clients that are pertinent to the representation. Particularly, a lawyer has a duty to "explain a matter to the extent reasonably necessary to permit the client to make informed

decisions regarding the representation." Rule 4-1.4(b). On the other hand, Rule 4-1.6(a) provides that a lawyer *must* not reveal information relating to representation of a client, except in certain circumstances inapplicable here, unless the client gives informed consent. In criminal cases, these rules often apply post-indictment, such as when one lawyer represents co-defendants at trial, or a lawyer represents a witness who will testify against a client at trial. *See Ross*, 33 F.3d at 1523. Conflicts of interest may arise in the latter scenarios regarding a lawyer's obligations under Rules 4-1.4, 4-1.6 and, 4-1.7, amongst others.

## DISCUSSION

Defense Counsel's representation of both James Simmons and Defendant raises an actual or potential conflict. Mr. Simmons has information relevant to Defendant. Mr. Simmons's Plea Agreement obligates him to cooperate with the government's investigation of, and trial preparation related to, Defendant. Exhibit 1 ¶7. To be clear, the government does not maintain that the potential conflict is unwaiveable or that any waivers (if already obtained by Defense Counsel) are invalid. Nonetheless, the government submits that Defendant should obtain guidance from the Court before proceeding with Polsinelli representing him and James Simmons.

A hearing would promote judicial economy and mitigate the possibility of a future collateral attack. If the Court determines that there is a conflict and Defendant intends to proceed with being represented by Polsinelli, it must be clear that Defendant "(1) was aware that a conflict of interest existed; (2) realized the consequences to his defense that continuing with counsel under the onus of a conflict could have; and (3) was aware of his right to obtain other counsel." *Garcia*, 447 F.3d at 1337. Therefore, like *Rodriguez*, 982 F.2d at 477, where the Eleventh Circuit acknowledged that the lower court "expressly informed [the defendant] of some of the risks and of his right so separate counsel," a record can be made here establishing that these potential conflicts have been fully explained to Defendant. The Court can make factual findings that each

current client of the Polsinelli law firm fully understands these potential conflicts, waives the conflicts, and that such waivers are made voluntarily and knowingly. *See Garcia*, 447 F.3d at 1337; *see also Ross*, 33 F.3d at 1524.

The Court can also make findings regarding whether the potential conflicts articulated above are so severe that they cannot be waived. For example, Polsinelli represents James Simmons and he may be called to testify *against* Defendant at Defendant's trial to fulfill the cooperation obligation in his Plea Agreement. *See* Exhibit 1 ¶7. This is contrary to Rule 4-1.7. Similarly, Polsinelli could be put in the compromising position of being obligated to explain matters that are reasonably necessary for Mr. Simmons or Defendant to make decisions regarding their respective representations pursuant to Rule 4-1.4(b) while not being able reveal all of such information to either client pursuant to Rule 1-1.6(a).

These issues can be addressed at a hearing and will promote judicial economy, reduce the risk of a future collateral attack, and protect Defendant's interests.

## **CONCLUSION**

For the foregoing reasons, the government requests a hearing to determine whether: (a) Polsinelli has a conflict of interest; (b) Defendant has made a knowing, intelligent, and voluntary waiver; and (c) a waiver should be accepted by the Court.

Dated: December 5, 2021                    Respectfully submitted,

                                                        JUAN ANTONIOGONZALEZ
UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By:      */s/ Patrick J. Queenan*
Patrick J. Queenan
Trial Attorney
FL Special Bar No. A5502715
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 875-0326
patrick.queenan@usdoj.gov

Reginald Cuyler Jr.
Trial Attorney
FL Bar # 0114062
U.S. Department of Justice
Criminal Division, Fraud Section
12020 Miramar Parkway
Miramar, Florida 33025
Phone: (202) 748-3024
reginald.cuyler.jr@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 5, 2021, I conventionally filed this motion, attached exhibits, and the related motion to seal pursuant to LCrR 5.4(c).  I also emailed an electronic copy of the motion, motion to seal, and exhibits to all counsel of record as well as to attorneys representing Mr. Simmons.

By:   */s/ Patrick J. Queenan*
       Patrick J. Queenan