### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 19-CR-80181-RUIZ/REINHART

**UNITED STATES OF AMERICA**

**v.**

**MINAL PATEL, a/k/a "Minalkumar Patel,"**

                        **Defendant**.

_____/

### UNITED STATES' MOTION TO COMPEL RECIPROCAL DISCOVERY, INCLUDING DISCOVERY REGARDING DEFENDANT'S ADVICE-OF-COUNSEL DEFENSE

The United States of America, through counsel, respectfully moves the Court for an order requiring Defendant Minal Patel ("Defendant" or "Patel") to produce to the Government immediately the identities of all attorneys, and all documents and communications pertaining to the advice they provided, to the extent such attorneys and advice pertain in any way to the conduct at issue in the Superseding Indictment. Defendant has asserted an advice-of-counsel defense and, under well-settled law, must produce discovery pertaining to this defense. The Government has repeatedly requested discovery on this issue since 2020, yet Defendant has not made a single production of advice-of-counsel discovery to the Government. In fact, Defendant has asserted privilege over documents and communications with attorneys at issue, has narrowed the scope of the waiver he originally provided, and has declined to search for and produce documents within his possession that the Government has made clear it does not have (such as records that pre-date the temporal scope of the Government's search warrants). The only way for the Government to ensure that it has complete and timely discovery on this issue is for the Court to compel Defendant to produce records to the Government.

## FACTUAL BACKGROUND

### A.   The Indictment

Defendant was originally indicted on September 24, 2019, for his role in a genetic testing fraud scheme.  [*See* D.E. 1 "Indictment"].  On September 8, 2022, the grand jury returned a Superseding Indictment.  [*See* D.E. 275 "Superseding Indictment"].  The Superseding Indictment charges fewer overall counts than the original Indictment.  Count 1 in the Superseding Indictment charges the same overarching health care fraud and wire fraud conspiracy as the original Indictment, spanning from approximately July 2016 through approximately August 2019. [Superseding Indictment at 8].  Counts 2–4 in the Superseding Indictment allege different substantive health care fraud counts than were alleged in the original Indictment.  [*See* Indictment at 13–14; Superseding Indictment at 13–14.] Count 5 alleges the same overarching to defraud the United States and pay health care kickbacks, although some overt acts have been revised.  Counts 6–9 of the Superseding Indictment allege substantive counts of payment of kickbacks, one of which (Count 6) is the same as the original Indictment and some of which (Counts 7–9) are new. [*See* Indictment at 18–19; Superseding Indictment at 18–19].  The money laundering conspiracy alleged in Count 10 is unchanged from the original Indictment.

In connection with this scheme, Defendant committed numerous distinct crimes through his role as owner and operator of LabSolutions, LLC ("LabSolutions"), a laboratory enrolled with Medicare.  In sum, the Superseding Indictment alleges that Defendant paid kickbacks to patient brokers in exchange for referring patients, including signed doctors' orders, for medically unnecessary genetic tests billed to Medicare.  These orders were fueled by kickbacks paid by patient brokers to telemedicine companies to provide prescriptions for these tests, even though the telemedicine doctors were not treating the patients, did not use the test results in the treatment of

the patients, and often never communicated the results of the tests to the patients at all.  Defendant and others then conspired to launder the proceeds of this fraud.

**B.      The United States' Requests for Advice-of-Counsel Disclosures**

During the pendency of these proceedings, both in public and in conversations between the Government and various defense counsel, Defendant has consistently maintained that he will assert an advice-of-counsel defense.  The Government requested discovery underlying this defense as early as 2020.  In February 2020, Defendant claimed that, although Defendant had already chosen to assert an advice-of-counsel defense before receiving all of the Government's discovery, he could not begin to fulfill his own discovery obligations until the Government's discovery productions were complete.  In 2021, Defendant took the position that the Government had the "vast amount" of the underlying discovery and that he was not required to produce or identify additional materials.  *See* Exhibit C.  It was not until 2022 that Defendant provided a waiver of attorney-client privilege to enable the Government to investigate this defense.  Even then, although Defendant had agreed to a waiver in principle by January 24, 2022, Defendant did not return the signed waiver to the Government until July 1, 2022, despite multiple attempts by the Government to obtain the waiver in the intervening months.  *See* Exhibit A.

On August 10, 2022, the Government submitted a letter to Defendant's counsel, via email, requesting discovery regarding the advice-of-counsel defense by August 25, 2022, and citing authority for the request.  *See* Exhibit B.  On August 26, 2022, after the Government had received no such disclosures, the Government requested Defendant's position on a motion to compel.  The parties have since conferred multiple times via email and phone, but have been unable to reach agreement as to the scope of Defendant's obligations.  The parties' conferences are summarized below:

- On August 30, 2022, the parties conferred via telephone regarding the Government's discovery requests.  On the call, the Government agreed that, to lessen the burden on the defense, the defense could simply identify Bates numbers of documents previously produced to Defendant by the Filter Team that pertain to the advice-of-counsel defense, and produce any additional documents in Defendant's possession, custody, or control that pertain to this defense.

- On September 2, 2022, one of Defendant's attorneys advised that he would "confirm [] ASAP" if Defendant had not yet waived privilege to the Filter Team of any materials pertinent to the defense but declined to "provide to [the Government] specific documents that we will introduce in support of the advice of counsel defense."  The Government responded the same day to clarify that it was not seeking an exhibit list at this time, but rather *discovery*.  *See* Exhibit C.

- On September 6, 2022, one of Defendant's attorneys advised that the Government "will, in fact, have everything shortly" and that Defendant was checking whether any additional documents existed to ensure that the Government "will have the universe of documents from which the exhibits will be drawn."  The same day, the parties again conferred by phone, wherein Defendant, through one of his attorneys, agreed to: (a) identify all Bates ranges of material produced by the Government to Defendant that pertain to advice-of-counsel (to save Defendant the burden of re-producing any such material to the Government); (b) produce any additional materials in Defendant's possession, custody, or control.

- When Government counsel sought to confirm this agreement via email, a different attorney for Defendant responded, indicating that Defendant did not intend to identify

his exhibits at this point.  The Government again clarified that it was seeking *discovery* and not exhibits, to which Defendant replied that the Government already has such discovery from its own productions.  *See* Exhibit C.

- The parties conferred again by phone on September 22, 2022, during which time the Government provided specific examples of documents that were not in the prosecution team's possession, either because Defendant had asserted privilege over them or because they pre-dated the date range that the Government was authorized to seize in search warrants.  The defense nonetheless reiterated that it would re-examine its privilege assertions but that, otherwise, the Government already had everything pertaining to the advice-of-counsel defense.

As of the filing of this motion, the Government has not received discovery from Defendant pertaining to the advice-of-counsel defense and the Government has not received any additional notices of waiver or retraction of prior privilege assertions.  Although the Government knows the identities of several attorneys involved in advising Defendant, the Government does not even have from Defendant a list of all attorneys from whom Defendant sought advice at any point pertaining to the allegations at issue in the Superseding Indictment.  The Government cannot adequately prepare for trial absent further disclosures from Defendant.

    **C.**    **The Prosecution Team Does Not Have All Advice-of-Counsel Discovery**

While the Government seized an immense volume of material from Defendant and LabSolutions, and therefore the Government already has a significant amount of material pertaining to the legal advice Defendant received, the prosecution team *does not have possession of*: (1) material outside the scope of search warrants, such as material that pre-dates the date range

of material the Government was authorized to seize;[1] (2) material over which Defendant has asserted privilege; and (3) material created after the execution of search warrants.

The Government's search warrants in this matter generally authorized the Government to seize materials from approximately January 2017 to August 2019.  Discovery obtained in late September 2022 from attorneys involved in advising Defendant, such as invoices and engagement letters, reveals that Defendant engaged some of the attorneys at issue as early as 2015, well outside the scope of the search warrants.[2]

In addition, although Defendant promised on multiple occasions in August and September 2022 to revisit his prior privilege assertions in this case, Defendant has not yet delivered new privilege logs or otherwise reversed his prior privilege assertions.

Furthermore, discovery obtained by the Government from the attorneys who advised Defendant on the subject matters at issue in the indictment confirms that the Government does not

---

[1]    The Government has sought discovery directly from the attorneys are received some materials that pre-date the search warrants.  However, Defendant should also be required to produce this material. Importantly, and as the Government has explained to defense counsel, one of the law firms at issue has since been acquired and the acquiring firm's retention policies do not extend back to 2015.  Therefore, the only materials available are materials that happened to be saved.  Defendant should be required to search his own records for this material to ensure the Government obtains complete discovery.

[2]    Here is one example, from which the Government has redacted the client-matter number, attorney name, and counterparty name for purposes of this filing:

| Re: LabSolutions, LLC: Compliance Matters | | Invoice: 657333 |
|---|---|---|
| Our File Number: CLIENT / MATTER NUMBER | | Page: 1 |

| INVOICE FOR PROFESSIONAL SERVICES RENDERED THROUGH 11/30/2015 | | |
|---|---|---|
| | **FEES** | |
| 11/19/2015 | ATTORNEY 1 | Telephone conference with Mr. Patel and drafting letter of analysis related to Company arrangement; reviewing Stark and Anti-Kickback requirements. |
| 11/20/2015 | ATTORNEY 1 | Finish letter analyzing relationship with Company. |
| | | **Total Fees Through 11/30/2015    $1,312.50** |

have all discoverable material.  For example, the documents include legal bills between Defendant

and attorneys that are heavily redacted based on Defendant's assertions of privilege, including

within the time of the alleged conspiracy.  The legal bills also confirm that these attorneys provided

legal advice both before and after the conspiracy period alleged in the indictment.  The legal bills

further confirm that these attorneys advised Defendant on the "DOJ Investigation/Genetics

Testing," and even had phone calls with a former prosecutor on this case, which somehow

Defendant is now asserting are privileged and not within the scope of his waiver.  *See, e.g.*, Exhibit

D at 60, 70, 112–14, 194–99, 204, 206, 208.

For example, the following snapshot reflects only a few entries from a legal bill from

August 2019, within the conspiracy period and before Defendant was originally indicted, where

Attorney 1, Attorney 2, and Attorney 4 (all attorneys on Defendant's waiver whose names have

been anonymized by the Government) apparently advised on issues underlying the Government's

investigation.  Entire blocks of these legal bills were redacted when they were provided to the

Government because Defendant asserted privilege to the law firm that produced these materials to

the Government.  The Government can only assume that it did not receive the underlying

communications and records pertaining to the advice reflected within this heavily redacted

invoice.[3]

---

[3]      The redactions containing text overlays were applied by the Government to protect witness privacy.  However, the blocked redactions in the "description" column were applied by the law firm that produced the invoices to the Government, on the basis of Defendant's privilege assertions.  This is just one of many examples in the legal invoices that reveal the breadth of material that the Government has not been provided and over which Defendant asserts privilege.

RE:  DOJ INVESTIGATION/GENETICS TESTING

**FOR PROFESSIONAL SERVICES RENDERED THROUGH 08/31/19:**

| Date | Timekeeper | Description | Hours | Amount |
|------|-----------|-------------|-------|--------|
| 08/16/19 | **ATTORNEY 2** | ██████████████████████ | 5.4 | $2,187.00 |
| 08/16/19 | ATTORNEY | NUMEROUS TELEPHONE CONFERENCES WITH MR. PATEL, MR. **LS CEO** ████ MR. **ATTORNEY 4** TIMOTHY LOPES AT DEPT. OF JUSTICE; MULTIPLE E-MAILS; ████████████████ TELEPHONE CONFERENCE WITH MR. PATEL; SECOND VISIT TO LABSOLUTIONS OFFICES. | 7.0 | $4,165.00 |
| 08/17/19 | ATTORNEY | ████████████████ TELEPHONE CONFERENCE WITH MR. PATEL. | 1.3 | $773.50 |

## **LEGAL STANDARD**

### A.    Defendant's Rule 16(b)(1)(A) Requirements

Rule 16(b)(1) of the Federal Rules of Criminal Procedure defines in very specific terms a defendant's mandatory obligation to provide reciprocal discovery to the Government.  The rule provides that if a defendant requests discovery from the United States, and the United States complies with the request, a defendant "must" permit the United States to inspect or to copy records in a defendant's possession that he intends to use in its case-in-chief-at trial.  A defendant must produce all items supporting its case, even if the Government may possess them already or provided them previously in its discovery.  *See, e.g.*, *United States v. Crinel*, 2016 WL 5779778, at *2 (E.D. La. Oct. 4, 2016) ("a defendant is required to produce all required materials, including those already in the government's possession"); *United States v. Holden*, No. 13-CR-00444, 2015

WL 1514569, at *6 (D. Or. Mar. 19. 2015) ("evidence that Defendant originally received from the government . . . is not exempt from Defendant's reciprocal-discovery obligations"); *United States v. Hsia*, No. 98-CR-0057, 2000 WL 195067, at *1–*3 (D.D.C. Jan. 21, 2000) (rejecting defendant's arguments that she had no reciprocal discovery to provide to the United States because (1) the only documents in her possession were provided by the United States and (2) she only intended to introduce evidence through the cross-examination of government witnesses, holding that Rule 16 requires the defendant to turn over all such documents, regardless of their source).

Moreover, Rule 16(b)(1)(A) applies to all items that the defense will use to support its case, not merely those items that the defense will introduce after the Government rests. Specifically, the phrase "defendant's case-in-chief at trial" as stated in Rule 16(b)(1)(A) applies to evidence that a defendant intends to present during the examination of the Government's witnesses to support his or her defense, as well as to evidence that the defendant intends to present at trial after the Government rests its case (although Rule 16(b)(1)) does not require a defendant to disclose evidence that defendant intends to use only for purposes of impeachment). *See, e.g.*, *United States v. Napout*, 2017 WL 6375729, *5 (E.D.N.Y. 2017) ("Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant. . . . [W]here a defendant cross-examines a government witness to buttress[ ] her theory of the case, rather than to impeach the testimony given by the witness on direct examination, [t]he cross-examination . . . is properly seen as part of the defendant's case-in-chief[.]") (citation and quotation marks omitted); *see also United States v. Aiyaswamy*, 2017 WL 1365228, *5 (N.D. Cal. Apr. 14, 2017) ("Defendant must disclose and produce substantive, non-impeachment evidence . . . whether Defendant plans to introduce that evidence during cross-examination or after the Government rests."); *Crinel*, 2016

WL 5779778, at *3 (same); *United States v. Larkin*, 2015 WL 4415506, *5 (D. Nev. July 20, 2015) ("Rule 16, however, does not allow the defendant to have it both ways, *i.e.*, she cannot obtain the government's evidence without disclosing her own evidence (other than impeachment evidence)."); *Holden*, 2015 WL 1514569, at *6 (D. Or. Mar. 19, 2015) (same); *United States v. Swenson*, 298 F.R.D. 474, 477 (D. Idaho 2014) ("[B]ecause of the immense volume of data produced by the Government . . . the requirements of Rule 16 can only be satisfied by identifying the specific documents which the Defendant intends to use at trial."); *Hsia*, 2000 WL 195067, at *2 (same); *United States v. Waddell*, 2016 WL 3031698, *3 (S.D. Ga. May 25, 2016) ("[I]f a defendant tries to introduce evidence through a government witness during cross-examination for purposes of providing his innocence, that's not impeachment but in fact part of the defendant's case-in-chief . . .").

Relatedly, Rule 26.2 of the Federal Rules of Criminal Procedure requires Defendant to produce any statements, as defined in Rule 26.2(f), of any witness whom Defendant intends to call at trial.  The rule was designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as the disclosure of prior statements of prosecution witnesses in the hands of the Government under the Jencks Act, 18 U.S.C. § 3500.  *See* Advisory Committee Notes to Fed. R. Crim. P. 26.2.  "The rule, with minor exceptions, makes the procedure identical for both prosecution and defense witnesses, including the provision directing the court, whenever a claim is made that discovery would be improper because the statement contains irrelevant matter, to examine the statements in camera and excise such matter as should not be disclosed."  *Id.*

**B.      Defendant's Discovery Obligations Relating to the Advice-of-Counsel Defense**

"[T]to qualify for an instruction on good faith reliance on advice of counsel, a defendant must show that (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney."  *United States v. Hill*, 643 F.3d 807, 849–50 (11th Cir. 2011); *see also United States v. Johnson*, 139 F.3d 1359, 1366 (11th Cir. 1998) (approving jury instruction that "good faith reliance upon the advice of counsel requires not only full and complete disclosure of the facts then known but also of material facts or information later acquired").  A district court may properly decline to give such an instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation."  *United States v. Condon*, 132 F.3d 653, 656 (11th Cir. 1998) (holding that district court did not err in denying advice-of-counsel instruction) (internal quotations omitted).  The defendant bears the burden of proof because good faith reliance on advice-of-counsel is an affirmative defense.  *United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013) (rejecting defendant's argument that no reasonable jury could have rejected his good faith reliance on advice-of-counsel defense).

When a defendant asserts an advice-of-counsel defense, the defendant waives the attorney-client privilege as to the subject matter of that advice.  *See, e.g.*, *United States v. Jensen*, 573 F. App'x 863, 870 (11th Cir. 2014) ("By claiming that [he] lacked intent to defraud because attorneys told him that [the disputed] transactions were legal, [defendant] waived the attorney-client privilege with respect to communications with counsel concerning [their] legality."); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (holding that defendant's testimony he sought to introduce regarding his good faith attempt to comply with the securities laws put his knowledge of the law and the basis for his understanding of what the law required in issue, thus

waiving privilege of conversations with counsel regarding the legality of his schemes).  In addition, "[a] client's assertion of an advice of counsel defense also waives work product immunity as to all work product concerning the subject matter at issue other than pure legal opinion not communicated to the client." *United States v. Bachynsky*, 2007 WL 1521499, at *3 (S.D. Fla. May 22, 2007) (*citing In re EchoStar Communications Corp*., 448 F.3d 1294, 1302-04 (Fed. Cir. 2006)).

It follows that a party raising an advice-of-counsel defense "must permit discovery of *any and all legal advice* rendered on the disputed issue" and failure to allow such discovery requires the "exclusion of any evidence" of said defense.  *Inmuno Vital v. Telemundo*, 203 F.R.D. 561, 564 (S.D. Fla. 2001) (emphasis added).  "Although the Federal Rules of Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, courts have broad discretion to impose disclosure and notice requirements outside the rules." *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2019).

Indeed, in a Medicare fraud case centered on a very similar genetic testing fraud scheme, which went to trial early last year, the court required the defendant to produce evidence underlying an advice-of-counsel defense and excluded the defense when such material was not produced. *United States v. Scott*, 19-cr-209-PGB-LRH [D.E. 34] (M.D. Fla. Mar. 9, 2020).  This is consistent with rulings from this district.  *See Bachynsky*, 2007 WL 1521499, at *2 (granting Government's motion for pretrial production of defendant's communications with counsel where defendant intended to assert advice of counsel defense in securities fraud and wire fraud trial); *United States v. Robert Shapiro*, Case No. 19-CR-20178-ALTONAGA/GOODMAN, [D.E. 108] at p. 2 (S.D. Fla. July 8, 2019) (adopting the reasoning of *Crowder* and stating that "if Defendant does not provide notice and discovery of his communications with attorneys which form the basis of his anticipated advice-of-counsel defense, the Government will be forced, in the middle of trial, to

request the Court halt the trial in order for the Government to review a large quantity of new information . . . the Court does not sanction a trial process that anticipates and rushes headlong into such delay and inefficiency");[4] *see also United States v. Senthil Ramamurthy*, Case No. 18-CR-20710- ALTONAGA/GOODMAN, [D.E. 276] at pp. 4-5 (S.D. Fla. Nov. 27, 2019) (same);[5] *United States v. Matthew Pisoni*, No. 15-CR-20399-CR-GAYLES [D.E. 126] (S.D. Fla. Dec. 10, 2015) (paperless order setting pre-trial deadline for defense production of "all documents they intend to use at trial to support their advice of counsel defense"); *United States v. Liberty*, 2020 WL 6386388, at *3 (D. Me. Oct. 30, 2020) ("if either Defendant intends to pursue an involvement-of-counsel argument, he shall identify the counsel at issue and produce all documents that relate to that argument" by one month before trial); *United States v. Scali*, 2018 WL 461441, at *8 (S.D.N.Y. Jan. 18, 2018) (ordering defendant to "produce all discovery relating to any advice of counsel defense" and setting status conference to assess whether defendant "has proffered the factual prerequisites of an advice of counsel defense").

## **ARGUMENT**

The Court should compel Defendant to immediately produce all information pertaining to his advice-of-counsel defense.  On multiple occasions, the Government has requested relevant disclosures and, at times, believed such disclosures were forthcoming.[6]  To date, however, the Government has received no discovery from Defendant on this issue, despite indications from

---

[4]     Judge Altonaga's order is attached hereto as Exhibit E.

[5]     Magistrate Judge Goodman's order is attached hereto as Exhibit F.

[6]     The Government first asserted its demand for reciprocal discovery when it filed its First Response to the Standing Discovery Order on October 11, 2019.  [D.E. No. 18.]  The Government also specifically requested discovery regarding the advice-of-counsel via emails in February 2020 and June 2021, and in a letter dated August 10, 2022, and has continuously requested such disclosures since that time.

Defendant that additional documents may exist.  Indeed, while the Government agrees that it has a substantial amount of material pertaining to this defense from the Government's own investigative efforts, that does not excuse Defendant from his discovery obligations, nor does it mean that the Government has all discovery to which it is entitled.  To the contrary, the Government has identified discoverable material that is not in the prosecution team's possession, as well as categories of information that exist but which Defendant refuses to produce because he claims they somehow remain privileged.  Until the Government can confirm that it has all discoverable information, the Government is hamstrung in its ability to investigate this defense. The Government seeks to ensure the parties are prepared for trial, limit any surprises at trial, and enable the Government to properly investigate this defense well in advance of trial.

## I.      **DEFENDANT IS OBLIGATED TO PRODUCE IMMEDIATELY ALL ADVICE-OF-COUNSEL DISCOVERY.**

Defendant has made clear his intention to assert an advice-of-counsel defense and the Government has requested discovery.  As such, Defendant is obligated to produce discovery on this issue, including the identities of all attorneys from whom Defendant sought advice on the subjects at issue in the indictment, and all communications and documents pertaining to that advice.  *See, e.g.*, *Shapiro*, Case No. 19-CR-20178-ALTONAGA, [D.E. 108] at p. 2 (S.D. Fla. July 8, 2019) ("if Defendant does not provide notice and discovery of his communications with attorneys which form the basis of his anticipated advice-of-counsel defense, the Government will be forced, in the middle of trial, to request the Court halt the trial in order for the Government to review a large quantity of new information"); *Crowder*, 325 F. Supp. 3d at 138 ("Although the Federal Rules of Criminal Procedure do not specifically require defendants to provide pretrial notice of an advice-of-counsel defense, courts have broad discretion to impose disclosure and notice requirements outside the rules."); *Liberty*, 2020 WL 6386388, at *3 ("if either Defendant

intends to pursue an involvement-of-counsel argument, he shall identify the counsel at issue and produce all documents that relate to that argument" by one month before trial); *Scali*, 2018 WL 461441, at *8 (ordering defendant to "produce all discovery relating to any advice of counsel defense" and setting status conference to assess whether defendant "has proffered the factual prerequisites of an advice of counsel defense").

Defendant has not produced a single document to the Government pertaining to legal advice he received.  Defendant is therefore in default of his discovery obligations.  Defendant's responses to the Government's repeated requests for such discovery are unavailing and have served only to delay the Government's ability to obtain complete discovery.  As an initial matter, Defendant has continuously indicated that additional discoverable documents might exist that are not in the prosecution team's possession but has not produced them or even confirmed if they in fact exist.  For example, defense counsel has indicated that there are documents over which Defendant previously asserted privilege that may in fact be discoverable in light of Defendant's subsequent waiver of privilege.  But until Defendant retracts his privilege assertions, the Filter Team is not authorized to produce that material to the prosecution team.  While Defendant promised that this review would be complete in September, it has not been completed.

Defendant has also stated that the Government already has most, if not all, of the documents pertaining to this defense.  That the Government might possess information through another source does not relieve Defendant of his own discovery obligations.  *See, e.g.*, *Crinel*, 2016 WL 5779778, at *2.  That is particularly true in a case with such voluminous discovery, much of which was produced to Defendant by a Filter Team.  *See Swenson*, 298 F.R.D. at 477–78 (rejecting defense argument that their Rule 16 obligations were not triggered until government filed an exhibit list and holding that "because of the immense volume of data produced by the Government—measured

in terabytes—the requirements of Rule 16 can only be satisfied by identifying the specific documents which the Defendant intends to use at trial").[7]

Furthermore, the Government *does not* have all documents pertaining to this defense. While Defendant continues to point to the material the Government seized as part of its search warrants in this case in support of his argument that the Government has all discovery on the advice-of-counsel defense, those search warrants generally did not authorize the Government to seize material before January 2017. Here, the legal invoices confirm that some of the attorneys at issue began advising Defendant in 2015. Defendant's legal advice on the conduct at issue *before* the alleged conspiracy period is certainly relevant to his advice-of-counsel defense. *See* Exhibit D at 202. Defendant must search for and produce all material pertaining to this defense to the Government.

## II.   **DEFENDANT'S SELECTIVE WAIVER IS IMPROPER.**

It is axiomatic that the attorney-client privilege was intended as a shield, not a sword. A defendant who asserts an advice-of-counsel defense waives the attorney-client privilege as to the subject matter of that advice. *See, e.g.*, *Jensen*, 573 F. App'x at 870 ("By claiming that [he] lacked intent to defraud because attorneys told him that [the disputed] transactions were legal, [defendant] waived the attorney-client privilege with respect to communications with counsel concerning [their] legality."); *Bilzerian*, 926 F.2d at 1292 ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications.").

---

[7]   To facilitate Defendant's ability to satisfy his obligations in the least burdensome way, the Government will agree that Defendant may identify to the Government the Bates ranges of documents pertaining to this defense that are in his possession, including the Bates ranges of privilege-asserted materials withheld by the Filter Team. This should be a simple endeavor because Defendant's counsel previously reviewed and asserted privilege over material produced to them by the Filter Team.

Despite the applicable law clearly requiring Defendant to waive privilege over all relevant advice on the subject matters at issue, Defendant's written waiver only applies to communications with certain attorneys before September 1, 2019.  The law firms from which the Government recently subpoenaed records have indicated that Defendant has narrowed that waiver and is now asserting privilege over communications after July 31, 2019, and communications pertaining to government investigations, even if they pertain to genetic testing, telemedicine, and marketing arrangements.  As a result, one law firm that employed three of the attorneys at issue, and which recently produced documents to the Government in response to trial subpoenas, heavily redacted legal invoices, clawed back material initially produced, and refused to produce material over which Defendant asserts privilege.

The legal bills are replete with redactions or references to material that the Government does not have and over which Defendant continues to assert privilege.  Defendant appears to be drawing a distinction between regulatory compliance advice and advice in response to investigations.  Defendant cannot have it both ways.  He cannot assert that he lacked criminal intent because attorneys approved his conduct yet preclude the Government from fully examining the knowledge of these attorneys and advice they provided.  It does not matter whether the attorney learned material facts in the course of providing regulatory compliance advice, or whether the attorney learned the material facts while advising on government investigations of Defendant or related players.  Likewise, anything the attorney said to Defendant or his representatives concerning the validity of his advice to Defendant, or about the validity of Defendant's conduct, is relevant to the advice-of-counsel defense, even if it post-dates that advice.  If that material is in Defendant's possession, custody, or control, he must produce it.  And he cannot interfere with the Government's ability to obtain such material directly from the attorneys.

In addition to being squarely relevant to the elements of an advice-of-counsel defense, the information is relevant to the attorney's motivations for testifying and is likely discoverable under Rule 26.2.  It is apparent from the legal bills that at least some of the attorneys at issue consulted with Defendant and/or his current criminal defense attorneys both before and after Defendant was indicted.  Indeed, even as late as 2022, one of the key attorneys at issue who represented Defendant beginning in 2015 was apparently being blind copied by Defendant's criminal defense attorneys on communications with the Government regarding the advice-of-counsel defense.  The Government discovered this when the attorney inadvertently "replied all" to an email, revealing that he was a concealed participant in the email chain between the Government and the criminal defense team.  This attorney's ongoing communication with the defense team may be relevant to his motivations for testifying.  And, in the course of such communications, the attorney may have disclosed information that reveals what he knew, or what he did not know, when he advised Defendant.  The attorney may also have reflected on the substance or validity of his prior advice or provided opinions on Defendant's conduct.  That is all relevant and discoverable information.

The Government is sensitive to Defendant's likely concern that the production of such information may reveal Defendant's criminal defense strategy.  Defendant's criminal defense counsel are among the most sophisticated and experienced criminal trial counsel in the country and they knew to excise regulatory counsel from continued representation of the Defendant immediately in order to preserve the integrity of an advice-of-counsel defense.  In any event, the Government is not interested in learning about Defendant's defense strategy and does not object to appropriate redactions of criminal counsel's statements in any emails or documents that contain discoverable information.   Furthermore, the Government does not object to the Court reviewing this material *in camera* to determine whether the materials or any portion thereof should be

provided to the United States.  But the fact that criminal defense counsel chose to communicate with regulatory counsel, or the fact that Defendant remained in communication with regulatory counsel after becoming aware of criminal investigations, does not create an exception to the scope of the waiver and discovery required for Defendant to assert an advice-of-counsel defense.

## **CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court order Defendant to immediately produce discovery pertaining to an advice-of-counsel defense, including a list of all attorneys from which Defendant sought advice on the subjects at issue in the indictment, and all communications with or regarding these attorneys (including all such communications with Defendant's or LabSolutions' representatives that may bear on the scope of the attorney's advice). If such material is not provided, the Government respectfully requests that the Court exclude any evidence pertaining to the advice of attorneys.

## **RULE 88.9 CERTIFICATION**

Counsel for the Government certifies that they attempted in good faith to confer with counsel for the defense to resolve the issues raised in this Motion, and the parties have been unable to reach agreement.

Dated: October 3, 2022   Respectfully submitted,

        JUAN ANTONIO GONZALEZ
        UNITED STATES ATTORNEY
        SOUTHERN DISTRICT OF FLORIDA

        GLENN S. LEON, CHIEF
        CRIMINAL DIVISION, FRAUD SECTION
        U.S. DEPARTMENT OF JUSTICE

By:  */s/ Jamie de Boer*
        Jamie de Boer
        Florida Special Bar No. A5502601
        Emily Gurskis
        Florida Special Bar No. A5502499
        Reginald Cuyler Jr.
        Florida Bar No. 0114062
        Katherine Rookard
        Florida Special Bar No. A5502932
        Trial Attorneys
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Tel: (202) 616-3842 (de Boer)
        Tel: (202) 203-9186 (Gurskis)
        Tel: (202) 202-7438 (Cuyler)
        Tel: (202) 355-5732 (Rookard)
        Jamie.deBoer@usdoj.gov
        Emily.Gurskis@usdoj.gov
        Reginald.Cuyler.Jr@usdoj.gov
        Katherine.Rookard@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on October 3, 2022, I served and filed the forgoing document with the Clerk of the Court via ECF.

By:     */s/ Jamie de Boer*