## TELEMEDICINE PROGRAM AGREEMENT

This Agreement ("Agreement") is entered into this 15th day of February, 2018 by and between LifeMD, Inc. a State of Florida Corporation having its offices located at 1901 South Congress Avenue, Suite 150, Boynton Beach, FL 33426 ("LifeMD"), and BBAR Marketing, LLC. at 31 SE 24th Ave, STE 1, Pompano Beach, FL. 33062

WHEREAS, LifeMD arranges for the provision of medical services to individual members of organizations, referred to as (LifeMD) members, located in various U.S. states for such medical services, through an association of independent licensed doctors or medical practices and technological interfacing, along with other service providers programs (the "Program"), as detailed on Schedule A attached hereto and incorporated herein;

WHEREAS, Client desires to offer the Program to associates, affiliates and/or other individuals associated with Client;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants, promises and agreements set forth herein, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, each intending to be legally bound hereby, agree as follows:

1.   LifeMD Obligations

LifeMD shall provide the following in connection with the Program, which is outlined in greater detail on Schedule A attached hereto and incorporated herein:

A.   Provide the Program to Client in accordance with Section 2.C;

B.   Follow-up on any inquiry that may occur relating to the Program, including providing customer service;

C.   Provide Client with a written process for complaints, notifications, and other customer inquiries;

D.   Provide Client with a toll-free phone number so that individuals can make inquiries about the Program and/or consult with medical agents and/or independent contractor doctors;

E.   Report to Client, at mutually agreeable intervals, information relating to utilization of the Program, as Client may reasonably request, and which LifeMD is able to provide, without violating a Member's privacy or health information privacy laws;

**GOVERNMENT EXHIBIT**

**676A**

19-CR-80181-RUIZ

doj_patel_3_0002116440

F.    Maintain appropriate insurance coverage, with limits that are reasonable and customary for its business to cover liabilities and claims which may arise in relation to or in connection with this Agreement;

G.    Comply with federal, state and local laws, ordinances and regulations applicable to the Program, including, but not limited to, any such laws, ordinances and regulations that apply to the confidentiality of medical records and health information privacy laws;

2.    Client Obligations

Client shall, at its sole cost and expense:

A.    Promote and offer the Program when appropriate to its associates, affiliates and other individuals who can become subscribed members;

B.    Receive written approval from LifeMD prior to distributing any non- LifeMD drafted or provided materials of any kind whatsoever which describe the Program;

C.    Comply with all applicable federal, state and local laws, ordinances, rules, codes and regulations applicable to Client's performance under this Agreement, and/or the offering of benefit services programs, and/or the Program, without violating a Client or Member's privacy or any patient privacy law, including the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and any and all other laws, ordinances, rules and regulations that apply to the confidentiality of medical records in accordance with Schedule C attached hereto;

D.    Comply with the terms of this Agreement and any renewals of and addendums or amendments to said Agreement;

E.    Compensate LifeMD in accordance with the provisions in this Agreement.

3.    Initial And Renewal Term

A.    Initial Term. The term of this Agreement shall commence on the date of execution by Client ("Commencement Date") and shall continue thereafter for a one (1) year period ("Initial Term"). Either party can terminate this Agreement by providing written notice at least ninety (90) days prior to the effective date of any renewal term.

B.    Renewal Term. At the conclusion of the Initial Term of this Agreement, and at the conclusion of each successive Renewal Term of this Agreement, the term of this Agreement shall automatically be extended for an additional one (1) year period, unless either party provides the other party with written notice at least ninety (90) days prior to the effective date of any Renewal Term.

C.      Notwithstanding the foregoing, the Parties may mutually agree, in writing, to renewal terms for periods of time other than one (1) year periods.

D.      This Agreement may only be amended, in writing, after approval and signatures of authorized officers of both parties are obtained. No waiver by Client or LifeMD of any provision herein shall operate as a waiver of any other provision or the same provision on a future occasion.

4.      Compensation

Client shall pay LifeMD fees for the Program according to Schedule B, attached hereto and incorporated herein. The Parties agree that the compensation provided herein has been determined in arm's-length bargaining and is consistent with fair market value in arm's-length transactions. The compensation set forth in this section is subject to modification to ensure that such compensation is consistent with fair market value.

5.      Payment

Client shall pay LifeMD based on the number of physician consultations done for Client as set forth in Schedule B ("Consultation Fee"). Client acknowledges and agrees that payment shall be prepaid via wire. All payments made shall be in no less than increments of 100 consults. Client acknowledges and agrees payments are non-refundable.

6.      Termination

This Agreement shall begin on the Commencement Date and shall remain in effect until terminated by either party subject to the provisions in this Agreement. Either party may terminate this Agreement without cause by giving written notice of termination to the other party not less than ninety (90) days prior to the date of termination. This Agreement may be terminated upon written notice for the following reasons:

A.      Misconduct of either a personal or professional nature, including, without limitation, violation of any applicable state, federal or local laws, rules, codes, ordinances or regulations, including any health care privacy laws, or LifeMD's policies and procedures by Client;

B.      Any failure by either Party to correct other acts or omissions which, in the non-violating party's reasonable opinion, either substantially interferes with the normal conduct of the Program's operations in accordance with LifeMD's policies and procedures;

C.      The unlawful alteration or falsification of records;

D.      Upon the material breach or threatened material breach of any provision of this Agreement by either Party;

E.      Upon either Party's failure to perform any obligations hereunder;

F.      Upon any breach of any representation or warranty provided for herein;

G.      Upon an unauthorized assignment of this Agreement by either Party;

H.      Upon the mutual agreement of the Parties, as evidenced, in writing, and signed by the Parties.

If any of the above listed reasons for termination occur, or if either party fails to perform any of its obligations hereunder, or if any warranty made by either party is breached and continues to exist for thirty (30) days after the non-breaching party has given notice thereof, then this Agreement shall terminate effective upon the conclusion of such thirty (30) day period.

Automatic Termination.  This Agreement shall automatically terminate upon the liquidation, dissolution, cessation of business or the filing of a bankruptcy petition by or against either party.

Neither Party shall be responsible for delays in performance due to strikes, riots, acts of God, shortages of labor or materials, war, governmental laws, regulations, or restrictions, transportation conditions, product/service suppliers or any other causes whatsoever that are beyond the reasonable control of C LifeMD HC or Client and such shall not be grounds for termination.

Obligations After Termination. Following the effective date of termination of this Agreement, the provisions of this Agreement shall be of no further force or effect, except that each party to this Agreement shall remain liable for any obligations or liabilities arising from activities carried on by such party prior to the effective date of termination. Further, the policies, rules, protocols, standards, and requirements of LifeMD relating to confidentiality of and access to medical records, proprietary information, indemnification, and any non-compete, non-solicit and non-disclosure agreements, as well as continuation of services shall survive the termination of this Agreement. The payment provisions set forth in this Agreement will continue to apply to all claims for services rendered on dates prior to the effective date of termination.

Upon termination of this Agreement for any reason whatsoever, Client shall, and agrees to pay, LifeMD for all services rendered through the effective date of termination. Additionally, Client agrees to reasonably cooperate with LifeMD in the defense or prosecution of any legal claim or regulatory action or inquiry involving events relating to Client's actions or the provision of services under this Agreement during the Client's Agreement term.

Upon termination, breach or default by LifeMD or Client, LifeMD and Client shall each be entitled to pursue legal or equitable remedies, as may be available to them, to attempt to collect any actual and consequential damages suffered as a result thereof, including, but not limited to, reasonable attorneys' fees and expenses of litigation.

doj_patel_3_0002116443

7.    Assignment

Client shall not sell, assign, transfer, delegate or otherwise convey, directly or indirectly, this Agreement, any interest herein or any of Client's rights, obligations or duties hereunder, without the prior written consent of LifeMD, which may be reasonably withheld in LifeMD's sole discretion. If LifeMD consents, such assignment, sale, transfer or otherwise shall be conditioned upon the agreement by Client to continue to be bound by Sections 2, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 19 and 21 after such assignment, sale, transfer, conveyance or otherwise is completed. LifeMD shall be permitted, upon written notice to Client and without Client's consent, to assign, sell, transfer or otherwise convey this Agreement or any of its rights hereunder. Nothing shall prevent assignment or be deemed assignment of this Agreement in connection with the merger, sale of capital stock or sale of all or substantially all of the assets of either party.

8.    Indemnification

LifeMD agrees to and shall indemnify, defend and hold Client and its shareholders, officers, directors, employees, attorneys, insurers, agents and representatives harmless from and against any and all losses, claims, actions, demands, damage, liability, obligations, costs, fees and expenses of every kind or nature whatsoever, including, but not limited to, attorney's fees and expert witness fees, incurred or expended by Client by reason of, arising out of, or relating to any injury or death sustained by any Client, Member, Prospect, or any other person or persons, including, without limitation, Client and its respective agents, representatives, employees and/or affiliates, and any property of any kind or nature whatsoever and to whomsoever belonging, from any cause or causes whatsoever arising out of or through the negligence, breach, misconduct or intentional acts and/or omissions of LifeMD and/or its respective agents, representatives, employees and/or affiliates occurring during the provision of services pursuant to this Agreement, or arising out of LifeMD's violation of any local, state or federal law, rule, ordinance or regulation governing the services provided, or concerning tax withholding of whatever kind or nature claimed by reason of the independent contractor relationship, or relating to any termination of this Agreement (whether by LifeMD or Client, and whether due to default of Client or otherwise), or otherwise with respect to this Agreement.

Client agrees to and shall indemnify, defend and hold LifeMD and its shareholders, officers, directors, employees, attorneys, insurers, agents and representatives harmless from and against any and all losses, claims, actions, demands, damage, liability, obligations, costs, fees and expenses of every kind or nature whatsoever, including, but not limited to, attorney's fees and expert witness fees, incurred or expended by LifeMD by reason of, arising out of, or relating to any injury or death sustained by any Client, Member, Prospect, or any other person or persons, including, without limitation, Client and its respective agents, representatives, employees and/or affiliates, and any property of any kind or nature whatsoever and to whomsoever belonging, from any cause or causes whatsoever arising out of or through the negligence, breach, misconduct or intentional acts and/or omissions of Client and/or its respective agents, representatives, employees and/or affiliates occurring during the provision of services pursuant to this Agreement, or arising out of Client's violation of any local, state or federal law, rule, ordinance or regulation governing

the services provided, or concerning tax withholding of whatever kind or nature claimed by reason of the independent contractor relationship, or relating to any termination of this Agreement (whether by Client or LifeMD, and whether due to default of LifeMD or otherwise), or otherwise with respect to this Agreement.

9.     <u>Covenant Not To Disclose, Circumvent or Solicit</u>

A.     Each Party covenants not to communicate, directly or indirectly, during the Initial Term or any Renewal Term, or at any time after the termination of this Agreement, any information of any kind or nature whatsoever relating to the business or trade secrets and/or any proprietary or confidential information and/or materials of either Party, including advertising and marketing secrets, customer, Client, Doctor and Member lists and information, product and business processes and information, trade secrets, lists of merchandise and service vendors, or any knowledge or secrets which either Party then had or might from time to time acquire pertaining to the business of either Party, to any third party, except as may be requested from time to time in writing by either Party ("Confidential Information"). "Confidential Information" shall not include information readily available to the public or already known to other companies in the same line of business of either party.

B.     Client agrees to and shall not use any Confidential Information of LifeMD for any purpose or in any manner whatsoever, unless agreed to, in writing, by LifeMD, or as otherwise provided in subsection (C) below.

C.     Disclosure of Product or LifeMD information shall not be precluded under this Agreement, if such disclosure is: (i) required by law or of any other regulatory authority having jurisdiction over LifeMD; or (ii) in response to a valid subpoena or order of a court or other governmental body or other valid legal process; provided, however, that with respect to any disclosure pursuant to legal process, LifeMD shall first be allowed to use reasonable efforts to cooperate with Client and take legally available steps to resist, narrow or quash any applicable request, subpoena or order and obtain an appropriate protective order or other assurance that confidential treatment will be accorded such Confidential Information.

D.     In the event of any breach of this Agreement, LifeMD would be irreparably and immediately harmed and could not be made whole by monetary damages. Accordingly, Client agrees that LifeMD, in addition to any other remedy to which it may be entitled in law or equity, shall be entitled to any injunction(s) to prevent breaches of this Agreement and to compel specific performance of this Agreement, without the need for proof of actual damages. In addition to any other remedy available to LifeMD, Client acknowledges that it or any of its agents or representatives' breach of this Section 9 will result in actual and substantial damages to LifeMD, the amount of which will be difficult to ascertain with precision. Therefore, if Client or any of its agents or representatives breaches any part of this Section 9 of this Agreement, Client shall pay LifeMD the sum of $5,000 for each breach as liquidated damages and in preventing Client or its agents or representatives' further breach of this Agreement.

10.    Independent Contractor Status

At all relevant times hereto and during the performance of any services hereunder, Client shall be acting and discharging its duties and responsibilities as an independent contractor of LifeMD.  Except as expressly set forth herein or as may be required by applicable law, LifeMD shall not exercise any control or direction over the methods or manner by which Client provides services to its Clients, Members or Prospects. Client shall not have or claim to have any authority to enter into contracts on behalf of LifeMD or otherwise incur any obligations whatsoever in the name of or on behalf of LifeMD. Client is not an employee of LifeMD and is not entitled to participate in any employee benefit plans, arrangements, distribution or other similar benefits which LifeMD may provide employees. No provision in the Agreement shall be construed or applied to create an employer-employee relationship between LifeMD and Client.

Except as agreed to herein, Client shall be solely responsible for its own supplies, equipment and employees needed to carry out Client's services and duties, unless otherwise agreed to, in writing, by LifeMD. Client shall indemnify and hold LifeMD harmless from any failure to pay or provide any such supplies, equipment or employees, including any costs, fees or expenses incurred by or accessed against LifeMD.

The Parties shall fully cooperate if any taxing authority or government agency asserts that Client is not an independent contractor under this Agreement.

11.    Attorneys' Fees and Costs

In the event litigation, mediation and/or arbitration is brought to enforce any of the terms, conditions, provisions, duties, obligations and/or warranties of this Agreement by Client or LifeMD, or because of any act which may arise out of either party's performance or nonperformance hereunder, the prevailing party shall be entitled to all costs incurred in connection with such action, including reasonable attorneys' fees, costs and expenses of litigation.

12.    Limitation of Liability

LifeMD shall have no liability whatsoever to Client or otherwise for any indirect, consequential, exemplary, special, incidental or punitive damages, including lost profits. LifeMD's liability to Client for any reason, and upon any cause of action, whether a tort, contractual, statutory, for breach or any other legal theory whatsoever, shall be, at all times and in the aggregate, be limited to the lesser of (a) $50,000, or (b) the amount of compensation actually paid by Client to LifeMD during the three (3) month period immediately preceding the month in which the event upon which the liability is predicated.

13.    No Waiver

The waiver by any party of any breach of any term, covenant, condition, obligation, warranty or provision contained herein shall not be deemed to be a waiver of any subsequent breach

of the same or any other term, covenant, condition, obligation, warranty or provision contained herein. The subsequent acceptance of performance or payment of compensation hereunder by a party shall not be deemed to be a waiver of any preceding breach by the other party of any term, covenant, condition, obligation, warranty or provision of this Agreement regardless of such party's knowledge of such preceding breach at the time of acceptance of such performance.

15.   Severable Provisions; Headings

The provisions of this Agreement are severable, and if any one or more provisions are determined to be illegal, void or otherwise unenforceable, in whole or in part, the remaining provisions, and any partially unenforceable provision to the extent enforceable, shall be valid, binding and enforceable.  This Agreement is binding on both Parties, and their respective heirs, successors and approved assigns.   The headings of paragraphs in this Agreement are for convenience only and shall not affect or limit the interpretation of its provisions.

14.   Governing Law

Florida law shall govern the rights and obligations under this Agreement without regard to the conflict of laws principles thereof.  The Parties agree that exclusive jurisdiction and venue shall be proper in the Superior Court of Palm Beach County, Florida, and waive any contention that such courts are an improper venue.

16.   Counterparts and Fax Signature

This Agreement may be executed in counterparts, each of which when so executed shall be deemed to be an original, and such counterparts shall together constitute and be one and the same instrument.  Moreover, fax signatures of this Agreement shall be deemed to be originals.

17.   Agreement Collectively Prepared By Parties

The Parties to this Agreement have collectively prepared this Agreement and mutually warrant and represent that they have been represented by counsel of their own choice in the negotiation and preparation of said Agreement. The Parties acknowledge that they have read and understand this Agreement and that they have executed it voluntarily and without duress or undue influence.  The Parties agree that this Agreement shall not be construed against any party hereto solely because they drafted all or a portion hereof.

18.   No Third Party Beneficiaries

Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and assigns.  Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any

provision give any third persons any right of subrogation or action over or against any party to this Agreement.

19.   Notice

All notices, requests and other communication to any Party hereto shall be in writing, addressed to Client and LifeMD at their respective addresses set forth below or to any other address as a party may designate by written notice hereunder, and shall be given, and be deemed to have been given, if either hand-delivered or mailed, postage prepaid via certified mail, return receipt requested, sent by facsimile or other electronic mean with verification of service and delivery, or deposited with a nationally recognized overnight mail delivery service that provides evidence of delivery. However, if actual written notice is received by a party, regardless of the means of transmittal, such notice shall be deemed to be acceptable and effective as proper notice under this section. Either party may change the address for notice by notifying the other party in writing of the new address.

If to LifeMD:          LifeMD, Inc.
                       1901 South Congress Avenue, Suite 150
                       Boynton Beach. FL 33426
                       Mark Vollaro, President/CEO


If to Client:          BBAR Marketing, LLC.
                       31 SE 24th Ave. STE 1
                       Pompano Beach, FL. 33062

All notices, requests and other communication hereunder shall be deemed effective (a) if by hand, at the time of the delivery thereof to the receiving party at the address of such party, as set forth above, (b) if sent by overnight carrier, on the next business day following the day such notice is delivered to the carrier service, (c) if sent by facsimile or other electronic means, on the business day such notice is sent with confirmation of receipt, or (d) if sent by certified mail, five (5) business days following the day such mailing is made.

20.   Ability To Contract With LifeMD

Client is not bound by any agreement, contract, arrangement, obligation, commitment or otherwise that would preclude or prohibit Advisor from entering into or from fully performing the Services required under this Agreement, and the execution of this Agreement and the performance of the obligations required herein do not and will not conflict with, result in the breach of, or constitute a default under any other agreement to which Client is a party or by which he may be bound. Client is free to enter into and perform all of the Services and the duties and obligations under this Agreement.

21.    Entire Agreement; Binding Effect

This Agreement and any and all attached exhibits, and any addendums, along with the policies, procedures, standards, protocols, requirements and rules as updated from time to time, represents the entire and final agreement between the Parties with respect to LifeMD's engagement of and relationship with Client, and supersedes all prior written and oral agreements. This Agreement does not become binding until executed by Client and LifeMD. No provision contained in this Agreement may be modified, amended, supplemented or waived in any manner whatsoever except by a supplemental writing agreed to and signed by the Parties or their respective successors-in-interest. Subject to Section 7 above, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors, assigns, heirs, executors and legal representatives.

WHEREOF, the Parties have caused this Agreement to be executed and delivered as of the day and year written above.

**Company:**

LifeMD, Inc.

By:

Title: President/CEO

Date: 2/15/2018

**Client**: BBAR Marketing, LLC

Name: Athanasios Ziros

By:

Title: Managing Member

Date: 2/15/2018

## Schedule A - Description of the Program

1. Individual calls the triage and speaks immediately to a medical agent represented and provided by BBAR Marketing, LLC.

2. The medical agent documents Individual's medical history and current medical concern or issue, using a secure, confidential, HIPAA-compliant electronic personal medical record system (PMR).

3. Individual's medical information is provided to a certified medical doctor ("Physician") duly licensed in the Individual's state for a consultation review of the medical condition.

4. At the consulting Physician discretion, the Physician will authorize a prescription for a prescription, where and when allowed by law, if sufficient medical information is available to said Physician. All consulting Physicians are not authorized or permitted to write any prescription for narcotic or DEA controlled substances or lifestyle modification aids.

5. The Physician will enter their NPI and DEA number along with Doctor notes on all approved prescription form sand electronically send back to be forwarded to a compounding pharmacy.

6. All completed prescription forms along with doctor notes will be recorded and stored in LifeMD's secure, confidential, HIPAA-compliant electronic personal medical record system (PMR).

### Terms and Conditions

LifeMD Telemedicine is the name of the Program provided by LifeMD, plus any and all service providers contracted with LifeMD take no responsibility for medical advice given. The Individual is entering into a doctor/patient relationship with LifeMD as a cross-coverage doctor in the US states of licensure. The Individual acknowledges they already have a primary care physician (PCP) and that LifeMD is not a substitute for their PCP. The Individual agrees to designate LifeMD as their provider when their PCP is not available. LifeMD takes no responsibility for medical advice given. Medical advice is not meant to replace treatment and consultation with the Individual's PCP.

THIS IS NOT A HEALTH INSURANCE POLICY OR A HEALTH INSURANCE BENEFIT. It is not intended to replace insurance and does not meet the minimum creditable coverage requirements under the Affordable Care Act.

General Release – Neither Party is responsible for, and disclaims all liability for, any and all damages arising due to any errors, inaccuracies or omissions in the Application due to errors, inaccuracies or omissions in the information provided by the Individual. Neither Party shall have liability whatsoever for any indirect, consequential, exemplary, special, incidental or punitive

damages. The LifeMD liability to Individual for any reason and upon any cause of action, whether tort, contract, statute or any other legal theory whatsoever, shall be at all times and in the aggregate be limited to the lesser of (a) $1,000, or (b) the amount of compensation actually paid by Individual or Client to Company during the three (3) month period immediately preceding the month in which the event upon which the liability is predicated.

Medical Information – Each Party is obligated to use commercially reasonable efforts to ensure that the Individual's medical information accurately reflects the information provided by the Individual.   The Individual is responsible for providing accurate and up-to-date medical information when calling for a doctor consultation when any information changes. If an Individual provides any information related to AIDS or HIV, including testing for the presence of the HIV + anti‑‑‑body/antigen, results of such test, and/or a diagnosis (ses) of AIDS and related conditions, the Individual will be required to provide written authorization to release this information.

Transmission of Medical Information – An Individual's medical information may be mailed, faxed or released over the telephone when authorized, along with any documents the Individual has supplied. An Individual's medical information will be released only to qualified medical personnel for the purpose of the Individual's care or for any other Individual‑‑‑authorized situation. It is the Individual's sole responsibility to notify their primary care doctor of the doctor consultation done by Program. If requested by Individual, LifeMD will forward the consultation notes to the Individual's primary care doctor.

Confidentiality – Neither Party will release any and all information only as authorized for disclosure by the Individual and as permitted by law. Each request for information will be verified before any disclosure will be made. LifeMD will make every attempt to confirm that the requested information is received by the intended recipient. All information is maintained at the highest level of confidentiality and is never provided to other services. Use of Information provided by LifeMD cannot guarantee that information provided to recipients will be used or acknowledged.

Service by State – Service by state and guidelines are subject to change at any time based on individual state laws, regulations and guidelines. This service is available to all Individuals regardless of age. Our doctors can provide a consultation to children less than 18 years of age through their parent or guardian by requiring that the parent or guardian participate in the doctor consultation by being on the telephone consultation. Service by state and guidelines are subject to change at any time based on individual state laws, regulations and guidelines. Individuals agree they are entering into a doctor/patient relationship with LifeMD™ and that LifeMD™ is not a substitute for their primary care doctor. Individuals agree to designate LifeMD™ as their provider when their primary care doctor is not available.

## **SCHEDULE B – COMPENSATION**

Fees due LifeMD by Client for Services per Schedule A:

Consultation Fee:

Client shall prepay LifeMD a Consultation Fee based on the number of actual physician consultations done as follows:

- A patient interaction which requires two doctor consultations per patient at the rate of $140 total per patient to receive two consultation membership access for laboratory request.

Further, Client understands, acknowledges and agrees the pricing and terms of the Program is considered "confidential" in nature in accordance with Section 9. Covenant Not to Disclose, Circumvent, or Solicit.

13

## SCHEDULE C- HIPAA and HITECH Business Associate Agreement

### RECITALS

LifeMD and the Client mutually agree to the terms of this Agreement to comply with the requirements of the Standards for Security and Privacy of Individually Identifiable Information (the "Security and Privacy Regulations"), as applicable, under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended, as well as with the Health Information Technology for Economic & Clinical Health Act ("HITECH"), Subtitle D-Privacy (§§1340013424), as part of the American Recovery and Reinvestment Act of 2009.

The Client and LifeMD have a business relationship wherein LifeMD is a HIPAA covered entity, and in conducting activities on behalf of LifeMD, Client is a HIPAA Business Associate of LifeMD.

- The Client and LifeMD wish to disclose certain information to the Client pursuant to the terms of this Agreement, some of which may constitute Protected Health Information ("PHI") (as defined below).
- LifeMD and the Client intend to protect the privacy and provide for the security of PHI disclosed to the Client pursuant to this Agreement in compliance with the HIPAA Security and Privacy Regulations and HITECH.
- HIPAA Security and Privacy Regulations and HITECH require LifeMD to enter into a contract containing specific requirements with the Client prior to the disclosure of PHI, as set forth in, but not limited to, Title 45, Sections 164.502(e) and 164.504(e) of the Code of Federal Regulations ("CFR") and contained in this Agreement.
- Client and LifeMD agree that Client may use consistent language contained in this agreement for the purposes of engaging with its Customers and only when utilizing the services of LifeMD.

### A. Definitions

1. **Breach.** "Breach" has the same meaning as this term has in §13400 of HITECH.
2. **Designated Record Set.** "Designated Record Set" has the same meaning as this term has in 45 C.F.R. 164.501.
3. **Electronic Protected Health Information** ("E-PHI"). "E-PHI" has the same meaning as "Protected Health Information in 45 C.F.R. §160.103, limited to information transmitted by, or maintained in, electronic media received by Client from, or on behalf of Covered Entity.
4. **Individual.** "Individual" has the same meaning as this term has in 45 C.F.R §160.103 and shall include a person that qualifies as a personal representative as set out in 45 C.F.R §160.502(g).
5. **Protected Health Information.** "Protected Health Information" ("PHI") has the same meaning as this term has in 45 C.F.R. §160.103.

14

doj_patel_3_0002116453

6. **Secretary.** "Secretary" has the same meaning as the Secretary of the Department of Health and Human Services.

7. **Unsecured PHI.** "Unsecured PHI" has the same meaning as the term has in §13401 of HITECH.

## B. Privacy of Protected Health Information

1. **Permitted Uses and Disclosures.** The Client agrees to use or disclose PHI that it creates for or receives from LifeMD only as follows:

    (a) Functions and Activities on LifeMD's Behalf. The Client is permitted to use and/or disclose PHI it creates for or receives from, LifeMD as necessary in Client's discretion to perform its obligations under this Agreement or other Agreement with LifeMD.

    (b) The Client's Operations. The Client is permitted by this Agreement to use Protected Health Information it creates for or receives from, LifeMD: 1) if such use is for the Client's proper management and administration; or, 2) As necessary to carry out the Client's legal responsibilities.

    (c) Other Permitted Disclosures. The Client is permitted by this Agreement to disclose Protected Health Information:

    1) if required by law; or,

    2) If the Client obtains reasonable assurances that the information will remain confidential, be used or further disclosed only as permitted by law or for the purposes for which the Client made the disclosure, and if the Client is notified of any breaches of confidentiality.

2. **Prohibition on Unauthorized Use or Disclosure.** The Client will neither use nor disclose Protected Health Information it creates for or receives from, LifeMD, or from another Client of LifeMD, except as permitted or required by this Agreement, or as required by law, or following receipt of prior written approval from LifeMD. LifeMD shall not request Client to use or disclose PHI in any manner that would not be permissible under the HIPAA Security and Privacy Regulations or HITECH.

3. **Minimum Necessary.** Absent an applicable exception, Client will only disclose the minimum amount of PHI necessary, as defined by the HIPAA Security and Privacy Regulations and HITECH, to accomplish the Client's intended purpose.

4. **Documentation.** Client agrees to document such disclosures of PHI, and information related to such disclosures, as would be required for LifeMD to respond to a request by an Individual for an accounting of disclosures.

5. **Information Safeguards.** The Client will comply with the HIPAA Security and Privacy Regulations and HITECH requirements to develop, document, implement, maintain and use reasonable administrative, technical and physical safeguards to preserve the integrity, availability and confidentiality of and to prevent non-permitted use or disclosure of Protected Health Information created for or received from LifeMD.

15

6. **Sub-Contractors and Agents.** The Client will require any of its subcontractor's agents, and other representatives to provide reasonable assurances in writing that subcontractor or agent will comply with the same restrictions and conditions that apply to the Client under the terms and conditions of this Agreement with respect to such PHI.

7. **Prohibition and Restrictions on the Sale of PHI and Marketing Communication.** The Client will not receive direct or indirect remuneration in exchange for any PHI unless a HIPAA-compliant authorization is obtained that includes information with regards to future sales. PHI may be sold for the purposes of public health, research or treatment, merger or sale of the entity or service payments. Limited marketing communications may be made by the Client on behalf of the covered entity so long as a HIPAA-complaint authorization is obtained

## C. Protected Health Information Access, Amendment and Disclosure Accounting

1. **Access.** To the extent the Client maintains the Designated Record Set, Client agrees, at the request of LifeMD, to provide LifeMD, or its designee, access to PHI in a Designated Record Set in a prompt and reasonable manner in order to meet the requirements under 45 Code of Federal Regulations § 164.524.
   Client, shall, upon request with reasonable notice, provide LifeMD access to its premises, during normal business hours, for a review and demonstration of its internal practices and procedures for safeguarding PHI.

2. **Amendments.** To the extent Client maintains the Designated Record Set, Client agrees to amend, or permit LifeMD access to amend, any portion of the PHI in the original Designated Record Set so that LifeMD may meet its amendment obligations under 45 Code of Federal Regulations § 164.526.

3. **Disclosure Accounting.** So that LifeMD may meet its disclosure accounting obligations under 45 Code of Federal Regulations § 164.528:
   - (a) Disclosure Tracking. Except as otherwise provided in Section 3.c. below, starting April 14, 2003, the Client will record each disclosure made to LifeMD or a third party of PHI, created for or received from LifeMD.
   - (b) Client agrees to provide LifeMD with information regarding Client's Disclosure Tracking to permit LifeMD to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 Code of Federal Regulations § 164.528 and HITECH. Client will deliver that information to LifeMD within ten (10) business days following the receipt by Client of the request from LifeMD.
   - (c) Exceptions from Disclosure Tracking. The Client need not record disclosure information or otherwise account for disclosures of PHI that this Agreement or LifeMD in writing permits or requires (i) for the purpose of LifeMD's treatment activities, payment activities, or health care operations, (ii) to the individual who is the subject of the PHI disclosed or to that individual's personal representative;

16

doj_patel_3_0002116455

(iii) to persons involved in that individual's health care or payment for health care; (iv) for notification for disaster relief purposes, (v) for national security or intelligence purposes, (vi) to law enforcement officials or correctional institutions regarding inmates; (vii) pursuant to an authorization; (viii) for disclosures of certain PHI made as part of a limited data set; (ix) for certain incidental disclosures that may occur where reasonable safeguards have been implemented; and (x) for disclosures prior to April 14, 2003.

4. **Inspection of Books and Records**. Upon request, the Client will make available its internal practices, books, and records, relating to its use and disclosure of the Protected Health Information it create for or receives from LifeMD to the Secretary to determine LifeMD's compliance with HIPAA Security and Privacy Regulations and HITECH. Client shall have a reasonable time within which to comply with such requests and, in no instances, shall access be required in less than fifteen (15) business days after the Client's receipt of such request. The Client shall provide LifeMD a copy of such request, and furnish the information or documents disclosed to the Secretary pursuant to such request, within ten (10) days following said disclosures.

## D. Breach of Privacy Obligations

1. **Mitigation.** The Client agrees to timely act to mitigate, to the extent practicable, any harmful effects that are known to Client of a use or disclosure of PHI held by Client in violation of the requirements of this Agreement.

2. **Reporting.** The Client will report to LifeMD any use or disclosure of PHI of which Client becomes aware that is not permitted by this Agreement, unless such use or disclosure is required by law or prior written approval of the use or disclosure was given by LifeMD.

    a. The Client will, as soon as practicable, but in no event later than sixty (60) calendar days, after becoming aware of any use or disclosure of PHI, in violation of this Agreement by the Client, or its subcontractors or agents, or by a third party to which the Client disclosed PHI in compliance with this Agreement, make a report to LifeMD.

    b. Client will notify LifeMD of any breach, as defined by HITECH, by Client pertaining to Unsecured PHI without unreasonable delay and in no case later than sixty (60) calendar days after discovery of such breach by Client. To the extent possible, Client should provide LifeMD with the identification of each individual affected by the breach as well as any information required to be provided by LifeMD in its notification to affected individuals. Client will promptly notify LifeMD of any additional information which becomes available with respect to the breach. Notice to the Secretary, will only be required if the breach of Unsecured PHI involved, at a minimum, five hundred (500) individuals. Notice to media outlets will only be required if the breach of Unsecured PHI involved, at a minimum, five hundred (500) individuals in the same state or jurisdiction.

17

doj_patel_3_0002116456

**E. Term and Termination of Agreement.**

1. **Term.** This Agreement shall continue in force so long as this agreement between LifeMD and Client remains in force.
2. **Right to Terminate for Breach.** LifeMD shall provide written notice if it determines that the Client has breached any material provision of this Agreement. The written notice must contain the facts necessary for the Client to evaluate and cure the alleged breach. If the breach is not cured within 30 days, LifeMD may immediately terminate this Agreement 3. **Obligations upon Termination**
   a. Continuing Privacy Obligation. The Client's obligation to protect the privacy of the PHI it created for or received from LifeMD, will be continuous and survive termination, cancellation, expiration or other conclusion of this Agreement. Client shall make no further uses and disclosures of PHI except for the proper management and administration of its business or to carry out its legal responsibilities, or as required by law.
   b. Other Obligations and Rights. The Client's other obligations and rights and LifeMD's obligations and rights upon termination, cancellation, expiration or other conclusion of this Agreement are only those set forth in this Agreement.

**F. General Provisions**

1. **Independent Relationship.** None of the provisions of this Agreement are intended to create, nor will they be deemed to create any relationship between the parties other than that of independent parties contracting with each other as independent contractors solely for the purposes of effecting the provisions of this Agreement.
2. **Rights of Third Parties.** This Agreement is between LifeMD and the Client and shall not be construed, interpreted, or deemed to confer any rights whatsoever to any third party or parties.
3. **Headings.** The headings of sections contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.
4. **Effective Date and Delivery.** This Agreement shall be effective upon the date on which LifeMD executes a full and complete copy of this Client Agreement by providing an electronic signature to this document and returning to the Client. Such manner of execution and delivery shall be the exclusive method for executing and delivering this Agreement, except as otherwise approved in writing by the Client, and this Agreement shall not become effective as between the Client and LifeMD unless it shall be delivered to the Client in this prescribed manner.
5. **Notices.** All notices and notifications under this Agreement shall be electronically signed and sent by the party providing the notice or notification to the listed representatives of either LifeMD or the Client as indicated in Section19 of this Agreement above.
6. **Amendment.** The Client agrees to take such action as necessary to amend this Agreement from time to time, as determined by the Client, to comply with any requirement related to the

18

Security and Privacy Regulations and HITECH, and any other regulations or provisions of the Security and Privacy Regulations and HITECH which are adopted, promulgated or published after the Effective Date.

7. **Interpretation.**  Any ambiguity in this Agreement shall be resolved so as to permit LifeMD to comply with the Security and Privacy Regulations and HITECH and any regulation promulgated under the Security and Privacy Regulations and HITECH.

## SCHEDULE D – MEMBERSHIP IN LIFEMD

In addition, the individuals of Client for whom LifeMD provides service as described in Schedule A, the individuals will be enrolled as (LifeMD) members; whereby individuals may have additional doctor consultations by paying a fee at time of service; said fee to be mutually determined by LifeMD and client.

19