```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                    WEST PALM BEACH DIVISION
                    CASE NO. 19-CR-80181-RAR-1
 3
      UNITED STATES OF AMERICA,          Miami, Florida
 4
                                         December 14, 2022
 5           vs.
                                         9:25 a.m. - 4:41 p.m.
 6
      MINAL PATEL,                       Volume 13
 7
                    Defendant.           Pages 1 to 43
 8    _____

 9
                       TRANSCRIPT OF JURY TRIAL
10          BEFORE THE HONORABLE RODOLFO A. RUIZ, II
                    UNITED STATES DISTRICT JUDGE
11
      APPEARANCES:
12

13    FOR THE GOVERNMENT:        JAMIE DE BOER
                                 EMILY GURSKIS
14                               REGINALD CUYLER
                                 KATHERINE ROOKARD
15                               UNITED STATES DEPARTMENT OF JUSTICE
                                 CRIMINAL DIVISION, FRAUD SECTION
16                               1400 New York Avenue, 8th Floor
                                 Washington, D.C. 20005
17
      FOR THE DEFENDANT:         STEVEN H. SADOW
18                               LAW OFFICE OF STEVEN H. SADOW, PC
                                 260 Peachtree Street NW
19                               Suite 2052
                                 Atlanta, Georgia 30303
20
      STENOGRAPHICALLY REPORTED BY:
21
                                 ILONA LUPOWITZ, CRR, RPR, RMR
22                               Official Court Reporter to:
                                 The Honorable Rodolfo A. Ruiz, II
23                               United States District Court
                                 299 East Broward Boulevard
24                               Fort Lauderdale, Florida 3301
                                 (954) 769-5568
25
```

```
 1    (Appearances continued)

 2
      FOR THE DEFENDANT:             DONALD F. SAMUEL
 3                                   GARLAND, SAMUEL & LOEB, PC
                                     3131 Maple Drive NE
 4                                   Atlanta Georgia 30305

 5                                   BRIAN T. RAFFERTY
                                     BAKER & HOSTETLER, LLP
 6                                   1170 Peactree Street, Suite
                                     2400
 7                                   Atlanta, Georgia 30309

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Call to the Order of the Court.)
 2             THE COURT:  Good morning, everyone.  Please be seated.
 3   All of our jurors are now present and accounted for, so we're
 4   going to to bring them in and let them continue deliberating.
 5             Any other concerns or issues from the government before
 6   we let them continue their work?
 7             MS. DE BOER:  No, Your Honor.  Thank you.
 8             THE COURT:  Any from the defense?
 9             MR. RAFFERTY:  No, Your Honor.
10             THE COURT:  Very good.  Let's go ahead and bring them
11   in.
12             THE COURT SECURITY OFFICER:  All rise.
13        (Jury enters at 9:25 a.m.)
14             THE COURT:  Please be seated, everyone.
15             Good morning, ladies and gentlemen.  Good to see you
16   all.  Hope you had a nice evening yesterday.
17             So as we discussed before we let you go home, we're
18   gonna pick up exactly where we left off today.  I'd say in
19   about an hour or so, I'll knock on the door to bring in some
20   coffee, if you want, just mid-morning, to pick you up.  And
21   then we'll also send in the menus so you can put in any lunch
22   order that you may want.
23             Obviously, I want you all to continue to listen to each
24   other, to keep an open mind, to review all the evidence, and if
25   any questions, always go to your jury instructions.  That's
```

1    what they're there for.  You each have your own copy.  You can

2    always consult them.  I understand that you do have the laptop

3    back there now, so you can utilize that to view any evidence.

4         Remember, of course, if you have a need to ask me a

5    question, do exactly what you did yesterday.  The foreperson

6    can write it, can send it to me, and then I will meet with the

7    lawyers and write back an answer if I can.  Of course, never

8    disclose to me, in any way, how anyone may be voting.

9         I will make sure, with Gracie, that we once again take

10   your phones.  So if you want to just check in and let family

11   know you're going to be deliberating, and if there's any

12   emergencies, they can call my chambers.

13        So with that being said, I want to let you guys get

14   back to work.  Thank you for being here and for your attention

15   to this matter.  At this time, you're excused to continue your

16   deliberations.

17        THE COURT SECURITY OFFICER:  All rise.

18        (Jury exits at 9:27 a.m.)

19        THE COURT:  All right, everyone.  Please be seated.

20        Again, I trust you've all left contact information with

21   my courtroom deputy.  In the event we have any questions, we'll

22   reach out to you.  But if there's nothing else to address at

23   this time, we will patiently wait for our jurors to get back to

24   us.  All right?

25        MS. DE BOER:  Thank you, Your Honor.

1          THE COURT:  You're welcome, guys.  We're in recess.

2          THE COURT SECURITY OFFICER:  All rise.

3      (Court recessed at 9:28 a.m.)

4      (Back on the record at 12:54 p.m.)

5          THE COURT:  Okay.  We have a lengthy note from our

6      foreperson on behalf of the jury.  I'm going to read it to you

7      all.  I think it's quite well thought out.

8          It states as follows:  "Dear Judge, we are looking for

9      guidance or a definition of 'intent to cause loss or injury,'

10     which is part of an element of 'intent to defraud' as presented

11     on page 21 of the jury instructions.  Is the intent to cause

12     loss or injury tied to the intent to defraud, or does the

13     prosecution have to prove both the intent to cause loss or

14     injury separate from the intention to defraud?  For example, if

15     we find proof of the intention to defraud that ultimately

16     causes loss or injury, but not proof of the intention to cause

17     loss or injury, how should we interpret that?  Is there any

18     case law or legal definition that can help?  Thank you, the

19     jury."

20         So I'm going to go to page 21 so we can kind of orient

21     ourselves and try to get a better sense of exactly where they

22     are.  They are in the fourth paragraph, which reads:  "To act

23     with intent to defraud means to do something with a specific

24     intent to use false or fraudulent pretenses, representations,

25     or promises to cause loss or injury.  Proving intent to deceive

1    alone, without the intent to cause loss or injury, is not

2    sufficient to prove intent to defraud."

3           That last line, to me, is exactly the answer; meaning,

4    that without the intent to cause loss or injury, you cannot go

5    ahead and simply establish this particular count by proving an

6    intent to defraud beyond a reasonable doubt.  I think that they

7    are subdividing it.

8           So based on the example, it appears that they want to

9    know that if the government only proffers the intent to fraud,

10   but does not prove the intent to cause loss or injury, can they

11   go ahead and establish guilt?  And we know, as far as I'm

12   concerned, the answer to that is no, it needs to be done

13   together.

14          So I would simply write it back to them and explain,

15   proving intent to defraud alone, without the intent to cause

16   loss or injury, is not sufficient to prove the intent to

17   defraud.  And I would just restate that.  I don't know that

18   doing more than that is safe because, if we do, we could be

19   inserting some more language.  They put "tied," "is it tied to

20   it."  It is tied to it.  I think it says it pretty clear.

21   Maybe they just didn't spot it.

22          I'll start with the government.  Do you have any

23   concern with that proposal?

24          MS. DE BOER:  I think we should phrase it consistent

25   with how it's phrased in the jury instructions because I think

1    the way that the Court -- I agree with the Court's point, and I

2    think it's just a matter of phrasing.  I think the way Your

3    Honor phrased it implies that intent to defraud and intent to

4    cause loss are two separate things.  But what the jury

5    instructions says is intent to defraud requires proof, you

6    know, false promises that were intended to cause loss.  So I

7    don't think answering it that way, that implies that they are

8    two separate things is the right approach, but I agree with the

9    Court's point, which is that, you know, it's very clearly

10   written here that doing something with a specific intent to use

11   lies, basically, to cause loss.

12          I would also add to the instruction and point them to

13   the paragraph below which says that the government doesn't have

14   to prove that the scheme actually succeeded in causing loss.

15          THE COURT:  So I agree with you.  Maybe I didn't make

16   myself clear.  I don't believe that they are separate.  That's

17   exactly what I want to avoid.  It needs to be clear that they

18   are tied together.  I also agree, using the language from the

19   jury instructions is the best way to go.

20          So what I think we would do is state -- and I know that

21   it says proving intent to deceive alone.  But using their

22   language a little bit, because it is intent to defraud they're

23   worried about, I think we can say proving intent to defraud

24   alone, without the intent to cause loss or injury, is not

25   sufficient to prove intent to defraud.  However, the government

1   does not have to prove that the alleged scheme actually

2   succeeded in defrauding anyone.

3       MS. DE BOER:  I understand, but my small quibble with

4   that is that that implies that there is such thing as intent to

5   defraud without loss, and that's the sort of incorrect place

6   that the jury appears to be at.  I think we need to phrase it

7   more in the affirmative, that intent to defraud requires proof

8   of false promises or pretenses that were specifically intended

9   to cause loss.  The way that the Court phrased it is, one

10  doesn't mean the other, but the jury instruction defines one to

11  mean the other.

12      THE COURT:  I guess the way I'm thinking is you cannot

13  prove one without the other.  That's why I said the intent.

14  I'm trying to read them in conjunction with one another.

15      One thing -- another way to do it is just to simply say

16  that proving intent to defraud requires -- I mean, the way

17  you're proposing it requires the intent or requires proof of --

18  requires proof of the intent to cause loss or injury.  I mean,

19  that's -- we're on the same page there, right?

20      MS. DE BOER:  Yes, I think that's a better way to

21  phrase it.

22      THE COURT:  Okay.  So proving intent to defraud

23  requires proof of the intent to cause loss or injury.  And then

24  -- and we might even -- if there's no issue with it, I think we

25  can probably restate our burden.  Proof beyond a reasonable

1    doubt might be the way to do it.

2         So I'm thinking, intent to defraud requires proof

3    beyond a reasonable doubt of the intent to cause loss or

4    injury.  However, the government doesn't have to prove that the

5    alleged scheme actually succeeded in defrauding anyone.  I

6    think doing it like that, taking the best of the last two

7    paragraphs of 21 and making it a little tighter for them to

8    understand.

9         Does that work for the government, the way I just posed

10   it?

11        MS. DE BOER:  Yes, Your Honor.

12        THE COURT:  Tell me on defense, guys, because I think

13   what we're doing there is exactly what you want, which is

14   making it very clear that it is tied.  Their concern is that

15   they could be divorced from one another, that you can have an

16   intent to defraud without any intent to cause loss or injury

17   and still be found guilty of the offense of healthcare fraud,

18   which is precisely what I want to avoid.

19        MR. SAMUEL:  Which is exactly what the Eleventh Circuit

20   held in the *Takhalov* case, which came out of this court with

21   the B girls and the beach club; that's exactly right.  You can

22   lie all you want, but unless you do it with the intent to cause

23   harm, it's not fraud.  So you have to intend to cause harm

24   through the mechanism of fraud.  They have to be linked.  And

25   that's *Takhalov*.

 1          THE COURT:  So you're comfortable with what I'm

 2   proposing?

 3          MR. SAMUEL:  Yes.

 4          THE COURT:  Excellent.  So what I'm going to do is

 5   write it up, send it back, and that should take care of it.

 6          Again, the only thing I'm going to state is proving

 7   intent to defraud requires proof beyond a reasonable doubt of

 8   the intent to cause loss or injury.  However, the government

 9   doesn't have to prove the alleged scheme actually succeeded in

10   defrauding anyone.  I think that's true to the instructions and

11   true to the case law.  I'll write that, send it back in, and

12   then obviously everyone stay tuned in case we have any

13   follow-ups.

14          But that was the only question they had, so I'm going

15   to take care of it now.  All right?

16          MS. DE BOER:  Thank you, Your Honor.

17          THE COURT:  You're welcome, everyone.  We're going to

18   be in recess.

19          (Court recessed at 1:01 p.m.)

20          (Back on the record at 4:02 p.m.)

21          THE COURT:  Okay.  We have been informed that we have a

22   verdict.

23          One thing I just wanted to note, because we were

24   cleaning everything up, getting everything ready to bring the

25   jurors out:  Exhibit 209-A from the government, the jury marked

1    it up, underlined stuff.  So when you all upload and deal with

2    the submission of the exhibits electronically, I don't know if

3    you're going to take this and scan it, but it may be better

4    that you do an electronic copy.  It's just a few pages.  We

5    told them not to, but they told my CRD they forgot and they

6    underlined something.

7          MS. DE BOER:  You can shred it, Your Honor.  We were

8    going to upload electronic versions anyway.

9          MR. RAFFERTY:  You said it was 209-A?

10         THE COURT:  209-A, Medicare Enrollment Application.

11   They were going through and making notes, and there was some

12   underlining.  I didn't want it to be uploaded in that fashion,

13   that's all.

14         All right.  So with that being said, we're going to go

15   ahead and bring in our jurors.  Okay?  Thank you.

16         THE COURT SECURITY OFFICER:  All rise.

17         (Jury enters at 4:04 p.m.)

18         THE COURT:  Please be seated, everyone.

19         Good afternoon, ladies and gentlemen of the jury.  Good

20   to see you all.  I have been informed that you've reached a

21   verdict.  If the foreperson could please hand the verdict to my

22   courtroom security officer.  Thank you.

23         Okay.  At this time, the Court will proceed with

24   publishing the verdict.

25         We, the jury, unanimously find as follows:  As to the

1    charges against defendant, Minal Patel, in the case of United

2    States of America v. Minal Patel, 19-CR-80181:

3              As to Count 1, conspiracy to commit healthcare fraud

4    and wire fraud:  Guilty.  If your verdict is guilty, indicate

5    which objects of the conspiracy.  Both healthcare fraud and

6    wire fraud.

7              As to Count 2, healthcare fraud:  Guilty.

8              As to Count 3, healthcare fraud:  Guilty.

9              As to Count 4, healthcare fraud:  Guilty.

10             As to Count 5, conspiracy to defraud the United States

11   and pay healthcare kickbacks:  Guilty.  If your verdict is

12   guilty, indicate which objects of the conspiracy.  Both defraud

13   the United States and pay healthcare kickbacks.

14             As to Count 6, payment of healthcare kickbacks:

15   Guilty.

16             As to Count 7, payment of healthcare kickbacks, guilty.

17             As to Count 8, payment of healthcare kickbacks:

18   Guilty.

19             As to Count 9, payment of healthcare kickbacks:

20   Guilty.

21             As to Count 10, conspiracy to commit money laundering:

22   Guilty.  If your verdict is guilty, indicate which objects of

23   the conspiracy.  Both concealment money laundering and

24   laundering proceeds over $10,000.

25             So say we all, signed and dated by the foreperson.

1      Ladies and gentlemen of the jury, at this time my

2   courtroom deputy is going to poll you, which means she's going

3   to ask each and every one of you if the verdict that I have

4   read is your verdict.

5      Gracie, you may go ahead.

6      THE COURTROOM DEPUTY:  Yes, Your Honor.

7      Juror No. 1, is the verdict, as read, your verdict?

8      THE JUROR:  Yes.

9      THE COURTROOM DEPUTY:  Juror No. 2, is the verdict, as

10   read, your verdict?

11      THE JUROR:  Yes.

12      THE COURT:  Juror No. 3, is the verdict, as read, your

13   verdict?

14      THE COURTROOM DEPUTY:  Juror No. 4, is the verdict, as

15   read, your verdict?

16      THE JUROR:  Yes.

17      THE COURTROOM DEPUTY:  Juror No. 5, is the verdict, as

18   read, your verdict?

19      THE JUROR:  Yes.

20      THE COURTROOM DEPUTY:  Juror No. 6, is the verdict, as

21   read, your verdict?

22      THE JUROR:  Yes.

23      THE COURTROOM DEPUTY:  Juror No. 7, is the verdict, as

24   read, your verdict?

25      THE JUROR:  Yes.

1              THE COURTROOM DEPUTY:  Juror No. 8, is the verdict, as

2    read, your verdict?

3              THE JUROR:  Yes.

4              THE COURTROOM DEPUTY:  Juror No. 9, is the verdict, as

5    read, your verdict?

6              THE JUROR:  Yes.

7              THE COURTROOM DEPUTY:  Juror No. 10, is the verdict, as

8    read, your verdict?

9              THE JUROR:  Yes.

10             THE COURTROOM DEPUTY:  Juror No. 11, is the verdict, as

11   read, your verdict?

12             THE JUROR:  Yes.

13             THE COURTROOM DEPUTY:  Juror No. 12, is the verdict, as

14   read, your verdict?

15             THE JUROR:  Yes.

16             THE COURTROOM DEPUTY:  They have answered in the

17   affirmative, Your Honor.

18             THE COURT:  Thank you, Gracie.

19             Thank you, ladies and gentlemen of the jury.  In just a

20   moment, I will be presenting you with your certificate of

21   service.  It also includes a letter that you may use for your

22   employers, or for your professors, that further breaks down all

23   the days that you were here in the courtroom with us.

24             I also, most importantly, want to thank you.  On behalf

25   of the parties, the lawyers, and everyone in the Southern

1    District of Florida, we truly appreciate and want to thank you

2    for your time and consideration of this case.

3        I also want to advise you of some very special

4    privileges that you enjoy as jurors:  No juror can ever be

5    required to talk about the discussions that occurred in the

6    jury room except by court order.  For many centuries, our

7    society has relied upon juries for the consideration of

8    difficult cases.  We have recognized, for hundreds of years,

9    that a jury's deliberations, discussions, and votes, should

10   remain their private affair as long as they wish it.

11   Therefore, the law gives you all a unique privilege not to

12   speak about your work as jurors.

13       Now, having said that, while you are at liberty to

14   speak with anyone about your deliberations, you are also at

15   liberty to refuse to speak to anyone.  A request to discuss

16   either your verdict or your deliberations may come from those

17   who are simply curious, from those who might seek to find fault

18   with you, from the media, from the attorneys, or from anyone

19   else.  It will be up to you, and only you, to decide whether to

20   preserve your privacy as jurors.

21       I have to say, I have been in this game for over a

22   decade already, and I struggle to think of a more dedicated

23   group of jurors that I have encountered in all my years on in

24   state and federal bench.  The amount of evidence that we have

25   asked you all to go through, the amount of testimony that you

1    have listened to, the dedication that you have shown me, and

2    the lawyers, and the clients, for the last two weeks has truly

3    been second to none.

4         I want to tell you all that it's been an absolute

5    privilege presiding over this case, working with all of you and

6    having you here every single day.  I know this has been an

7    unbelievable imposition on all of you in the sense that you've

8    had to make time, right on the eve of the holidays, for long

9    days to be here with us.  We really do truly appreciate it.

10        So I'm going to check in with the lawyers real quick,

11   sidebar, on one or two issues.  While I do that, I want to go

12   ahead and have the certificates handed out to you by my

13   courtroom deputy, if you would.

14        Come side-bar, guys.

15       (The following proceedings were held sidebar:)

16        THE COURT:  So what I want to confirm for the record,

17   gentlemen, because you told me yesterday, is that you were

18   going to be waiving jury on the forfeiture part?

19        MR. RAFFERTY:  That's correct.

20        THE COURT:  All right.  I haven't had a chance to

21   really colloquy him to make sure he's okay with it, so that may

22   be something that I'd like to do just in the abundance of

23   caution.  So I might excuse the jurors for just a moment, just

24   so I can get him on record, make sure there's no issue.  But I

25   don't want to let them go until everything is in the books.

1        But you guys are good to go on the forfeiture.  We'll

2    talk about scheduling.  I just want to make sure we can let

3    these jurors go.

4        MR. RAFFERTY:  Can we talk to him for just two minutes?

5        THE COURT:  Yes, talk to him, make sure he's onboard.

6    You got it, guys.

7        (Proceedings returned to open court.)

8        THE COURT:  All right.  As we're handing out the

9    remaining letters, what I'd like to do at this time is, before

10   I excuse you all, I'm going to have you all come back to the

11   jury room and collect all of your own personal affairs, give

12   your badges to Gracie, make sure you have all your letters, get

13   your phones back, make sure you get everything.  I will come in

14   to personally send you off in just a moment.  Okay?  But at

15   this time, you're all going to be excused.  Thank you very

16   much.

17       (Jury exits at 4:11 p.m.)

18         (Defendant, MINAL PATEL, duly sworn.)

19       THE COURT:  Have a seat.

20       Briefly, Mr. Patel, I know you've had a chance to speak

21   with your lawyers.  We discussed this earlier in the case, but

22   before I formally go and excuse the jurors, I want to make sure

23   you are making an intelligent and advised decision as to going

24   forward on the forfeiture part of the case through bench

25   proceedings or an evidentiary hearing with me.  You obviously

1    have, as your lawyers indicated in the beginning, and you saw

2    the government come in and talk about it with their forfeiture

3    team a few weeks ago.  We can have these jurors remain and play

4    a part in deciding the forfeiture aspect of your case, but you

5    could also waive that request and simply proceed with

6    evidentiary proceedings in front of the Court and do it by way

7    of a bench trial proceeding.

8         So have you had a chance to discuss this with your

9    lawyers?

10        THE DEFENDANT:  Yes.

11        THE COURT:  And at this time, is your election to go

12   forward with a bench trial and essentially waive your right to

13   a jury trial as to forfeiture?

14        THE DEFENDANT:  Yes.

15        THE COURT:  All right.  Very good.

16        So here's what we're going to go ahead and do.  If you

17   would all wait for me so I can excuse these jurors, I'm going

18   to take a one-minute break to let them know they're formally

19   excused now, so I don't have to keep them around, and we will

20   take the next steps after our verdict has been read.  So we'll

21   be back in one minute.

22        MS. DE BOER:  Thank you, Your Honor.

23        THE COURT:  You got it.

24        THE COURT SECURITY OFFICER:  All rise.

25        (Court recessed at 4:13 p.m.)

1       (Back on the record at 4:17 p.m.)

2       THE COURT:  Our jurors have been formally excused; they

3  have been discharged.  We have confirmed that the forfeiture

4  phase of the proceedings will not be proceeding with a jury,

5  but rather through a bench proceeding.

6       Now, at this time, having reviewed the verdict form,

7  Mr. Patel, in accordance with the jury verdict, I hereby find

8  you guilty of Count 1, conspiracy to commit healthcare fraud

9  and wire fraud, objects of the conspiracy being both healthcare

10 fraud and wire fraud.

11      I also adjudicate you guilty of Count 2 for healthcare

12 fraud; adjudicate you guilty of Count 3 for healthcare fraud;

13 adjudicate you guilty of Count 4 for healthcare fraud.

14      I adjudicate you guilty on Count 5, conspiracy to

15 defraud the United States and pay healthcare kickbacks; the

16 object of the conspiracy being to defraud the United States and

17 pay healthcare kickbacks.

18      I hereby adjudicate you guilty on Count 6, payment of

19 healthcare kickbacks; adjudicate you guilty on Count 7, payment

20 of healthcare kickbacks; adjudicate you guilty on Count 8,

21 payment of healthcare kickbacks; adjudicate you guilty on

22 Count 9, healthcare kickbacks.

23      And I adjudicate you guilty on Count 10, conspiracy to

24 commit money laundering, with the object of the conspiracy

25 being both concealment, money laundering and laundering

1    proceeds over $10,000.

2         So having adjudicated you guilty of all 10 counts in

3    the indictment and the verdict form, the next inquiry I have is

4    certainly to discuss the forfeiture proceedings and the

5    timeline for those proceedings.  I am well aware of the time of

6    day it is.

7         Now that it is not being done by jury trial -- I'm not

8    certain if I have a representative on the government's end.

9         Come forward, Counsel.  You're going to be handling the

10   forfeiture proceedings?

11        MR. CALDERON:  Yes, Your Honor.  We can schedule at a

12   time that is convenient for the parties and Your Honor.

13        THE COURT:  Correct.  I want to talk to the defense

14   team as well.  I know we've worked very hard.  We can set this

15   at a certain time.  Obviously we are still in the eve of the

16   holidays.  I have made the time and can do it over the coming

17   weeks or the coming days, even, because we had planned to be in

18   proceedings.  So I want to find a time that works for

19   everybody.

20        I also many acutely aware -- and I don't know because

21   no discussions have been had, of course -- - that sometimes, as

22   we get closer to sentencing, deals can be worked out; things

23   can be discussed.  Maybe the parties can sit down and talk to

24   the government, and we don't have to go through a lengthy

25   forfeiture proceeding.  I think it would behoove the defendant

1    if they can work something out on that front and essentially

2    moot this point as we get closer to the sentencing.

3           And I don't know, Mr. Rafferty.  It's too soon.  You

4    have to take a look at what they want.  But I'm curious what

5    your take on it is.  Because you may say to me, Judge, give us

6    a chance to work on this, before we have a proceeding, now that

7    we've waived.  We'll put a date on it, but we can -- give us

8    some time to see if we can figure something out.

9           What's your suggestion on that front?

10          MR. RAFFERTY:  Yes, Your Honor.  We would prefer to

11   have some time to discuss it with the team now; obviously,

12   Mr. Sadow not being present as an integral part of that team.

13   But also, as the Court has indicated, there may be a

14   willingness on our part to come to a resolution given the

15   standard of proof regarding forfeiture.

16          THE COURT:  So I think it would be a good idea for us

17   not to proceed directly into it and give everybody a chance to

18   try and work something out at this juncture.  It makes sense to

19   me not to waste anyone's time until you've had an opportunity

20   to explore that.

21          So what I would do, at this time, is I would probably

22   go ahead and pick a date where we can put it on the books.

23   Certainly we can come up with a date that we can all work with.

24   I don't think, based upon what I heard from the government

25   before the trial started, that the presentation of evidence for

1    the forfeiture would, quite frankly, take more than a day or

2    two.

3              Is that still your estimation?

4              MR. CALDERON:  Under a day, Your Honor.

5              THE COURT:  Under a day.  So we can agree to

6    essentially set a date, maybe one full day that we can block

7    out.

8              How far out, Mr. Rafferty, to give you a chance to sit

9    with your client, to meet with the government, to get Mr. Sadow

10   on the line?  How far do you think?  Because we do have the

11   intervening holidays.  So I don't have a problem doing

12   something in late January, even February, maybe give you about

13   60 days.  What do you think?

14             MR. RAFFERTY:  Your Honor, I believe Mr. Sadow is going

15   to be out of pocket for most of the month of January.  He and I

16   are scheduled to start a trial in front of Judge Corrigan, in

17   the Middle District of Florida, I believe, on February 21st.

18   So if we can perhaps pick a day in the first week of February,

19   that would work.

20             THE COURT:  I think that's a great idea.  In fact, what

21   I'm thinking of doing -- because it would be just about --

22   looking at my trial calendar, looks about a month out of the

23   sentencing date.  February 6th, it's a Monday.  That is going

24   to be about 30 days before the sentencing, and it gives us

25   enough time.  Certainly by the time we're working on PSIs and

1   everything else, we're going to have an opportunity, I think,

2   to try to come to an agreement.  I can grant the parties a

3   little more time, if necessary.

4        But my plan now is, I'm going to set forfeiture

5   proceedings in this case for February 6th.  It's the beginning

6   of my second trial week, so that works well.  I'll carve out

7   that day.  You have my full attention that day.  That's when

8   we'll do the forfeiture proceedings; we'll do them by bench

9   proceedings.

10       Again, if an agreement is reached before that, that

11  works for the Court.  I have no issue at all.  We can touch

12  base.  If there's a need for a status conference, let me know

13  before February 6th and I'll happily set one.  But we're going

14  to put that on the books now and block that day out.  All

15  right?  So I'll put some paperless order out that makes it

16  clear that forfeiture proceedings will take place on

17  February 6th.  Okay?

18       MR. CALDERON:  Thank you, Your Honor.

19       THE COURT:  You're welcome.

20       The next step beyond that is setting the sentencing.

21  Mr. Patel's sentencing is now going to be set for Tuesday,

22  March 7th, at 2:30 p.m.  That's going to be the date on the

23  calendar.  Certainly, if something disrupts that, we can

24  address it as we get a bit closer, but I need to put that on

25  the books.

1          So we will have, again, forfeiture proceedings on

2    February 6th, and we will have our sentencing on March 7th at

3    2:30 p.m.

4          Now, with those housekeeping issues addressed and the

5    forfeiture cleared up, I would turn to the government in terms

6    of his bond status.

7          As far as I can recall -- I will just point out that

8    Mr. Patel definitely has been out on bond, prepandemic, without

9    incident, but again, we are in a different place than we were

10   just an hour ago.

11         So what's the government's position on that?

12         MS. DE BOER:  Yes, Your Honor.  We are seeking remand

13   and moving to revoke the bond, as is required under 18 U.S.C.

14   Section 3143(a)(1).  The presumption of innocence is now gone.

15   Mr. Patel has been convicted of each and every count by this

16   jury.  His guidelines are literally off the charts.  They could

17   be calculated at a 47.  The highest guidelines number is 43.

18   I'm not saying that that's what we're recommending; I'm saying

19   that that is a calculation.  A sentence of life would be a

20   lawful sentence in this case.

21         This was obviously a difficult case.  This was a close

22   case.  This is a defendant who had a real shot of an acquittal,

23   and had every reason to show up every day until now, and the

24   tables have materially turned at this point.  The flight risk

25   is immense, given the potential sentence that he is facing.

1          We would also note that given the sophistication of the

2     crime at issue, this is a defendant who is capable of trickery,

3     who is capable of deceit, who is capable and has the financial

4     means to flee the country if that's what he desires.

5          At this point, unless there is clear and convincing

6     evidence proffered by the defense, the Court is required to

7     detain him under 18 U.S.C. Section 3143(a)(1).

8          I would also just make an observation for the Court

9     that there were two lab owners charged in pretty similar

10    schemes, about half a billion dollars each.  The other is

11    Mr. Satary.  It was out of the same law enforcement operation.

12    Mr. Satary is in the wind, and that happened after this trial

13    began.

14         So people have seen the writing on the wall.  The

15    tables have turned.  The presumption of innocence is gone, and

16    we would seek remand at this time.

17         THE COURT:  Very good.  Thank you for that.  I

18    suspected as much, in light of the amount of fraud in this

19    case.

20         On the defense team, gentlemen, any argument opposing

21    the government's request for remand at this time under

22    18 U.S.C. 3143(a)(1)?

23         MR. RAFFERTY:  Yes, Your Honor.  I'll talk about the

24    facts for a second, and Mr. Samuel can talk about the law.

25         THE COURT:  Yes.

1          MR. RAFFERTY:  You are correct.  Mr. Patel has been

2     under indictment for three years.  He's known about this.  He's

3     known about the guidelines, he's known about the range, and he

4     has been at every court appearance.  There has not been a

5     single violation of any kind during the entirety of the

6     pendency of this matter.

7          There are significant issues that remain in this case,

8     notwithstanding the findings of guilty here today by this jury.

9     It took them two full days to reach this verdict.  The

10    questions raised were some of the same kinds of questions

11    likely to have been raised as it relates to the calculation of

12    the guidelines in this case.

13          We don't agree with the government that the guidelines

14    are going to be, quote, "off the charts" because we think there

15    are significant issues presented that this jury didn't hear

16    about, but which we intend on presenting at a sentencing

17    hearing in this case.

18          Mr. Patel has already forfeited his passport as far as

19    his bond in the first place.  He has no place to go.  He stands

20    here with a room full of folks that are here to support him and

21    who will continue to support him throughout the pendency of

22    this matter up until sentencing.

23          I would also state that there are other conditions, if

24    the Court is so inclined or has any concerns, as the government

25    has suggested, that the Court could impose that would further

1   ensure Mr. Patel's appearance in any future proceedings.  Not

2   suggesting that he's a flight risk at all, but he could be

3   subject to ankle monitoring.  And there's a host of other

4   conditions that this Court could impose that would certainly

5   ensure his future appearance in court.

6          The last point I would raise, Your Honor, is it should

7   be obvious to just about everyone in the courtroom that Mr.

8   Patel suffers from some pretty serious medical problems.  You

9   can probably hear him cracking his jaw throughout this trial,

10   throughout this courtroom.  He is under the care of physicians.

11   He's going to continue to need that.  He's had surgeries.  The

12   burdens imposed upon him by putting him in custody pending

13   sentencing would impact him physically, his health.

14          And the last point, which obviously has always been the

15   case, is Mr. Patel is represented by counsel who is in Atlanta.

16   He is in Atlanta.  And in order for him to get proper

17   representation to defend himself through sentencing, having him

18   in Atlanta and accessible to Mr. Sadow and Mr. Samuel and

19   myself is critical.

20          And then I'll let Mr. Samuel speak about the standard.

21          THE COURT:  Sure.  Thank you for that.

22          Mr. Samuel?

23          MR. SAMUEL:  I think Mr. Rafferty has said it all.  The

24   only thing that we have to show is, by clear and convincing

25   evidence, that he's not a flight risk.  As Mr. Rafferty said,

1    he's been here for, what, three years now?  He's never fled.

2    There's been no problem.  He's always been in court on time, at

3    every court appearance, including before the magistrate and

4    before you.  He's given up his passport.  He hasn't traveled.

5         So we think that is clear and convincing evidence that

6    he's not a flight risk, notwithstanding the fact that the

7    government predicts that there will be a lengthy sentence.

8         He also poses no risk of danger to the community, the

9    government's not even arguing that he does, or that he imposes

10   a danger to any witness.

11        So we think we've met the standard of clear and

12   convincing evidence.  Unlike bond pending appeal, the issue of

13   the merits to the appeal is not an issue that is raised under

14   3433(a)(1).  That's for bond pending appeal for the next step.

15   So the only thing we have to establish is that he's not a

16   significant flight risk, he's not a danger to the community,

17   and he's not a danger to any witness.

18        Other than that, I would just emphasize all the points

19   that Mr. Rafferty made about the -- his eligibility for bond

20   pending sentencing.

21        THE COURT:  Thank you for that summary.

22        I don't know if you want to add any reply, Ms. de Boer,

23   before the Court makes a determination.

24        MS. DE BOER:  No, Your Honor.  We obviously do agree

25   he's complied with his conditions of bond, but the incentives

 1   are materially different at this point, as we stated earlier.

 2        THE COURT:  Yes.  I would say this:  My approach is

 3   always dependent on the case, as it should be.  I am not, nor

 4   have been, a one-size-fits-all jurist in any sort of

 5   determination when it comes to -- certainly when it comes to

 6   remand and when it comes to analyzing the position of a

 7   defendant at the conclusion of a trial.

 8        I will say that I have and share the government's

 9   concerns in this case.  The amount of fraud, the certain score

10   that will emerge, understanding that there's going to be some

11   argument there, but it is going to generate very significant

12   exposure, very significant exposure.  And although I am

13   sympathetic to some of the medical concerns and certainly the

14   issue of his availability -- and I could always make

15   accommodations and assist the defense in making sure they meet

16   with him and have enough time to review any presentence

17   investigation report with him.

18        Given what I have seen over the last two weeks, given

19   the scope of this fraud, given the action of co-conspirators,

20   given other individuals who are no longer -- their whereabouts

21   are no longer known, and the reality is, the position is

22   markedly different for Mr. Patel than it has been every single

23   day that we have been in trial.

24        I think that the expansive fraud and the lengthy

25   sentence that he faces count against him allowing to remain out

```
 1    of custody pending sentencing.  Although he has been here,
 2    knowing what he's facing now, and the resources that he may
 3    have available to him, passport notwithstanding -- I wish it
 4    was so easy as to believe that taking a passport from folks
 5    prevents flight risk.  Sadly, we know that's not often the
 6    case.
 7          So I do have a concern from the flight-risk angle, and
 8    given what he faces, I am going to be remanding him into
 9    custody day.  We already let the marshals know.  He will be
10    remanded, at this time, as soon as the marshals arrive.
11    They're on their way.
12          With that being said, anything else from the government
13    before we conclude today's proceedings?  I think the next time
14    we will see each other would be probably forfeiture, if
15    necessary.  If not, it would be at sentencing.
16          Is there anything else that we are missing?
17          MS. DE BOER:  No, Your Honor.  Thank you.
18          THE COURT:  Okay.  Thank you.
19          And Mr. Rafferty, anything else that we are still
20    missing that we need to address?
21          MR. RAFFERTY:  Not at this time, Your Honor.
22          THE COURT:  One thing I will ask:  If the defense team
23    -- it's not pertaining to the government.  If the defense team
24    would hang out a bit, I need to do some housekeeping with you
25    all.  The government may be excused at this time.
```

1          MS. DE BOER:  Thank you, Your Honor.

2          THE COURT:  Thank you very much.

3      (Government counsel exits the courtroom.)

4          THE COURT:  Come side-bar.

5      (The following proceedings were held sidebar:)

6          THE COURT:  All right.  So I wanted to ask you guys --

7   this is totally unrelated.  The issue with Sztyndor, that

8   transcript that we still have sealed, I just want to make sure,

9   do we have any concerns about that remaining under seal, and

10  for how much longer?  Not because it affects you guys, but

11  because I am going to be referring her to the disciplinary

12  committee as to her taped recordings of the third-party

13  witness, and I don't want to put that out there in the midst of

14  anything going on in our case.  I certainly don't want to even

15  -- I haven't even referred or touched on anything until this

16  case was over.  I am more than happy to wait through sentencing

17  if we think it might be the better course of conduct.

18          I know it doesn't really impact you guys, but I also

19  don't want anything in there to even -- let's puts it this way.

20  It's not going to affect a single piece of my sentencing in

21  this case.  I'm not holding any of that against Mr. Patel.

22  That is not playing any role whatsoever in what you guys are

23  doing.  It's more for my own record-keeping and when I need to

24  get it -- because there's enough in that transcript that I can

25  refer it to the disciplinary committee, and they're going to

 1  run with it.

 2          I can wait until after sentencing.  If we want to wait

 3  until we're all done, I can live with that too.  I just wanted

 4  to check in with you guys, as a courtesy, before I put that out

 5  there.

 6          MR. RAFFERTY:  Your Honor, I think for us, it is not

 7  going to matter.  It well may matter for the government.

 8          THE COURT:  That's my other concern.  And I don't need

 9  to be opening up a can of worms on that for this case.  It

10  shouldn't impact this case at all at this point.

11          MR. SAMUEL:  It may impact White's case.

12          MR. RAFFERTY:  There's a lawyer who's sitting in this

13  courtroom, who's been watching, who represents --

14          THE COURT:  Is he the lawyer that was with us on the

15  call?

16          MR. RAFFERTY:  No, he represents a defendant who's

17  indicted.  His name is Richard Garipoli.  It was pending in the

18  Southern District of Florida.  And White is a critical witness

19  against him.  The information in the transcript, I think once

20  public, is *Brady* material.

21          THE COURT:  For sure.

22          MR. SAMUEL:  And the government has a sense of it from

23  the hearings we had on Tuesday morning.

24          THE COURT:  I was going to say, they're smelling it.

25  They know something's going go on.  I just -- that's why.  But

1    I just don't know, at this point.  Once it's unsealed, they're

2    definitely going to get it in in that other case.

3            MR. RAFFERTY:  That's the only issue I see.

4            THE COURT:  Yes, but I don't think it's going to impact

5    your case at all.  I mean, at all.  I can tell you right now,

6    it has nothing to do with my sentencing at all.  I'm not going

7    to even consider it.  It's more about just letting it sit out

8    there, mostly for that third party.

9            Okay.  I just wanted to run it by you guys, just in

10   case I decide to unseal it.

11           MR. SAMUEL:  Can I ask you a question?

12           THE COURT:  Yeah, of course.

13           MR. SAMUEL:  Is he kept here, in the FDC building next

14   door?

15           THE COURT:  Mr. Patel?  Yeah, we're going to put him

16   here at FDC.  It's a lot better.

17           MR. SAMUEL:  He can't go to Atlanta?

18           THE COURT:  You know what?  That's not a bad idea.  If

19   you want to ask -- I mean, we can talk to BOP, but I don't have

20   a problem transferring him to Atlanta pending sentencing.  I

21   don't have a problem.  That way, you can go see him.

22           MR. SAMUEL:  I'm not sure that the BOP -- or the

23   marshals would be in charge?

24           THE COURT:  The marshals would be in charge.  I have no

25   problem asking the marshals to transfer him.

1          MR. SAMUEL:  Okay.

2          THE COURT:  It might have to be done by motion, but if

3    you want to do it, I can make a recommendation.  I have no

4    problem.  It's easier for you guys to see him.

5          MR. SAMUEL:  The other thing was, Steve was texting me.

6          Are we allowed to contact jurors?  I know you said

7    something, but I was not paying close attention.

8          THE COURT:  You're allowed to reach out to them, but

9    they can refuse to talk to you.  That's always been the rule.

10         MR. SAMUEL:  But we can initiate the --

11         THE COURT:  If you initiate it -- you ask them, and

12   they refuse --

13         MR. RAFFERTY:  In Jacksonville, different rule.

14         MR. SAMUEL:  Everybody's got a different rule.

15         THE COURT:  Oh, really?

16         MR. RAFFERTY:  People got in trouble for it.

17         MR. SAMUEL:  Some judges say -- tell the jurors, if you

18   want to be contacted, send your number to chambers.

19         THE COURT:  And the judges facilitate that?

20         MR. SAMUEL:  Yeah.

21         THE COURT:  No.  I mean, what I told them, as I said in

22   my final comments to them, it's up to you if you want to talk

23   to anybody.  You can refuse to talk to anybody, but you may be

24   approached by media or anybody else.

25         As far as I'm concerned, they can refuse, but you're

1    allowed to ask.

2         MR. SAMUEL:  Okay.

3         THE COURT:  So I think what I might do is, I might

4    unseal it, is my only concern.  I don't want you guys to be

5    surprised if I do something like that.  It's only being done

6    for discipline, and you guys have no part of it.  I just wanted

7    you guys to know, as a courtesy.

8         MR. RAFFERTY:  All right.

9         THE COURT:  You got it.  Thanks.

10        (Proceedings returned to open court.)

11        (Discussion was held off the record.)

12        THE COURT:  My CRD just reminded me.  If we do a

13   transport, it takes about four weeks, give or take.

14        So just to think about it, if we end up having your

15   client in Atlanta, just to plan ahead, we'd have to put it in

16   progress before March.  So if he goes to Atlanta, we just have

17   to work with you guys.  Just let us know.  We'll try to figure

18   it out.

19        Thank you very much.  We're in recess.

20        (Court recessed at 4:41 p.m.)

21

                    C E R T I F I C A T E

22

23

24        I hereby certify that the foregoing is an

25   accurate transcription of the proceedings in the

1    above-entitled matter.

2

3

     DATE:   December 14, 2022   /s/Ilona Lupowitz
4                                ILONA LUPOWITZ, CRR, RPR, RMR
                                 Official Court Reporter
5                                United States District Court
                                 299 East Broward Boulevard
6                                Fort Lauderdale, Florida 33301
                                 (954) 769-5568
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$10,000** [2] - 12:24, 20:1

## '

**'intent** [2] - 5:9, 5:10

## /

**/s/Ilona** [1] - 36:3

## 1

**1** [4] - 1:7, 12:3, 13:7, 19:8
**10** [4] - 12:21, 14:7, 19:23, 20:2
**11** [1] - 14:10
**1170** [1] - 2:6
**12** [1] - 14:13
**12:54** [1] - 5:4
**13** [1] - 1:6
**14** [2] - 1:4, 36:3
**1400** [1] - 1:16
**18** [1] - 24:13, 25:7, 25:22
**19-CR-80181** [1] - 12:2
**19-CR-80181-RAR-1** [1] - 1:2
**1:01** [1] - 10:19

## 2

**2** [3] - 12:7, 13:9, 19:11
**20005** [1] - 1:16
**2022** [2] - 1:4, 36:3
**2052** [1] - 1:19
**209-A** [3] - 10:25, 11:9, 11:10
**21** [3] - 5:11, 5:20, 9:7
**21st** [1] - 22:17
**2400** [1] - 2:6
**260** [1] - 1:18
**299** [2] - 1:23, 36:5
**2:30** [2] - 23:22, 24:3

## 3

**3** [3] - 12:8, 13:12, 19:12
**30** [1] - 22:24
**30303** [1] - 1:19
**30305** [1] - 2:4
**30309** [1] - 2:7
**3131** [1] - 2:3
**3143(a)(1** [1] - 25:22
**3143(a)(1)** [2] - 24:14, 25:7
**3301** [1] - 1:24
**33301** [1] - 36:6
**3433(a)(1)** [1] - 28:14

## 4

**4** [3] - 12:9, 13:14, 19:13
**43** [1] - 24:17
**47** [1] - 24:17
**4:02** [1] - 10:20
**4:04** [1] - 11:17
**4:11** [1] - 17:17
**4:13** [1] - 18:25
**4:17** [1] - 19:1
**4:41** [2] - 1:5, 35:20

## 5

**5** [3] - 12:10, 13:17, 19:14

## 6

**6** [3] - 12:14, 13:20, 19:18
**60** [1] - 22:13
**6th** [5] - 22:23, 23:5, 23:13, 23:17, 24:2

## 7

**7** [3] - 12:16, 13:23, 19:19
**769-5568** [2] - 1:24, 36:6
**7th** [2] - 23:22, 24:2

## 8

**8** [3] - 12:17, 14:1, 19:20
**8th** [1] - 1:16

## 9

**9** [3] - 12:19, 14:4, 19:22
**954** [2] - 1:24, 36:6
**9:25** [2] - 1:5, 3:13
**9:27** [1] - 4:18
**9:28** [1] - 5:3

## A

**a.m** [4] - 1:5, 3:13, 4:18, 5:3
**above-entitled** [1] - 36:1
**absolute** [1] - 16:4
**abundance** [1] - 16:22
**accessible** [1] - 27:18
**accommodations** [1] - 29:15
**accordance** [1] - 19:7
**accounted** [1] - 3:3
**accurate** [1] - 35:25
**acquittal** [1] - 24:22
**act** [1] - 5:22
**action** [1] - 29:19
**acutely** [1] - 20:20
**add** [2] - 7:12, 28:22
**address** [3] - 4:22, 23:24, 30:20
**addressed** [1] - 24:4
**adjudicate** [9] - 19:11, 19:12, 19:13, 19:14, 19:18, 19:19, 19:20, 19:21, 19:23
**adjudicated** [1] - 20:2
**advise** [1] - 15:3
**advised** [1] - 17:23
**affair** [1] - 15:10
**affairs** [1] - 17:11
**affect** [1] - 31:20
**affects** [1] - 31:10
**afternoon** [1] - 11:19
**ago** [2] - 18:3, 24:10
**agree** [7] - 7:1, 7:8, 7:15, 7:18, 22:5, 26:13, 28:24
**agreement** [2] - 23:2, 23:10
**ahead** [9] - 3:10, 6:5, 6:11, 11:15, 13:5, 16:12, 18:16, 21:22, 35:15
**alleged** [3] - 8:1, 9:5, 10:9
**allowed** [3] - 34:6, 34:8, 35:1
**allowing** [1] - 29:25
**alone** [4] - 6:1, 6:15, 7:21, 7:24
**AMERICA** [1] - 1:3
**America** [1] - 12:2
**amount** [4] - 15:24, 15:25, 25:18, 29:9
**analyzing** [1] - 29:6
**angle** [1] - 30:7
**ankle** [1] - 27:3
**answer** [3] - 4:7, 6:3, 6:12
**answered** [1] - 14:16
**answering** [1] - 7:7
**anyway** [1] - 11:8
**appeal** [3] - 28:12, 28:13, 28:14
**appearance** [4] - 26:4, 27:1, 27:5, 28:3
**Appearances** [1] - 2:1
**APPEARANCES** [1] - 1:11
**Application** [1] - 11:10
**appreciate** [2] - 15:1, 16:9
**approach** [2] - 7:8, 29:2
**approached** [1] - 34:24
**arguing** [1] - 28:9
**argument** [2] - 25:20, 29:11
**arrive** [1] - 30:10
**aspect** [1] - 18:4
**assist** [1] - 29:15
**Atlanta** [10] - 1:19, 2:4, 2:7, 27:15, 27:16, 27:18, 33:17, 33:20, 35:15, 35:16
**attention** [3] - 4:14, 23:7, 34:7
**attorneys** [1] - 15:18
**availability** [1] - 29:14
**available** [1] - 30:3
**Avenue** [1] - 1:16
**avoid** [2] - 7:17, 9:18
**aware** [2] - 20:5, 20:20

## B

**bad** [1] - 33:18
**badges** [1] - 17:12
**BAKER** [1] - 2:5
**bar** [2] - 16:14, 31:4
**base** [1] - 23:12
**based** [2] - 6:8, 21:24
**beach** [1] - 9:21
**BEACH** [1] - 1:2
**BEFORE** [1] - 1:10
**began** [1] - 25:13
**beginning** [2] - 18:1, 23:5
**behalf** [2] - 5:6, 14:24
**behoove** [1] - 20:25
**below** [1] - 7:13
**bench** [6] - 15:24, 17:24, 18:7, 18:12, 19:5, 23:8
**best** [2] - 7:19, 9:6
**better** [5] - 5:21, 8:20, 11:3, 31:17, 33:16
**beyond** [5] - 6:6, 8:25, 9:3, 10:7, 23:20
**billion** [1] - 25:10
**bit** [3] - 7:22, 23:24, 30:24
**block** [2] - 22:6, 23:14
**Boer** [1] - 28:22
**BOER** [14] - 1:13, 3:7, 4:25, 6:24, 8:3, 8:20, 9:11, 10:16, 11:7, 18:22, 24:12, 28:24, 30:17, 31:1
**bond** [8] - 24:6, 24:8, 24:13, 26:19, 28:12, 28:14, 28:19, 28:25
**books** [4] - 16:25, 21:22, 23:14, 23:25
**BOP** [2] - 33:19, 33:22
**Boulevard** [2] - 1:23, 36:5
**Brady** [1] - 32:20
**break** [1] - 18:18
**breaks** [1] - 14:22
**BRIAN** [1] - 2:5
**briefly** [1] - 17:20
**bring** [5] - 3:4, 3:10, 3:19, 10:24, 11:15
**Broward** [2] - 1:23, 36:5
**building** [1] - 33:13
**burden** [1] - 8:25
**burdens** [1] - 27:12
**BY** [1] - 1:20

## C

**calculated** [1] - 24:17
**calculation** [2] - 24:19,

26:11
**CALDERON** [3] - 20:11, 22:4, 23:18
**calendar** [2] - 22:22, 23:23
**cannot** [2] - 6:4, 8:12
**capable** [3] - 25:2, 25:3
**care** [3] - 10:5, 10:15, 27:10
**carve** [1] - 23:6
**case** [31] - 5:18, 9:20, 10:11, 10:12, 12:1, 15:2, 16:5, 17:21, 17:24, 18:4, 23:5, 24:20, 24:21, 24:22, 25:19, 26:7, 26:12, 26:17, 27:15, 29:3, 29:9, 30:6, 31:14, 31:16, 31:21, 32:9, 32:10, 32:11, 33:2, 33:5, 33:10
**CASE** [1] - 1:2
**cases** [1] - 15:8
**causes** [1] - 5:16
**causing** [1] - 7:14
**caution** [1] - 16:23
**centuries** [1] - 15:6
**certain** [3] - 20:8, 20:15, 29:9
**certainly** [8] - 20:4, 21:23, 22:25, 23:23, 27:4, 29:5, 29:13, 31:14
**certificate** [1] - 14:20
**certificates** [1] - 16:12
**certify** [1] - 35:24
**chambers** [2] - 4:12, 34:18
**chance** [6] - 16:20, 17:20, 18:8, 21:6, 21:17, 22:8
**charge** [2] - 33:23, 33:24
**charged** [1] - 25:9
**charges** [1] - 12:1
**charts** [2] - 24:16, 26:14
**check** [4] - 4:10, 16:10, 32:4
**Circuit** [1] - 9:19
**cleaning** [1] - 10:24
**clear** [9] - 6:20, 7:16, 7:17, 9:14, 23:16, 25:5, 27:24, 28:5, 28:11
**cleared** [1] - 24:5
**clearly** [1] - 7:9
**client** [2] - 22:9, 35:15
**clients** [1] - 16:2
**close** [2] - 24:21, 34:7
**closer** [3] - 20:22, 21:2, 23:24
**club** [1] - 9:21
**co** [1] - 29:19
**co-conspirators** [1] - 29:19
**coffee** [1] - 3:20
**collect** [1] - 17:11
**colloquy** [1] - 16:21
**comfortable** [1] - 10:1

**coming** [2] - 20:16, 20:17
**comments** [1] - 34:22
**commit** [4] - 12:3, 12:21, 19:8, 19:24
**committee** [2] - 31:12, 31:25
**community** [2] - 28:8, 28:16
**complied** [1] - 28:25
**concealment** [1] - 12:23, 19:25
**concern** [5] - 6:23, 9:14, 30:7, 32:8, 35:4
**concerned** [2] - 6:12, 34:25
**concerns** [5] - 3:5, 26:24, 29:9, 29:13, 31:9
**conclude** [1] - 30:13
**conclusion** [1] - 29:7
**conditions** [3] - 26:23, 27:4, 28:25
**conduct** [1] - 31:17
**conference** [1] - 23:12
**confirm** [1] - 16:16
**confirmed** [1] - 19:3
**conjunction** [1] - 8:14
**consider** [1] - 33:7
**consideration** [2] - 15:2, 15:7
**consistent** [1] - 6:24
**conspiracy** [12] - 12:3, 12:5, 12:10, 12:12, 12:21, 12:23, 19:8, 19:9, 19:14, 19:16, 19:23, 19:24
**conspirators** [1] - 29:19
**consult** [1] - 4:2
**contact** [2] - 4:20, 34:6
**contacted** [1] - 34:18
**continue** [6] - 3:4, 3:6, 3:23, 4:15, 26:21, 27:11
**continued** [1] - 2:1
**convenient** [1] - 20:12
**convicted** [1] - 24:15
**convincing** [4] - 25:5, 27:24, 28:5, 28:12
**copy** [2] - 4:1, 11:4
**correct** [3] - 16:19, 20:13, 26:1
**Corrigan** [1] - 22:16
**counsel** [2] - 27:15, 31:3
**Counsel** [1] - 20:9
**count** [3] - 6:5, 24:15, 29:25
**Count** [20] - 12:3, 12:7, 12:8, 12:9, 12:10, 12:14, 12:16, 12:17, 12:19, 12:21, 19:8, 19:11, 19:12, 19:13, 19:14, 19:18, 19:19, 19:20, 19:22, 19:23
**country** [1] - 25:4
**counts** [1] - 20:2

**course** [5] - 4:4, 4:7, 20:21, 31:17, 33:12
**COURT** [67] - 1:1, 3:2, 3:8, 3:10, 3:12, 3:14, 4:17, 4:19, 5:1, 5:2, 5:5, 7:15, 8:12, 8:22, 9:12, 10:1, 10:4, 10:17, 10:21, 11:10, 11:16, 11:18, 13:12, 14:18, 16:16, 16:20, 17:5, 17:8, 17:19, 18:11, 18:15, 18:23, 18:24, 19:2, 20:13, 21:16, 22:5, 22:20, 23:19, 25:17, 25:25, 27:21, 28:21, 29:2, 30:18, 30:22, 31:2, 31:4, 31:6, 32:8, 32:14, 32:21, 32:24, 33:4, 33:12, 33:15, 33:18, 33:24, 34:2, 34:8, 34:11, 34:15, 34:19, 34:21, 35:3, 35:9, 35:12
**Court** [21] - 1:22, 1:23, 3:1, 5:3, 7:1, 8:9, 10:19, 11:23, 18:6, 18:25, 21:13, 23:11, 25:6, 25:8, 26:24, 26:25, 27:4, 28:23, 35:20, 36:4, 36:5
**court** [8] - 9:20, 15:6, 17:7, 26:4, 27:5, 28:2, 28:3, 35:10
**Court's** [2] - 7:1, 7:9
**courtesy** [2] - 32:4, 35:7
**courtroom** [9] - 4:21, 11:22, 13:2, 14:23, 16:13, 27:7, 27:10, 31:3, 32:13
**COURTROOM** [12] - 13:6, 13:9, 13:14, 13:17, 13:20, 13:23, 14:1, 14:4, 14:7, 14:10, 14:13, 14:16
**cracking** [1] - 27:9
**CRD** [2] - 11:5, 35:12
**crime** [1] - 25:2
**CRIMINAL** [1] - 1:15
**critical** [2] - 27:19, 32:18
**CRR** [2] - 1:21, 36:4
**curious** [2] - 15:17, 21:4
**custody** [3] - 27:12, 30:1, 30:9
**CUYLER** [1] - 1:14

## D

**D.C** [1] - 1:16
**danger** [4] - 28:8, 28:10, 28:16, 28:17
**date** [6] - 21:7, 21:22, 21:23, 22:6, 22:23, 23:22
**DATE** [1] - 36:3
**dated** [1] - 12:25
**days** [6] - 14:23, 16:9, 20:17, 22:13, 22:24, 26:9
**DE** [14] - 1:13, 3:7, 4:25, 6:24, 8:3, 8:20, 9:11, 10:16, 11:7, 18:22, 24:12, 28:24,

30:17, 31:1
**de** [1] - 28:22
**deal** [1] - 11:1
**deals** [1] - 20:22
**dear** [1] - 5:8
**decade** [1] - 15:22
**deceit** [1] - 25:3
**deceive** [2] - 5:25, 7:21
**December** [2] - 1:4, 36:3
**decide** [2] - 15:19, 33:10
**deciding** [1] - 18:4
**decision** [1] - 17:23
**dedicated** [1] - 15:22
**dedication** [1] - 16:1
**defend** [1] - 27:17
**DEFENDANT** [4] - 1:17, 2:2, 18:10, 18:14
**Defendant** [2] - 1:7, 17:18
**defendant** [6] - 12:1, 20:25, 24:22, 25:2, 29:7, 32:16
**defense** [8] - 3:8, 9:12, 20:13, 25:6, 25:20, 29:15, 30:22, 30:23
**defines** [1] - 8:10
**definitely** [2] - 24:8, 33:2
**definition** [2] - 5:9, 5:18
**defraud** [24] - 5:12, 5:14, 5:15, 5:23, 6:2, 6:6, 6:15, 6:17, 7:3, 7:5, 7:22, 7:23, 7:25, 8:5, 8:7, 8:16, 8:22, 9:2, 9:16, 10:7, 12:10, 12:12, 19:15, 19:16
**defraud'** [1] - 5:10
**defrauding** [3] - 8:2, 9:5, 10:10
**deliberating** [2] - 3:4, 4:11
**deliberations** [4] - 4:16, 15:9, 15:14, 15:16
**DEPARTMENT** [1] - 1:15
**dependent** [1] - 29:3
**DEPUTY** [12] - 13:6, 13:9, 13:14, 13:17, 13:20, 13:23, 14:1, 14:4, 14:7, 14:10, 14:13, 14:16
**deputy** [3] - 4:21, 13:2, 16:13
**desires** [1] - 25:4
**detain** [1] - 25:7
**determination** [2] - 28:23, 29:5
**different** [5] - 24:9, 29:1, 29:22, 34:13, 34:14
**difficult** [2] - 15:8, 24:21
**directly** [1] - 21:17
**discharged** [1] - 19:3
**disciplinary** [2] - 31:11, 31:25
**discipline** [1] - 35:6
**disclose** [1] - 4:8

discuss [4] - 15:15, 18:8, 20:4, 21:11
discussed [3] - 3:17, 17:21, 20:23
discussion [1] - 35:11
discussions [3] - 15:5, 15:9, 20:21
disrupts [1] - 23:23
District [5] - 1:23, 15:1, 22:17, 32:18, 36:5
DISTRICT [3] - 1:1, 1:1, 1:10
DIVISION [2] - 1:2, 1:15
divorced [1] - 9:15
dollars [1] - 25:10
DONALD [1] - 2:2
done [5] - 6:12, 20:7, 32:3, 34:2, 35:5
door [2] - 3:19, 33:14
doubt [4] - 6:6, 9:1, 9:3, 10:7
down [2] - 14:22, 20:23
Drive [1] - 2:3
duly [1] - 17:18
during [1] - 26:5

**E**

easier [1] - 34:4
East [2] - 1:23, 36:5
easy [1] - 30:4
either [1] - 15:16
election [1] - 18:11
electronic [2] - 11:4, 11:8
electronically [1] - 11:2
element [1] - 5:10
Eleventh [1] - 9:19
eligibility [1] - 28:19
emerge [1] - 29:10
emergencies [1] - 4:12
EMILY [1] - 1:13
emphasize [1] - 28:18
employers [1] - 14:22
encountered [1] - 15:23
end [2] - 20:8, 35:14
enforcement [1] - 25:11
enjoy [1] - 15:4
Enrollment [1] - 11:10
ensure [2] - 27:1, 27:5
enters [2] - 3:13, 11:17
entirety [1] - 26:5
entitled [1] - 36:1
essentially [3] - 18:12, 21:1, 22:6
establish [3] - 6:5, 6:11, 28:15
estimation [1] - 22:3
eve [2] - 16:8, 20:15
evening [1] - 3:16

event [1] - 4:21
evidence [8] - 3:24, 4:3, 15:24, 21:25, 25:6, 27:25, 28:5, 28:12
evidentiary [2] - 17:25, 18:6
exactly [8] - 3:18, 4:5, 5:21, 6:3, 7:17, 9:13, 9:19, 9:21
example [2] - 5:14, 6:8
excellent [1] - 10:4
except [1] - 15:6
excuse [4] - 16:23, 17:10, 17:22, 18:17
excused [5] - 4:15, 17:15, 18:19, 19:2, 30:25
Exhibit [1] - 10:25
exhibits [1] - 11:2
exits [3] - 4:18, 17:17, 31:3
expansive [1] - 29:24
explain [1] - 6:14
explore [1] - 21:20
exposure [2] - 29:12

**F**

faces [2] - 29:25, 30:8
facilitate [1] - 34:19
facing [2] - 24:25, 30:2
fact [2] - 22:20, 28:6
facts [1] - 25:24
false [3] - 5:24, 7:6, 8:8
family [1] - 4:10
far [6] - 6:11, 22:8, 22:10, 24:7, 26:18, 34:25
fashion [1] - 11:12
fault [1] - 15:17
FDC [2] - 33:13, 33:16
February [8] - 22:12, 22:17, 22:18, 22:23, 23:5, 23:13, 23:17, 24:2
federal [1] - 15:24
few [2] - 11:4, 18:3
figure [2] - 21:8, 35:17
final [1] - 34:22
financial [1] - 25:3
findings [1] - 26:8
first [2] - 22:18, 26:19
fits [1] - 29:4
fled [1] - 28:1
flee [1] - 25:4
flight [7] - 24:24, 27:2, 27:25, 28:6, 28:16, 30:5, 30:7
flight-risk [1] - 30:7
Floor [1] - 1:16
FLORIDA [1] - 1:1
Florida [6] - 1:3, 1:24, 15:1, 22:17, 32:18, 36:6
folks [2] - 26:20, 30:4
follow [1] - 10:13

follow-ups [1] - 10:13
following [2] - 16:15, 31:5
follows [2] - 5:8, 11:25
FOR [3] - 1:13, 1:17, 2:2
foregoing [1] - 35:24
foreperson [4] - 4:5, 5:6, 11:21, 12:25
forfeited [1] - 26:18
forfeiture [16] - 16:18, 17:1, 17:24, 18:2, 18:4, 18:13, 19:3, 20:4, 20:10, 20:25, 21:15, 22:1, 23:4, 23:8, 23:16, 24:1, 24:5, 30:14
forgot [1] - 11:5
form [2] - 19:6, 20:3
formally [3] - 17:22, 18:18, 19:2
Fort [2] - 1:24, 36:6
forward [3] - 17:24, 18:12, 20:9
four [1] - 35:13
fourth [1] - 5:22
frankly [1] - 22:1
fraud [22] - 6:9, 9:17, 9:23, 9:24, 12:3, 12:4, 12:5, 12:6, 12:7, 12:8, 12:9, 19:8, 19:9, 19:10, 19:12, 19:13, 25:18, 29:9, 29:19, 29:24
FRAUD [1] - 1:15
fraudulent [1] - 5:24
front [4] - 18:6, 21:1, 21:9, 22:16
full [4] - 22:6, 23:7, 26:9, 26:20
future [2] - 27:1, 27:5

**G**

game [1] - 15:21
Garipoli [1] - 32:17
GARLAND [1] - 2:3
generate [1] - 29:11
gentlemen [6] - 3:15, 11:19, 13:1, 14:19, 16:17, 25:20
Georgia [3] - 1:19, 2:4, 2:7
girls [1] - 9:21
given [9] - 21:14, 24:25, 25:1, 28:4, 29:18, 29:19, 29:20, 30:8
gonna [1] - 3:18
GOVERNMENT [1] - 1:13
government [23] - 3:5, 6:9, 6:22, 7:13, 7:25, 9:4, 9:9, 10:8, 10:25, 18:2, 20:24, 21:24, 22:9, 24:5, 26:13, 26:24, 28:7, 30:12, 30:23, 30:25, 31:3, 32:7, 32:22
government's [5] - 20:8, 24:11, 25:21, 28:9, 29:8

Gracie [4] - 4:9, 13:5, 14:18, 17:12
grant [1] - 23:2
great [1] - 22:20
group [1] - 15:23
guess [1] - 8:12
guidance [1] - 5:9
guidelines [5] - 24:16, 24:17, 26:3, 26:12, 26:13
guilt [1] - 6:11
guilty [26] - 9:17, 12:4, 12:7, 12:8, 12:9, 12:11, 12:12, 12:15, 12:16, 12:18, 12:20, 12:22, 19:8, 19:11, 19:12, 19:13, 19:14, 19:18, 19:19, 19:20, 19:21, 19:23, 20:2, 26:8
GURSKIS [1] - 1:13
guys [17] - 4:13, 5:1, 9:12, 16:14, 17:1, 17:6, 31:6, 31:10, 31:18, 31:22, 32:4, 33:9, 34:4, 35:4, 35:6, 35:7, 35:17

**H**

half [1] - 25:10
hand [1] - 11:21
handed [1] - 16:12
handing [1] - 17:8
handling [1] - 20:9
hang [1] - 30:24
happily [1] - 23:13
happy [1] - 31:16
hard [1] - 20:14
harm [2] - 9:23
health [1] - 27:13
healthcare [23] - 9:17, 12:3, 12:5, 12:7, 12:8, 12:9, 12:11, 12:13, 12:14, 12:16, 12:17, 12:19, 19:8, 19:9, 19:11, 19:12, 19:13, 19:15, 19:17, 19:19, 19:20, 19:21, 19:22
hear [2] - 26:15, 27:9
heard [1] - 21:24
hearing [2] - 17:25, 26:17
hearings [1] - 32:23
held [4] - 9:20, 16:15, 31:5, 35:11
help [1] - 5:18
hereby [3] - 19:7, 19:18, 35:24
highest [1] - 24:17
himself [1] - 27:17
holding [1] - 31:21
holidays [3] - 16:8, 20:16, 22:11
home [1] - 3:17
Honor [24] - 3:7, 3:9, 4:25, 7:3, 9:11, 10:16, 11:7, 13:6,

14:17, 18:22, 20:11, 20:12, 21:10, 22:4, 22:14, 23:18, 24:12, 25:23, 27:6, 28:24, 30:17, 30:21, 31:1, 32:6
**Honorable** [1] - 1:22
**HONORABLE** [1] - 1:10
**hope** [1] - 3:16
**host** [1] - 27:3
**HOSTETLER** [2] - 2:5
**hour** [2] - 3:19, 24:10
**housekeeping** [2] - 24:4, 30:24
**hundreds** [1] - 15:8

## I

**idea** [3] - 21:16, 22:20, 33:18
**II** [2] - 1:10, 1:22
**ILONA** [2] - 1:21, 36:4
**immense** [1] - 24:25
**impact** [5] - 27:13, 31:18, 32:10, 32:11, 33:4
**implies** [3] - 7:3, 7:7, 8:4
**importantly** [1] - 14:24
**impose** [2] - 26:25, 27:4
**imposed** [1] - 27:12
**imposes** [1] - 28:9
**imposition** [1] - 16:7
**incentives** [1] - 28:25
**incident** [1] - 24:9
**inclined** [1] - 26:24
**includes** [1] - 14:21
**including** [1] - 28:3
**incorrect** [1] - 8:5
**indicate** [3] - 12:4, 12:12, 12:22
**indicated** [2] - 18:1, 21:13
**indicted** [1] - 32:17
**indictment** [2] - 20:3, 26:2
**individuals** [1] - 29:20
**information** [2] - 4:20, 32:19
**informed** [2] - 10:21, 11:20
**initiate** [2] - 34:10, 34:11
**injury** [16] - 5:9, 5:12, 5:14, 5:16, 5:17, 5:25, 6:1, 6:4, 6:10, 6:16, 7:24, 8:18, 8:23, 9:4, 9:16, 10:8
**innocence** [2] - 24:14, 25:15
**inquiry** [1] - 20:3
**inserting** [1] - 6:19
**instruction** [2] - 7:12, 8:10
**instructions** [6] - 3:25, 5:11, 6:25, 7:5, 7:19, 10:10
**integral** [1] - 21:12
**intelligent** [1] - 17:23
**intend** [2] - 9:23, 26:16
**intended** [2] - 7:6, 8:8

**intent** [39] - 5:11, 5:12, 5:13, 5:23, 5:24, 5:25, 6:1, 6:2, 6:4, 6:6, 6:9, 6:10, 6:15, 6:16, 7:3, 7:5, 7:10, 7:21, 7:22, 7:23, 7:24, 7:25, 8:4, 8:7, 8:13, 8:16, 8:17, 8:18, 8:22, 8:23, 9:2, 9:3, 9:16, 9:22, 10:7, 10:8
**intention** [3] - 5:14, 5:15, 5:16
**interpret** [1] - 5:17
**intervening** [1] - 22:11
**investigation** [1] - 29:17
**issue** [9] - 8:24, 16:24, 23:11, 25:2, 28:12, 28:13, 29:14, 31:7, 33:3
**issues** [3] - 3:5, 16:11, 24:4, 26:7, 26:15

## J

**Jacksonville** [1] - 34:13
**JAMIE** [1] - 1:13
**January** [2] - 22:12, 22:15
**jaw** [1] - 27:9
**Judge** [3] - 5:8, 21:5, 22:16
**JUDGE** [1] - 1:10
**judges** [2] - 34:17, 34:19
**juncture** [1] - 21:18
**juries** [1] - 15:7
**jurist** [1] - 29:4
**Juror** [11] - 13:7, 13:9, 13:12, 13:14, 13:17, 13:20, 13:23, 14:1, 14:4, 14:7, 14:10
**JUROR** [11] - 13:8, 13:11, 13:16, 13:19, 13:22, 13:25, 14:3, 14:6, 14:9, 14:12, 14:15
**juror** [2] - 14:13, 15:4
**jurors** [16] - 3:3, 4:23, 10:25, 11:15, 15:4, 15:12, 15:20, 15:23, 16:23, 17:3, 17:22, 18:3, 18:17, 19:2, 34:6, 34:17
**JURY** [1] - 1:9
**Jury** [4] - 3:13, 4:18, 11:17, 17:17
**jury** [24] - 3:25, 5:6, 5:11, 5:19, 6:25, 7:4, 7:19, 8:6, 8:10, 10:25, 11:19, 11:25, 13:1, 14:19, 15:6, 16:18, 17:11, 18:13, 19:4, 19:7, 20:7, 24:16, 26:8, 26:15
**jury's** [1] - 15:9
**JUSTICE** [1] - 1:15

## K

**KATHERINE** [1] - 1:14

**keep** [2] - 3:24, 18:19
**keeping** [1] - 31:23
**kept** [1] - 33:13
**kickbacks** [12] - 12:11, 12:13, 12:14, 12:16, 12:17, 12:19, 19:15, 19:17, 19:19, 19:20, 19:21, 19:22
**kind** [2] - 5:20, 26:5
**kinds** [1] - 26:10
**knock** [1] - 3:19
**knowing** [1] - 30:2
**known** [4] - 26:2, 26:3, 29:21

## L

**lab** [1] - 25:9
**ladies** [4] - 3:15, 11:19, 13:1, 14:19
**language** [3] - 6:19, 7:18, 7:22
**laptop** [1] - 4:2
**last** [6] - 6:3, 9:6, 16:2, 27:6, 27:14, 29:18
**late** [1] - 22:12
**Lauderdale** [2] - 1:24, 36:6
**laundering** [6] - 12:21, 12:23, 12:24, 19:24, 19:25
**LAW** [1] - 1:18
**law** [5] - 5:18, 10:11, 15:11, 25:11, 25:24
**lawful** [1] - 24:20
**lawyer** [2] - 32:12, 32:14
**lawyers** [7] - 4:7, 14:25, 16:2, 16:10, 17:21, 18:1, 18:9
**left** [2] - 3:18, 4:20
**legal** [1] - 5:18
**lengthy** [4] - 5:5, 20:24, 28:7, 29:24
**letter** [1] - 14:21
**letters** [2] - 17:9, 17:12
**letting** [1] - 33:7
**liberty** [2] - 15:13, 15:15
**lie** [1] - 9:22
**lies** [1] - 7:11
**life** [1] - 24:19
**light** [1] - 25:18
**likely** [1] - 26:11
**line** [2] - 6:3, 22:10
**linked** [1] - 9:24
**listen** [1] - 3:23
**listened** [1] - 16:1
**literally** [1] - 24:16
**live** [1] - 32:3
**LLP** [1] - 2:5
**LOEB** [1] - 2:3
**look** [1] - 21:4
**looking** [2] - 5:8, 22:22

**looks** [1] - 22:22
**loss** [22] - 5:9, 5:12, 5:13, 5:16, 5:17, 5:25, 6:1, 6:4, 6:10, 6:16, 7:4, 7:6, 7:11, 7:14, 7:24, 8:5, 8:9, 8:18, 8:23, 9:3, 9:16, 10:8
**lunch** [1] - 3:21
**LUPOWITZ** [2] - 1:21, 36:4
**Lupowitz** [1] - 36:3

## M

**magistrate** [1] - 28:3
**Maple** [1] - 2:3
**March** [3] - 23:22, 24:2, 35:16
**marked** [1] - 10:25
**markedly** [1] - 29:22
**marshals** [5] - 30:9, 30:10, 33:23, 33:24, 33:25
**material** [1] - 32:20
**materially** [2] - 24:24, 29:1
**matter** [7] - 4:15, 7:2, 26:6, 26:22, 32:7, 36:1
**mean** [7] - 8:10, 8:11, 8:16, 8:18, 33:5, 33:19, 34:21
**meaning** [1] - 6:3
**means** [3] - 5:23, 13:2, 25:4
**mechanism** [1] - 9:24
**media** [2] - 15:18, 34:24
**medical** [2] - 27:8, 29:13
**Medicare** [1] - 11:10
**meet** [3] - 4:6, 22:9, 29:15
**menus** [1] - 3:21
**merits** [1] - 28:13
**met** [1] - 28:11
**Miami** [1] - 1:3
**mid** [1] - 3:20
**mid-morning** [1] - 3:20
**Middle** [1] - 22:17
**midst** [1] - 31:13
**might** [8] - 8:24, 9:1, 15:17, 16:23, 31:17, 34:2, 35:3
**MINAL** [1] - 1:6, 17:18
**Minal** [2] - 12:1, 12:2
**mind** [1] - 3:24
**minute** [2] - 18:18, 18:21
**minutes** [1] - 17:4
**missing** [2] - 30:16, 30:20
**moment** [3] - 14:20, 16:23, 17:14
**Monday** [1] - 22:23
**money** [4] - 12:21, 12:23, 19:24, 19:25
**monitoring** [1] - 27:3
**month** [2] - 22:15, 22:22
**moot** [1] - 21:2
**morning** [4] - 3:2, 3:15, 3:20, 32:23

**most** [2] - 14:24, 22:15
**mostly** [1] - 33:8
**motion** [1] - 34:2
**moving** [1] - 24:13
**MR** [35] - 3:9, 9:19, 10:3, 11:9, 16:19, 17:4, 20:11, 21:10, 22:4, 22:14, 23:18, 25:23, 26:1, 27:23, 30:21, 32:6, 32:11, 32:12, 32:16, 32:22, 33:3, 33:11, 33:13, 33:17, 33:22, 34:1, 34:5, 34:10, 34:13, 34:14, 34:16, 34:17, 34:20, 35:2, 35:8
**MS** [13] - 3:7, 4:25, 6:24, 8:3, 8:20, 9:11, 10:16, 11:7, 18:22, 24:12, 28:24, 30:17, 31:1

**N**

**name** [1] - 32:17
**NE** [1] - 2:3
**necessary** [2] - 23:3, 30:15
**need** [9] - 4:4, 8:6, 23:12, 23:24, 27:11, 30:20, 30:24, 31:23, 32:8
**needs** [2] - 6:12, 7:17
**never** [2] - 4:7, 28:1
**New** [1] - 1:16
**next** [6] - 18:20, 20:3, 23:20, 28:14, 30:13, 33:13
**nice** [1] - 3:16
**NO** [1] - 1:2
**none** [1] - 16:3
**note** [3] - 5:5, 10:23, 25:1
**notes** [1] - 11:11
**nothing** [2] - 4:22, 33:6
**notwithstanding** [3] - 26:8, 28:6, 30:3
**number** [2] - 24:17, 34:18
**NW** [1] - 1:18

**O**

**object** [2] - 19:16, 19:24
**objects** [4] - 12:5, 12:12, 12:22, 19:9
**observation** [1] - 25:8
**obvious** [1] - 27:7
**obviously** [8] - 3:23, 10:12, 17:25, 20:15, 21:11, 24:21, 27:14, 28:24
**occurred** [1] - 15:5
**OF** [5] - 1:1, 1:3, 1:9, 1:15, 1:18
**offense** [1] - 9:17
**OFFICE** [1] - 1:18
**officer** [1] - 11:22
**OFFICER** [5] - 3:12, 4:17, 5:2, 11:16, 18:24

**Official** [2] - 1:22, 36:4
**often** [1] - 30:5
**onboard** [1] - 17:5
**once** [3] - 4:9, 32:19, 33:1
**one** [15] - 8:9, 8:10, 8:13, 8:14, 8:15, 9:15, 10:23, 13:3, 16:11, 18:18, 18:21, 22:6, 23:13, 29:4, 30:22
**one-minute** [1] - 18:18
**one-size-fits-all** [1] - 29:4
**open** [3] - 3:24, 17:7, 35:10
**opening** [1] - 32:9
**operation** [1] - 25:11
**opportunity** [2] - 21:19, 23:1
**opposing** [1] - 25:20
**Order** [1] - 3:1
**order** [4] - 3:22, 15:6, 23:15, 27:16
**orient** [1] - 5:20
**ourselves** [1] - 5:21
**own** [3] - 4:1, 17:11, 31:23
**owners** [1] - 25:9

**P**

**p.m** [11] - 1:5, 5:4, 10:19, 10:20, 11:17, 17:17, 18:25, 19:1, 23:22, 24:3, 35:20
**page** [3] - 5:11, 5:20, 8:19
**pages** [1] - 11:4
**Pages** [1] - 1:7
**PALM** [1] - 1:2
**paperless** [1] - 23:15
**paragraph** [2] - 5:22, 7:13
**paragraphs** [1] - 9:7
**part** [7] - 5:10, 16:18, 17:24, 18:4, 21:12, 21:14, 35:6
**particular** [1] - 6:5
**parties** [4] - 14:25, 20:12, 20:23, 23:2
**party** [2] - 31:12, 33:8
**passport** [4] - 26:18, 28:4, 30:3, 30:4
**Patel** [13] - 12:1, 12:2, 17:20, 19:7, 24:8, 24:15, 26:1, 26:18, 27:8, 27:15, 29:22, 31:21, 33:15
**PATEL** [2] - 1:6, 17:18
**Patel's** [2] - 23:21, 27:1
**patiently** [1] - 4:23
**pay** [4] - 12:11, 12:13, 19:15, 19:17
**paying** [1] - 34:7
**payment** [7] - 12:14, 12:16, 12:17, 12:19, 19:18, 19:19, 19:21
**PC** [2] - 1:18, 2:3
**Peachtree** [1] - 1:18
**Peachtree** [1] - 2:6

**pendency** [2] - 26:6, 26:21
**pending** [7] - 27:12, 28:12, 28:14, 28:20, 30:1, 32:17, 33:20
**people** [2] - 25:14, 34:16
**perhaps** [1] - 22:18
**personal** [1] - 17:11
**personally** [1] - 17:14
**pertaining** [1] - 30:23
**phase** [1] - 19:4
**phones** [2] - 4:10, 17:13
**phrase** [2] - 6:24, 8:6, 8:21
**phrased** [3] - 6:25, 7:3, 8:9
**phrasing** [1] - 7:2
**physically** [1] - 27:13
**physicians** [1] - 27:10
**pick** [4] - 3:18, 3:20, 21:22, 22:18
**piece** [1] - 31:20
**place** [5] - 8:5, 23:16, 24:9, 26:19
**plan** [2] - 23:4, 35:15
**planned** [1] - 20:17
**play** [1] - 18:3
**playing** [1] - 31:22
**pocket** [1] - 22:15
**point** [12] - 7:1, 7:9, 7:12, 21:2, 24:7, 24:24, 25:5, 27:6, 27:14, 29:1, 32:10, 33:1
**points** [1] - 28:18
**poll** [1] - 13:2
**posed** [1] - 9:9
**poses** [1] - 28:8
**position** [3] - 24:11, 29:6, 29:21
**potential** [1] - 24:25
**precisely** [1] - 9:18
**predicts** [1] - 28:7
**prefer** [1] - 21:10
**prepandemic** [1] - 24:8
**present** [2] - 3:3, 21:12
**presentation** [1] - 21:25
**presented** [2] - 5:10, 26:15
**presentence** [1] - 29:16
**presenting** [2] - 14:20, 26:16
**preserve** [1] - 15:20
**presiding** [1] - 16:5
**presumption** [2] - 24:14, 25:15
**pretenses** [2] - 5:24, 8:8
**pretty** [3] - 6:20, 25:9, 27:8
**prevents** [1] - 30:5
**privacy** [1] - 15:20
**private** [1] - 15:10
**privilege** [2] - 15:11, 16:5
**privileges** [1] - 15:4
**problem** [6] - 22:11, 28:2, 33:20, 33:21, 33:25, 34:4

**problems** [1] - 27:8
**proceed** [3] - 11:23, 18:5, 21:17
**proceeding** [5] - 18:7, 19:4, 19:5, 20:25, 21:6
**proceedings** [17] - 16:15, 17:25, 18:6, 19:4, 20:4, 20:5, 20:10, 20:18, 23:5, 23:8, 23:9, 23:16, 24:1, 27:1, 30:13, 31:5, 35:25
**Proceedings** [2] - 17:7, 35:10
**proceeds** [2] - 12:24, 20:1
**professors** [1] - 14:22
**proffered** [1] - 25:6
**proffers** [1] - 6:9
**progress** [1] - 35:16
**promises** [3] - 5:25, 7:6, 8:8
**proof** [11] - 5:15, 5:16, 7:5, 8:7, 8:17, 8:18, 8:23, 8:25, 9:2, 10:7, 21:15
**proper** [1] - 27:16
**proposal** [1] - 6:23
**proposing** [2] - 8:17, 10:2
**prosecution** [1] - 5:13
**prove** [10] - 5:13, 6:2, 6:10, 6:16, 7:14, 7:25, 8:1, 8:13, 9:4, 10:9
**proving** [8] - 5:25, 6:5, 6:15, 7:21, 7:23, 8:16, 8:22, 10:6
**PSIs** [1] - 22:25
**public** [1] - 32:20
**publishing** [1] - 11:24
**put** [11] - 3:21, 6:19, 21:7, 21:22, 23:14, 23:15, 23:24, 31:13, 32:4, 33:15, 35:15
**puts** [1] - 31:19
**putting** [1] - 27:12

**Q**

**questions** [4] - 3:25, 4:21, 26:10
**quibble** [1] - 8:3
**quick** [1] - 16:10
**quite** [2] - 5:7, 22:1
**quote** [1] - 26:14

**R**

**Rafferty** [6] - 21:3, 22:8, 27:23, 27:25, 28:19, 30:19
**RAFFERTY** [17] - 2:5, 3:9, 11:9, 16:19, 17:4, 21:10, 22:14, 25:23, 26:1, 30:21, 32:6, 32:12, 32:16, 33:3, 34:13, 34:16, 35:8
**raise** [1] - 27:6

raised [3] - 26:10, 26:11, 28:13
range [1] - 26:3
rather [1] - 19:5
reach [3] - 4:22, 26:9, 34:8
reached [2] - 11:20, 23:10
read [16] - 5:6, 8:14, 13:4, 13:7, 13:10, 13:12, 13:15, 13:18, 13:21, 13:24, 14:2, 14:5, 14:8, 14:11, 14:14, 18:20
reads [1] - 5:22
real [2] - 16:10, 24:22
reality [1] - 29:21
really [4] - 16:9, 16:21, 31:18, 34:15
reason [1] - 24:23
reasonable [4] - 6:6, 8:25, 9:3, 10:7
recess [3] - 5:1, 10:18, 35:19
recessed [4] - 5:3, 10:19, 18:25, 35:20
recognized [1] - 15:8
recommendation [1] - 34:3
recommending [1] - 24:18
record [7] - 5:4, 10:20, 16:16, 16:24, 19:1, 31:23, 35:11
record-keeping [1] - 31:23
recordings [1] - 31:12
refer [1] - 31:25
referred [1] - 31:15
referring [1] - 31:11
refuse [5] - 15:15, 34:9, 34:12, 34:23, 34:25
regarding [1] - 21:15
REGINALD [1] - 1:14
relates [1] - 26:11
relied [1] - 15:7
remain [4] - 15:10, 18:3, 26:7, 29:25
remaining [2] - 17:9, 31:9
remand [4] - 24:12, 25:16, 25:21, 29:6
remanded [1] - 30:10
remanding [1] - 30:8
remember [1] - 4:4
reminded [1] - 35:12
reply [1] - 28:22
report [1] - 29:17
REPORTED [1] - 1:20
Reporter [2] - 1:22, 36:4
representation [1] - 27:17
representations [1] - 5:24
representative [1] - 20:8
represented [1] - 27:15
represents [2] - 32:13,

32:16
request [3] - 15:15, 18:5, 25:21
required [3] - 15:5, 24:13, 25:6
requires [9] - 7:5, 8:7, 8:16, 8:17, 8:18, 8:23, 9:2, 10:7
resolution [1] - 21:14
resources [1] - 30:2
restate [2] - 6:17, 8:25
returned [2] - 17:7, 35:10
review [2] - 3:24, 29:16
reviewed [1] - 19:6
revoke [1] - 24:13
Richard [1] - 32:17
rise [5] - 3:12, 4:17, 5:2, 11:16, 18:24
risk [8] - 24:24, 27:2, 27:25, 28:6, 28:8, 28:16, 30:5, 30:7
RMR [1] - 1:21, 36:4
RODOLFO [1] - 1:10
Rodolfo [1] - 1:22
role [1] - 31:22
ROOKARD [1] - 1:14
room [3] - 15:6, 17:11, 26:20
RPR [2] - 1:21, 36:4
RUIZ [1] - 1:10
Ruiz [1] - 1:22
rule [3] - 34:9, 34:13, 34:14
run [2] - 32:1, 33:9

S

sadly [1] - 30:5
Sadow [4] - 21:12, 22:9, 22:14, 27:18
SADOW [2] - 1:17, 1:18
safe [1] - 6:18
SAMUEL [18] - 2:2, 2:3, 9:19, 10:3, 27:23, 32:11, 32:22, 33:11, 33:13, 33:17, 33:22, 34:1, 34:5, 34:10, 34:14, 34:17, 34:20, 35:2
Samuel [4] - 25:24, 27:18, 27:20, 27:22
Satary [2] - 25:11, 25:12
saw [1] - 18:1
scan [1] - 11:3
schedule [1] - 20:11
scheduled [1] - 22:16
scheduling [1] - 17:2
scheme [4] - 7:14, 8:1, 9:5, 10:9
schemes [1] - 25:10
scope [1] - 29:19
score [1] - 29:9
seal [1] - 31:9
sealed [1] - 31:8
seat [1] - 17:19

seated [4] - 3:2, 3:14, 4:19, 11:18
second [3] - 16:3, 23:6, 25:24
Section [2] - 24:14, 25:7
SECTION [1] - 1:15
security [1] - 11:22
SECURITY [5] - 3:12, 4:17, 5:2, 11:16, 18:24
see [7] - 3:15, 11:20, 21:8, 30:14, 33:3, 33:21, 34:4
seek [2] - 15:17, 25:16
seeking [1] - 24:12
send [6] - 3:21, 4:6, 10:5, 10:11, 17:14, 34:18
sense [4] - 5:21, 16:7, 21:18, 32:22
sentence [5] - 24:19, 24:20, 24:25, 28:7, 29:25
sentencing [19] - 20:22, 21:2, 22:23, 22:24, 23:20, 23:21, 24:2, 26:16, 26:22, 27:13, 27:17, 28:20, 30:1, 30:15, 31:16, 31:20, 32:2, 33:6, 33:20
separate [4] - 5:14, 7:4, 7:8, 7:16
serious [1] - 27:8
service [1] - 14:21
set [5] - 20:14, 22:6, 23:4, 23:13, 23:21
setting [1] - 23:20
share [1] - 29:8
shot [1] - 24:22
show [2] - 24:23, 27:24
shown [1] - 16:1
shred [1] - 11:7
side [2] - 16:14, 31:4
side-bar [2] - 16:14, 31:4
sidebar [3] - 16:11, 16:15, 31:5
signed [1] - 12:25
significant [5] - 26:7, 26:15, 28:16, 29:11, 29:12
similar [1] - 25:9
simply [5] - 6:5, 6:14, 8:15, 15:17, 18:5
single [4] - 16:6, 26:5, 29:22, 31:20
sit [3] - 20:23, 22:8, 33:7
sitting [1] - 32:12
size [1] - 29:4
small [1] - 8:3
smelling [1] - 32:24
society [1] - 15:7
something's [1] - 32:25
sometimes [1] - 20:21
soon [2] - 21:3, 30:10
sophistication [1] - 25:1

sort [2] - 8:5, 29:4
SOUTHERN [1] - 1:1
Southern [2] - 14:25, 32:18
special [1] - 15:3
specific [2] - 5:23, 7:10
specifically [1] - 8:8
spot [1] - 6:21
standard [3] - 21:15, 27:20, 28:11
stands [1] - 26:19
start [2] - 6:22, 22:16
started [1] - 21:25
state [4] - 7:20, 10:6, 15:24, 26:23
states [1] - 5:8
STATES [4] - 1:1, 1:3, 1:10, 1:15
States [7] - 1:23, 12:2, 12:10, 12:13, 19:15, 19:16, 36:5
status [2] - 23:12, 24:6
stay [1] - 10:12
STENOGRAPHICALLY [1] - 1:20
step [2] - 23:20, 28:14
steps [1] - 18:20
Steve [1] - 34:5
STEVEN [2] - 1:17, 1:18
still [5] - 9:17, 20:15, 22:3, 30:19, 31:8
Street [2] - 1:18, 2:6
struggle [1] - 15:22
stuff [1] - 11:1
subdividing [1] - 6:7
subject [1] - 27:3
submission [1] - 11:2
succeeded [4] - 7:14, 8:2, 9:5, 10:9
suffers [1] - 27:8
sufficient [3] - 6:2, 6:16, 7:25
suggested [1] - 26:25
suggesting [1] - 27:2
suggestion [1] - 21:9
Suite [2] - 1:19, 2:6
summary [1] - 28:21
support [2] - 26:20, 26:21
surgeries [1] - 27:11
surprised [1] - 35:5
suspected [1] - 25:18
sworn [1] - 17:18
sympathetic [1] - 29:13
Sztyndor [1] - 31:7

T

tables [2] - 24:24, 25:15
Takhalov [2] - 9:20, 9:25
taped [1] - 31:12

**team** [7] - 18:3, 20:14, 21:11, 21:12, 25:20, 30:22, 30:23

**terms** [1] - 24:5

**testimony** [1] - 15:25

**texting** [1] - 34:5

**THE** [95] - 1:10, 1:13, 1:17, 2:2, 3:2, 3:8, 3:10, 3:12, 3:14, 4:17, 4:19, 5:1, 5:2, 5:5, 7:15, 8:12, 8:22, 9:12, 10:1, 10:4, 10:17, 10:21, 11:10, 11:16, 11:18, 13:6, 13:8, 13:9, 13:11, 13:12, 13:14, 13:16, 13:17, 13:19, 13:20, 13:22, 13:23, 13:25, 14:1, 14:3, 14:4, 14:6, 14:7, 14:9, 14:10, 14:12, 14:13, 14:15, 14:16, 14:18, 16:16, 16:20, 17:5, 17:8, 17:19, 18:10, 18:11, 18:14, 18:15, 18:23, 18:24, 19:2, 20:13, 21:16, 22:5, 22:20, 23:19, 25:17, 25:25, 27:21, 28:21, 29:2, 30:18, 30:22, 31:2, 31:4, 31:6, 32:8, 32:14, 32:21, 32:24, 33:4, 33:12, 33:15, 33:18, 33:24, 34:2, 34:8, 34:11, 34:15, 34:19, 34:21, 35:3, 35:9, 35:12

**therefore** [1] - 15:11

**thinking** [3] - 8:12, 9:2, 22:21

**third** [2] - 31:12, 33:8

**third-party** [1] - 31:12

**three** [2] - 26:2, 28:1

**throughout** [3] - 26:21, 27:9, 27:10

**tied** [6] - 5:12, 6:19, 6:20, 7:18, 9:14

**tighter** [1] - 9:7

**timeline** [1] - 20:5

**today** [2] - 3:18, 26:8

**today's** [1] - 30:13

**together** [2] - 6:13, 7:18

**took** [1] - 26:9

**totally** [1] - 31:7

**touch** [1] - 23:11

**touched** [1] - 31:15

**TRANSCRIPT** [1] - 1:9

**transcript** [3] - 31:8, 31:24, 32:19

**transcription** [1] - 35:25

**transfer** [1] - 33:25

**transferring** [1] - 33:20

**transport** [1] - 35:13

**traveled** [1] - 28:4

**trial** [12] - 18:7, 18:12, 18:13, 20:7, 21:25, 22:16, 22:22, 23:6, 25:12, 27:9, 29:7, 29:23

**TRIAL** [1] - 1:9

**trickery** [1] - 25:2

**trouble** [1] - 34:16

**true** [2] - 10:10, 10:11

**truly** [3] - 15:1, 16:2, 16:9

**trust** [1] - 4:20

**try** [4] - 5:21, 21:18, 23:2, 35:17

**trying** [1] - 8:14

**Tuesday** [2] - 23:21, 32:23

**tuned** [1] - 10:12

**turn** [1] - 24:5

**turned** [2] - 24:24, 25:15

**two** [10] - 7:4, 7:8, 9:6, 16:2, 16:11, 17:4, 22:2, 25:9, 26:9, 29:18

## U

**U.S.C** [3] - 24:13, 25:7, 25:22

**ultimately** [1] - 5:15

**unanimously** [1] - 11:25

**unbelievable** [1] - 16:7

**under** [9] - 22:4, 22:5, 24:13, 25:7, 25:21, 26:2, 27:10, 28:13, 31:9

**underlined** [2] - 11:1, 11:6

**underlining** [1] - 11:12

**unique** [1] - 15:11

**UNITED** [4] - 1:1, 1:3, 1:10, 1:15

**United** [7] - 1:23, 12:1, 12:10, 12:13, 19:15, 19:16, 36:5

**unless** [2] - 9:22, 25:5

**unlike** [1] - 28:12

**unrelated** [1] - 31:7

**unseal** [2] - 33:10, 35:4

**unsealed** [1] - 33:1

**up** [14] - 3:18, 3:20, 10:5, 10:24, 11:1, 15:19, 21:23, 24:5, 24:23, 26:22, 28:4, 32:9, 34:22, 35:14

**upload** [2] - 11:1, 11:8

**uploaded** [1] - 11:12

**ups** [1] - 10:13

**utilize** [1] - 4:3

## V

**verdict** [39] - 10:22, 11:21, 11:24, 12:4, 12:11, 12:22, 13:3, 13:4, 13:7, 13:9, 13:10, 13:12, 13:13, 13:14, 13:15, 13:17, 13:18, 13:20, 13:21, 13:23, 13:24, 14:1, 14:2, 14:4, 14:5, 14:7, 14:8, 14:10, 14:11, 14:13, 14:14, 15:16, 18:20, 19:6, 19:7, 20:3, 26:9

**versions** [1] - 11:8

**view** [1] - 4:3

**violation** [1] - 26:5

**Volume** [1] - 1:6

**votes** [1] - 15:9

**voting** [1] - 4:8

**vs** [1] - 1:5

## W

**wait** [5] - 4:23, 18:17, 31:16, 32:2

**waive** [2] - 18:5, 18:12

**waived** [1] - 21:7

**waiving** [1] - 16:18

**wall** [1] - 25:14

**Washington** [1] - 1:16

**waste** [1] - 21:19

**watching** [1] - 32:13

**week** [2] - 22:18, 23:6

**weeks** [5] - 16:2, 18:3, 20:17, 29:18, 35:13

**welcome** [3] - 5:1, 10:17, 23:19

**WEST** [1] - 1:2

**whatsoever** [1] - 31:22

**whereabouts** [1] - 29:20

**White** [1] - 32:18

**White's** [1] - 32:11

**willingness** [1] - 21:14

**wind** [1] - 25:12

**wire** [4] - 12:4, 12:6, 19:9, 19:10

**wish** [2] - 15:10, 30:3

**witness** [4] - 28:10, 28:17, 31:13, 32:18

**works** [3] - 20:18, 23:6, 23:11

**worms** [1] - 32:9

**worried** [1] - 7:23

**write** [5] - 4:6, 4:7, 6:14, 10:5, 10:11

**writing** [1] - 25:14

**written** [1] - 7:10

## Y

**years** [4] - 15:8, 15:23, 26:2, 28:1

**yesterday** [3] - 3:16, 4:5, 16:17

**York** [1] - 1:16