UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

MINAL PATEL, a/k/a Minalkumar Patel,

        **Defendant.**

_____/

## UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

The United States of America, through undersigned counsel, respectfully submits this Response to Defendant Minal Patel's Objections to the Presentence Investigation Report [D.E. 526, "Defendant's Objections"]. As stated in the United States' Sentencing Memorandum [D.E. 527], the United States has no objections to the Presentence Investigation Report's ("PSR") guidelines calculation and recommends that the Court adopt Probation's calculation.[1] The United States hereby responds to certain factual objections in Defendant's Objections.[2]

**Paragraphs 17 & 18:** Patel requests that the Court adopt a lengthy explanation of the use of genetic testing in the PSR's description of the offense conduct. The PSR accurately describes the nature of the genetic tests at issue in this case and the means by which Patel misused these tests to justify his fraud scheme. Patel presented no evidence at trial justifying his assertions about the specific uses of genetic testing reflected in his objections. More importantly, Patel presented no evidence regarding Medneon or a database of genetic testing results, as he asserts in his objections.

---

[1] The United States previously provided factual clarifications to the draft PSR to Probation and defense counsel, which were adopted in the final PSR.
[2] The United States' Sentencing Memorandum addressed Defendant's legal arguments and Defendant's proposed guidelines calculation. The United States does not repeat those arguments here.

The suggestion that Patel made any serious effort to improve patient care is belied by heaps of evidence showing that he repeatedly took advantage of patients for personal gain. This evidence is described in detail in the United States' Sentencing Memorandum.

**Paragraphs 22 & 57:**   Patel owned LabSolutions for the entire time period of the conspiracy. Patel agreed in a deposition that he was the manager of LabSolutions, its founder, and that he had final say on any decisions at LabSolutions. GX 1115K. Patel signed the Medicare enrollment forms wherein he agreed that he was responsible for LabSolutions' compliance with federal rules and regulations.[3] *See* GX 209A, 210A, 212A, 214A. In order to obtain the privilege of billing Medicare, Patel agreed that the buck stopped with him. Consistent with all of his post-trial pleadings, he continues to blame others whom he outranked. Patel's continuous refusal to accept responsibility, even disputing his role within the company, should weigh heavily in the Court's Section 3553(a) analysis. In any event, the evidence of Patel's role at LabSolutions was largely undisputed at trial. The United States has never disputed that others were involved, but that does not change the fact that LabSolutions was Patel's company, that he oversaw its operations, that he had final authority, and that he signed Medicare enrollment paperwork certifying his responsibilities.

Furthermore, while Patel now objects to the suggestion that he was the architect of the scheme, testimony at trial proved that was exactly the role he played. In fact, Senthil Ramamurthy testified to precisely that fact: "The genetic testing was Minal's brain child. … He was the architect of this whole thing." 11/30/22 Tr. at 127:23-128:1.

---

[3]   Patel also signed enrollment forms for other providers, confirming that he was well-acquainted with the representations contained in those forms.

**Paragraph 25:**  Patel is correct that LabSolutions paid marketers, who in turn paid telemedicine companies.  However, Patel also directly paid companies managed by Sporn, who ran a marketing and telemedicine operation. The evidence at trial showed that LabSolutions paid approximately $4.6 million directly to companies Sporn operated. *See, e.g.*, GX 124. This evidence was undisputed at trial.

**Paragraphs 32-34, 45-47:**  The jury convicted Patel of kickback counts and health care fraud counts.  Patel's objections merely dispute the jury's verdicts.

**Paragraph 37:**  Patel contends that wire transfers were executed by LabSolutions' employees.  Regardless of who "executed" any given transfer, the undisputed evidence at trial showed that Patel was a signatory on the LabSolutions bank accounts. GX 139. The employee referenced in Patel's objections was not a signatory on the accounts.

**Paragraph 54:**  Patel attempts to carve out so-called "legitimate" billing in the hopes that the Court will allow him to keep some of the millions of dollars he pocketed during the conspiracy period.[4] However, as the evidence at trial established, the ability to bill Medicare is a privilege conditioned on a provider's truthful representations in enrollment forms and the provider's continuous compliance with Medicare's rules.  Defendant committed a flagrant, sophisticated, and massive fraud. Had Medicare known of this criminal activity, none of Defendant's claims would

---

[4] Defendant's attempt to carve up the billing does not impact the loss enhancement. Even if loss is limited to genetic testing (and there is no reason to limit loss in this manner), the billed amount falls within the same loss band for purposes of the guidelines calculation. Thus, the *only* reason for Defendant to pick apart the billing in this way is so that he can try to keep some of the money he stole. The Court should recognize this for what it is—a bold attempt to seek Court authorization to keep fraud proceeds. The Court should make the victims whole in this case by ordering full restitution.

have been paid, nor is it conceivable that Defendant would have retained the ability to bill Medicare for years.[5]

Furthermore, the evidence at trial showed that thousands of beneficiaries who LabSolutions billed for cancer genetic tests were also billed by LabSolutions for other types of tests beyond cancer genetic testing. Thus, Defendant's fraudulent practices resulted in more than just genetic testing billing, as Defendant apparently attempted to squeeze as much billing as possible out of these beneficiaries. *E.g.*, GX 114.

The United States takes no position on Defendant's statements about his personal offender characteristics. However, for the reasons stated in the United States' Sentencing Memorandum, these personal characteristics are far outweighed by the other Section 3553(a) factors, namely, the seriousness of the offense, the need for general and specific deterrence, the need to promote respect for the rule of law, and the substantial terms of imprisonment imposed on other health care fraud cases where the defendants were convicted at trial.

---

[5] Indeed, Medicare excludes persons with health care fraud convictions from enrolling as providers or owning providers. Had Defendant's scheme been uncovered and prosecuted after the first fraudulent bill was submitted, Defendant would not have been able to submit any further bills to Medicare or own a provider that submitted those bills.

## CONCLUSION

For the foregoing reasons, the United States requests that the Court overrule certain of Defendant's factual objections to the PSR.

Dated: August 12, 2023         Respectfully submitted,

                                             MARKENZY LAPOINTE
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By:   */s/ Jamie de Boer*
Jamie de Boer
Florida Special Bar No. A5502601
Emily Gurskis
Florida Special Bar No. A5502499
Reginald Cuyler Jr.
Florida Bar No. 0114062
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Tel: (202) 616-3842 (de Boer)
Tel: (202) 203-9186 (Gurskis)
Tel: (202) 202-7438 (Cuyler)
Jamie.deBoer@usdoj.gov
Emily.Gurskis@usdoj.gov
Reginald.Cuyler.Jr.@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, on August 12, 2023, I served and filed the foregoing document with the Clerk of the Court via ECF.

By:   */s/ Jamie de Boer*