UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80181-RAR

UNITED STATES OF AMERICA

vs.

MINAL PATEL, a/k/a "Minalkumar Patel,"

    Defendant.
_____/

## UNITED STATES' MOTION FOR
## PRELIMINARY ORDER OF FORFEITURE

Pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(7), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States of America (the "United States"), by and through the undersigned Assistant United States Attorney, hereby moves for the entry of a Preliminary Order of Forfeiture against Defendant Minal Patel, a/k/a Minalkumar Patel (the "Defendant") in the above-captioned matter. The United States seeks forfeiture of directly traceable assets and a forfeiture money judgment in the amount of approximately $187,369,693 in U.S. currency and forfeiture of certain property in satisfaction thereof. In support of this motion, the United States provides the attached Declarations of Special Agent Jordan Flores of the FBI ("Flores Decl.") and Michael Petron of Stout ("Petron Decl.") and the following factual and legal bases.

    **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On September 8, 2022, a federal grand jury in the Southern District of Florida returned a Superseding Indictment charging the Defendant with conspiracy to commit health care fraud and wire fraud in violation of 18 U.S.C. § 1349 (Count 1), health care fraud in violation of 18 U.S.C.

§ 1347 (Counts 2-4), conspiracy to defraud the United States and to pay and receive health care kickbacks in violation of 18 U.S.C. § 371 (Count 5), payment of kickbacks in connection with a federal health care program in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) (Counts 6-9), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 10). Superseding Indictment, ECF No. 275.

The Superseding Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. §§ 371, 1347, or 1349, or a violation of, or conspiracy to commit a violation of, 42 U.S.C. § 1320a-7b, as alleged in the Superseding Indictment, the Defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense, pursuant to 18 U.S.C. § 982(a)(7). *Id*. at 20. In addition, upon conviction of a violation of 18 U.S.C. § 1956, the Defendant shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). *Id*. The forfeiture allegations also included specific property subject to forfeiture, including funds seized from corporate and personal accounts, two vehicles, and real property. *Id*. at 20-21.

On December 14, 2022, after a two-week trial, a jury returned a verdict finding Defendant guilty on all counts in the Superseding Indictment. *See* Jury Verdict, ECF No. 393.

## II. MEMORANDUM OF LAW

### A. Directly Forfeitable Property

Any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of a federal health care offense is subject to forfeiture. 18 U.S.C. § 982(a)(7). In a health care fraud case, gross proceeds constitute the entire amount

received by a defendant as a result of the fraudulent scheme. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344-46 (11th Cir. 2009) (upholding forfeiture money judgment that included not only Medicare reimbursements but also sums paid by private insurance companies and patients because "but for [the defendant's] Medicare fraud, she would not have been entitled to collect these sums from the companies and patients"); *United States v. Saoud*, 595 F. App'x 182, 193 (4th Cir. 2014) ("'[G]ross proceeds' is properly interpreted to include the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.") (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. 2012)).

All property, real or personal "involved in" a violation of 18 U.S.C. § 1956, or any property traceable to such property, is subject to forfeiture to the United States. 18 U.S.C. § 982(a)(1). Property "involved in" a money laundering offense "includes that money or property which was actually laundered ('the corpus'), along with 'any commissions or fees paid to the launderer[ ] and any property used to facilitate the laundering offense.'" *United States v. Seher*, 562 F.3d 1344, 1368 (11th Cir. 2009) (quoting and citing *United States v. Puche*, 350 F.3d 1137, 1153 (11th Cir. 2003)). Funds that are pooled or commingled "to facilitate or disguise [a defendant's] illegal scheme" are forfeitable. *See id.* (internal quotations omitted).

If a defendant is convicted of such violations, the Court "shall order" the forfeiture of property as part of the sentence. *See* 18 U.S.C. § 982(a)(1), (a)(7). Criminal forfeiture is governed by the preponderance standard. *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be

>deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A). To the extent there is a third-party interest to any forfeited asset, such claims are addressed after the property is preliminary forfeited, in third-party ancillary proceedings. *See* 21 U.S.C. § 853(k), (n); Fed. R. Crim. P. 32.2.

### B. Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment. *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143-44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to

4

frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The Court in imposing a forfeiture money judgment may rely on an agent's reliable hearsay. *See United States v. Stathakis*, 2008 WL 413782, at *14 n.2 (E.D.N.Y. Feb. 13, 2008).

### C. Substitute Property

If directly forfeitable property is not available, the Court may order the forfeiture of substitute assets to satisfy a money judgment. *See* 21 U.S.C. § 853(p); Fed. R. Crim. P. 32.2(e); *United States v. Fleet*, 498 F.3d 1225, 1227-31 (11th Cir. 2007) (any property of the defendant may be forfeited as a substitute asset); *United States v. Knowles*, No. 19-14309, 2020 WL 3583413, at *1 (11th Cir. July 2, 2020) ("We've held that the word 'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all . . . .'") (citing *Fleet*, 498 F.3d at 1229). Substitute assets are available for forfeiture upon a showing that, due to any act or omission of a defendant, directly forfeitable property:

(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p). The government may establish such unavailability through an agent's declaration. *See United States v. Seher*, 562 F.3d 1344, 1373 (11th Cir. 2009).

### D. Difference Between Forfeiture and Restitution

Both forfeiture and restitution are mandatory in criminal cases. *See United States v. Brummer*, 598 F.3d 1248, 1250-51 (11th Cir. 2010) (the word "shall" does not convey discretion

and the district court was required to order forfeiture of the property in accordance with Fed. R. Crim. P. 32.2); 18 U.S.C. § 3664(f)(1)(A) (requiring district courts to order restitution in the full amount of each victim's losses). Although sometimes conflated, forfeiture and restitution serve different purposes. "While restitution seeks to make victims whole by reimbursing them for their losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United States Department of Justice." *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014) (citing *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007), *United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009), and *Libretti v. United States*, 516 U.S. 29, 39 (1995)). Because of this distinction, the Eleventh Circuit has repeatedly held that district courts cannot use restitution to offset the forfeiture amount ordered, or vice versa. *See United States v. Hernandez*, 803 F.3d 1341, 1343-44 (11th Cir. 2015); *Joseph*, 743 F.3d at 1354 ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits."); *United States v. Bane*, 720 F.3d 818, 827 n.8 (11th Cir. 2013); *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344-45 (11th Cir. 2009); *Browne*, 505 F.3d at 1281 (finding defendant's disgorgement of illicit profits did not divest the United States of its forfeiture interest in the full amount of offense).

### E.  Property Subject to Forfeiture in Instant Criminal Case

The Medicare Program ("Medicare") is a federally funded program that provides free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. Presentence Investigation Report ("PSI") ¶ 15, ECF No. 529. The benefits available under Medicare are governed by federal statutes and regulations. *Id*. Medicare is a "health care benefit

program," as defined by 18 U.S.C. § 24(b), and a "Federal health care program," as defined by 42 U.S.C. § 1320a-7b(f). *Id*. Medicare claims are required to be properly documented in accordance with Medicare rules and regulations. PSI ¶ 16. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes. *Id*.

Various forms of genetic testing exist using DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain diseases or health conditions in the future. PSI ¶ 17. For example, cancer genomic ("CGx") testing uses DNA sequencing to detect mutations in genes that could indicate a higher risk of developing certain types of cancers in the future. *Id*. CGx testing is not a method of diagnosing whether an individual presently has cancer. *Id*. Pharmacogenetic ("PGx") testing uses DNA sequencing to assess how the body's genetic makeup would affect the response to certain medications. *Id*.

If laboratory testing is necessary for the diagnosis or treatment of illness or injury, Medicare imposes additional requirements before covering the testing. PSI ¶ 18. "All diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests must be ordered by the physician who is treating the beneficiary, that is, the physician who furnishes a consultation or treats a beneficiary for a specific medical problem and who uses the results in the management of the beneficiary's specific medical problem." PSI ¶ 18 *quoting* Title 42, Code of Federal Regulations, § 410.32(a).

Beginning in July 2016, and continuing through August 2019, in Palm Beach County, Florida, and elsewhere, the Defendant conspired with co-conspirators to commit healthcare fraud offenses affecting Medicare and Medicare Advantage plans. PSI ¶ 20. The scheme involved the use of several companies which included, LabSolutions, LLC ("LabSolutions"), XGEN

Marketing, LLC, ("XGEN")[1], and Alite Medical Solutions, LLC ("Alite Medical")[2]. PSI ¶ 21. Defendant was the architect of the scheme and his participation, as the owner of LabSolutions with the ability to bill Medicare and distribute fraud proceeds, was central to the scheme. PSI ¶ 22.

LabSolutions was a laboratory that purportedly provided CGx, PGx, and other forms of laboratory testing to Medicare and Medicare Advantage beneficiaries. PSI ¶ 22. Defendant was the owner and operator of LabSolutions and a signatory on LabSolutions' bank accounts. *See id.*; GX 139; Petron Decl. ¶ 4. Indeed, Defendant was the manager of LabSolutions, its founder, and he had final say on any decisions at LabSolutions. GX 1115K. Defendant also signed the Medicare enrollment forms wherein he agreed that he was responsible for LabSolutions' compliance with federal rules and regulations. *See* GX 209A, 210A, 212A, 214A; *See e.g.* 11/29/22 Tr. 101:1-23 (McMillan testimony).

XGEN targeted Medicare beneficiaries for CGx and sold signed lab requisition forms to LabSolutions, in exchange for kickbacks. PSI ¶ 23. XGEN obtained prescriptions for medically unnecessary genetic testing of Medicare beneficiaries that were not eligible for reimbursement from the Medicare program. *Id*.

Defendant entered into agreements with co-conspirators, through LabSolutions, where he agreed to pay kickbacks to certain telemedicine and telemarketing companies and patient brokers for their referred patients for medical services, such as prescription and cancer genetic testing, that patients did not need. *See* PSI ¶¶25-26.

---

[1] XGEN was a company formed under the laws of Florida, with its listed place of business in Palm Beach County, Florida.
[2] One of the two managers and members of Alite Medical was a resident of Palm Beach County.

Defendant and co-conspirators created sham contracts and documentation that disguised the kickbacks and bribes as payments from LabSolutions for marketing services. PSI ¶ 33; 12/5/22 Tr. 66:16-22 (Sporn testimony) ("Q: . . .why have your company committed to a contract that doesn't reflect what you're really being paid to do? A: So we can get paid. Q: What do you mean so you can get paid? A: So we can get paid our kickbacks. If we didn't sign the agreement, we wouldn't have gotten paid by the lab."; 12/6/22 Tr. 53:6-25 (Griner testimony) (". . . Q: So do I have it right that either the kickbacks were coming at the beginning, directly from LabSolutions, and then once you looped in XGEN, they were coming through XGEN to [] IDGAF? A: That is correct."). In the contracts, Defendant, through LabSolutions, agreed to pay co-conspirators, a percentage as much as 50% of the gross revenues paid by Medicare in exchange for their recruitment and referral of Medicare beneficiaries, genetic tests, and doctors' orders to LabSolutions, regardless of whether the genetic tests were medically necessary. PSI ¶ 33; *See* 12/7/22 Tr. 25:25-26:1-4 (Hirsch testimony) ("Q: What did you do in exchange for kickbacks? A: I—two different things. I brought in a handful of reps that—that were submitting tests, and I also submitted tests as well, CGx and PGx.").

Defendant and his coconspirators caused LabSolutions to submit false and fraudulent claims to Medicare and Medicare Advantage plans in at least the approximate amount of $463,889,078. PSI ¶ 57; *See* Petron Decl. ¶ 4. As the result of these false and fraudulent claims, Medicare and Medicare Advantage Plans made payments to LabSolutions in at least the approximate amount of $187,369,693. PSI ¶ 57; *See* Petron Decl. ¶ 4.

Proceeds of the $187,369,693 were transferred between LabSolutions bank accounts and to Defendant's personal bank accounts and approximately $31,260,932 was seized by the United States. *See* Protective Order, Fn. 1., ECF No. 25; *See* Petron Decl. ¶ 48. Defendant used proceeds

of the fraud to purchase a red 2018 Ferrari 488 Spider with vehicle identification number ("VIN No.") ZFF80AMA6J0236067, a 2019 Land Rover Range Rover with Vin No. SALGW5SE2KA545805, and real property located at 1118 Blackshear Drive in Decatur, Georgia. Petron Decl. ¶¶ 8-22. In addition, funds seized from the following bank accounts are directly traceable to Defendant's healthcare fraud scheme:

- Approximately $441,355 seized from LabSolutions BB&T bank account ending in X6011;

- Approximately $13,896,135 seized from LabSolutions BB&T bank account ending in X5945;

- Approximately $534,793 seized from LabSolutions BB&T bank account ending in X5953;

- Approximately $6,018,166 seized from LabSolutions BB&T bank account ending in X0767;

- Approximately $4,000,000 seized from Defendant's BB&T bank account ending in X0065;

- Approximately $2,867,936 seized from Defendant's BB&T bank account ending in X8788; and

- Approximately $4,000,000 seized from Defendant's BB&T bank account ending in X0219.

Petron Decl. ¶¶ 23-47.

Based on the record in this case, the total value of the gross proceeds traceable to the offenses of conviction is approximately $187,369,693, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

In addition, also based on the record in this case, the following specific property is directly subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(1) and 18 U.S.C. § 982(a)(7):

    i.    One red 2018 Ferrari 488 Spider with vehicle identification number ZFF80AMA6J0236067;

    ii.     One 2019 Land Rover Range Rover with Vin No. SALGW5SE2KA545805;

    iii.    Approximately $441,355 seized from account number 0005245166011, held in the name of LabSolutions LLC at BB&T;

    iv.    Approximately $13,896,135 seized from account number 0005245165945, held in the name of LabSolutions LLC at BB&T;

    v.     Approximately $534,793 seized from account number in 0005245165953, held in the name of LabSolutions LLC at BB&T;

    vi.    Approximately $6,018,166 seized from account number 0005245160767, held in the name of LabSolutions LLC at BB&T;

    vii.   Approximately $4,000,000 seized from account number 0005248710065, held in the name of Minalkumar Patel at BB&T;

    viii.  Approximately $2,867,936 seized from account number 0005248718788, held in the name of Minalkumar Patel at BB&T;

    ix.    Approximately $4,000,000 seized from account number 0005248710219, held in the name of Minalkumar Patel at BB&T; and

    x.     Real property located at 1118 Blackshear Drive, Decatur, Georgia 30033, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,

> Also known as: All tract or parcel of land lying and being in Land Lot 103 of the 18th District of DeKalb County, Georgia, being Lot 2, The Fields of Druid Hills Subdivision, Phase I, as per plat recorded in Plat Book 248, Pages 81-84 Dekalb, County Georgia Records, which plat is incorporated herein by reference and made part of this description.
>
> Parcel Identification No. 18-103-06-025.

The United States has also not been able to locate all of the directly forfeitable property. It is the conclusion of FBI Special Agent Jordan Flores that other directly forfeitable property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without

difficulty. *See* Flores Decl. ¶ 4-5. Thus, pursuant to 21 U.S.C. § 853(p), the United States is authorized to forfeit substitute property, and the following property, titled to Defendant, should be forfeited to satisfy the forfeiture money judgment:

> i. Real property located at 548-552 Ponce De Leon Ave NE, Atlanta, Georgia 30033, including all buildings, fixtures, appurtenances, improvements, attachments and easements found therein or thereon,
>
> Also known as:
>
> PARCEL ONE
> All that tract or parcel of land lying and being in the City of Atlanta in Land Lot 48 of the 14th District, of Fulton County, Georgia, being a part of Lot 2 of the Subdivision of the Walker Estate, according to Subdivision made by Knock T. Thomas, C.E., October, 1916, recorded in Plat Book 7, page 40, in the office of the Clerk of the Superior Court of Fulton County, Georgia, more particularly described as follows:
>
> COMMENCING at a point on the northwest corner of Ponce de Leon Avenue and Ponce de Leon Court; thence north along the west side of Ponce de Leon Avenue twenty-five (25) feet; thence a little south of west twenty-four (24) feet and ten (10) inches to a point four (4) feet and three (3) inches south of the northwest corner of the lot sold R. K. Rambo by Mrs. Ivy T. Davis, recorded in Deed Book 505, page 449; thence south one hundred thirty-five (135) feet and nine (9) inches to the north side of Ponce de Leon Avenue; thence east along the north side of Ponce de Leon Avenue fifty (50) feet to the corner aforesaid at the point of beginning; being known as Nos. 558-560 Ponce de Leon Avenue, N.E., according to the present system of numbering houses in the City of Atlanta, and being the same property conveyed from Consolidated Realty Investments, Inc. to Rebie May and Joseph May by deed dated November 8, 1945 and recorded in Book 2092, Page 320, Fulton County Records.
>
> PARCEL TWO
> All that tract or parcel of land lying and being in the City of Atlanta in Land Lot 48 of the 14th District, of originally Henry now Fulton County, Georgia, known as Lot 1 as per plat of sub-division of the Walker Estate prepared by Knox E. Thomas, C.E., October, 1916, of file and record in Plat Book 7, page 40

of the records of Fulton County, Georgia, more particularly described as follows:

BEGINNING at a point of the northern side of Ponce de Lon Avenue 50 feet west of Ponce de Leon Court, and running thence westerly along Ponce de Leon Avenue 55 feet; thence northerly 200 feet; thence easterly 55 feet; and thence southerly 199.5 feet to Ponce de Leon Avenue and the point of beginning, said premises being improved property and known as No. 552 Ponce de Leon Avenue according to the present numbering of houses in the City of Atlanta, as per plat by Gordon Nalley, C.E., April 16, 1930, and being the same property conveyed from Luckie Operating Company to Joseph R. May by deed dated March 31, 1942 and recorded in Deed Book 1898, page 552, Fulton County Records.

PARCEL THREE
All that tract or parcel of land lying and being in the City of Atlanta in Land Lot 48 of the 14th District, of Fulton County, Georgia, being the property of J.G. Brandon, as per plat made by Gordon Nalley, C.E., May 21, 1930, on file in the office of Atlanta Title Company, more particularly described as follows:

BEGINNING at a point on the northeast side of Ponce de Leon Avenue five hundred seventy and seven-tenths (570.7) feet easterly and southeasterly from the northeast corner of Boulevard and Ponce de Leon Avenue, said point of beginning being at the east line of the property now or formerly owned by Robert R. Otis; running thence southeasterly along the northeastern side of Ponce de Leon Avenue fifty (50) feet; thence north two hundred (200) feet to the point of beginning on the northeast side of Ponce de Leon avenue, and being the same property conveyed by deed from Luckie Operating Company to Mrs. Rebie M. May, by deed dated October 16, and recorded in Deed Book 2013, page 230, Fulton County Records.

Parcel No. 14 004800080858.

Accordingly, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the forfeiture of specific property; the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

WHEREFORE, pursuant to 18 U.S.C. § 982(a)(1) and 18 U.S.C. § 982(a)(7), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States respectfully requests the entry of the attached order.

## **LOCAL RULE 88.9 CERTIFICATION**

Pursuant to Local Rule 88.9, I hereby certify that the undersigned counsel has conferred with defense counsel via telephone on August 15, 2023. Defense counsel objects to the forfeiture amount.

The parties currently have a forfeiture bench trial scheduled on August 25, 2023. If the Court is inclined to rule on the forfeiture amount at the forfeiture bench trial or at a later date after sentencing, the United States respectfully requests that the Court enter the attached alternative Preliminary Order of Forfeiture prior to, or at sentencing, pursuant to Fed. R. Crim. P. 32.2(b)(2)(C), which provides that

> If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment, the court may order that:
>
> (i) lists and identified property;
> (ii) described other property in general terms; and
> (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Defense counsel has indicated she has no objection to an alternative Proposed Order of Forfeiture.

          **MARKENZY LAPOINTE**
          **UNITES STATES ATTORNEY**

By: */s/ Marx P. Calderón*
    Marx P. Calderón
    Assistant United States Attorney
    Court ID No. A5502700
    99 N.E. 4th Street, 7th Floor
    Miami FL, 33132-2111
    Telephone: (305) 961-9036
    E-mail: Marx.Calderon@usdoj.gov