UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CR-80181-RAR

UNITED STATES OF AMERICA

vs.

MINAL PATEL, a/k/a "Minalkumar Patel,"

    Defendant.
_____/

## SENTENCING ORDER REGARDING LOSS AMOUNT

When it comes to the United States Sentencing Guidelines, they don't always mean what they say. That's because the United States Sentencing Commission has incorporated interpretive commentary intended to assist district judges in the application of the Guidelines to a specific offense. Nowhere is this dichotomy about what the Guidelines *say* versus what they ***mean*** more apparent than in § 2B1.1, titled "Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States." Within § 2B1.1, the Guideline provides a graduated scale that enhances a defendant's total offense level based on the monetary amount of "loss." *See* § 2B1.1(b)(1) ("If the loss exceeded $6,500, increase the offense level as follows . . . .").

At first blush, this seems quite straightforward. The more "loss" caused by a defendant, the greater the enhancement. But not so fast. The commentary defines "loss" not as the amount of loss **actually** caused by a defendant's actions. Instead, Application Note 3(A) of the Guidelines commentary expands the ordinary meaning of "loss" by instructing judges that "loss is the greater of actual loss **or intended loss**." (emphasis added). So, what is a district court to do when the commentary expands the plain meaning of the Guidelines in such a way?

The answer to that question recently changed with the Eleventh Circuit's decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc). In *Dupree*, the Eleventh Circuit discussed the effect of the Supreme Court's decision in *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019), on the Supreme Court's earlier decision in *Stinson v. United States*, 508 U.S. 36 (1993). *Stinson* provided that the Sentencing Commission's commentary on the Guidelines "was binding on federal courts unless the commentary was 'plainly erroneous or inconsistent with the guideline itself, a federal statute, or the Constitution.'" *United States v. Verdeza*, 69 F.4th 780, 793–94 (11th Cir. 2023) (alteration accepted) (quoting *United States v. Wilson*, 993 F.2d 214, 216 (11th Cir. 1993), *overruling recognized by Verdeza*, 69 F.4th at 793). But that changed when the Eleventh Circuit applied "*Kisor*'s gloss on [*Auer v. Robbins*, 519 U.S. 452 (1997)] and [*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410 (1945)]" to *Stinson*. *Dupree*, 57 F.4th at 1275. In applying *Kisor* to *Stinson*, the Eleventh Circuit "overruled [Circuit] precedent on how the Guidelines and the commentary interact." *Verdeza*, 69 F.4th at 793. Now, when a court in this Circuit is faced with a discrepancy between the Guidelines and the commentary, it must first "exhaust all the 'traditional tools' of construction" to determine if a guideline is genuinely ambiguous. *Dupree*, 57 F.4th at 1275 (quoting *Kisor*, 139 S. Ct. at 2415). If a guideline is unambiguous, "there is no plausible reason for deference" to the commentary, and the court must apply the guideline's unambiguous meaning. *See id.* (quoting *Kisor*, 139 S. Ct. at 2415).

*Kisor*'s effect on *Stinson* is an issue that is dividing a growing number of circuits. *See United States v. Vargas*, 74 F.4th 673, 678 & nn. 2–3 (5th Cir. 2023) (en banc) (citing cases). Indeed, courts have split on the exact issue presented in this case. *Compare United States v. Banks*, 55 F.4th 246, 257 (3d Cir. 2022) ("The ordinary meaning of 'loss' in the context of § 2B1.1 is 'actual loss.'"); *United States v. Kennert*, No. 22-1998, 2023 WL 4977456, at *4 (6th Cir. Aug. 3,

2023) (Murphy, J., concurring) (recognizing that "just because 'loss' can refer to [] different harms does not mean that it can refer to nonexistent ones too"), *with United States v. You*, 74 F.4th 378, 397 (6th Cir. 2023) (applying *Kisor* framework to the Guidelines but concluding "loss" is ambiguous). For its part, the Government argues that (1) *Dupree* does not control this case because the meaning of loss is ambiguous; and (2) recent Eleventh Circuit caselaw has signaled that courts should consider intended rather than actual loss when applying § 2B1.1. *See* United States' Sentencing Mem., [ECF No. 527], at 8–10. As explained on the record at Defendant's sentencing hearing, the Court disagrees with both arguments. *See* Paperless Minute Entry, [ECF No. 542]. Noting the growing disagreement among courts on how to apply § 2B1.1, the Court issues this supplemental decision to thoroughly explain its reasoning.

The Court begins with the Government's second point: that recent Eleventh Circuit caselaw signals § 2B1.1 is more appropriately read to encompass intended loss. The caselaw cited does not support this conclusion. The Government points to three recent decisions in which the Eleventh Circuit, when reviewing for plain error, did not disrupt district court sentences that relied on reading § 2B1.1 to include intended loss. *See Verdeza*, 69 F.4th at 794; *United States v. Crowther*, No. 21-12255, 2023 WL 3813509, at *3 (11th Cir. June 5, 2023); *United States v. Corker*, No. 22-10192, 2023 WL 1777195, at *4 (11th Cir. Feb. 6, 2023). But the Court does not find that these decisions compel reading the guideline to include intended loss. In all three cases, the Eleventh Circuit emphasized it was only reviewing for plain error, which in this circuit requires the exact issue to have been "specifically and directly resolved by . . . on point precedent from the Supreme Court or" the Eleventh Circuit. *United States v. Sanchez*, 940 F.3d 526, 537 (11th Cir. 2019). As recognized by the Eleventh Circuit, "whatever else *Dupree* did, it did not 'specifically and directly resolve' the question of whether § 2B1.1's definition of 'loss' is ambiguous."

*Verdeza*, 69 F.4th at 794 (alteration accepted). Because neither *Dupree*, *Verdeza*, *Crowther*, or *Corker* decided whether § 2B1.1 is ambiguous, they are not controlling on this issue. The Court must now turn, then, to determining whether § 2B1.1 is ambiguous.

Section 2B1.1 requires courts to "apply the greatest" amount of "[l]oss" at sentencing. § 2B1.1(b)(1). To determine if this may possibly encompass intended loss, the Court must "apply[] [the] traditional tools of statutory interpretation" and ascertain the "plain language definition" of "loss." *Dupree*, 57 F.4th at 1277. As stated by the Third Circuit when reviewing the same issue, "loss" only has one possible meaning: actual loss. *See Banks*, 55 F.4th at 257–58. Dictionary definitions of "loss" vary in scope—but all clearly contemplate a loss actually suffered by the victim. *Id.* To give just a few definitions, "loss" ordinarily refers to "the act or fact *of losing*," "a person or thing or an amount *that is lost*," and a "*decrease* in amount, magnitude, or degree." WEBSTER'S THIRD NEW INT'L DICTIONARY, at 1338 (1993) (emphases added); *see also Banks*, 55 F.4th at 257–58 (providing additional definitions). None of these definitions provide room for considering "nonexistent" losses. *Kennert*, 2023 WL 4977456, at *4 (Murphy, J., concurring). Indeed, where the loss is merely "intended" it never materialized, as no "amount . . . [was] lost." WEBSTER'S THIRD NEW INT'L DICTIONARY, at 1338. By instructing courts to consider intended loss, the commentary expands the concept of "loss" beyond its ordinary meaning. Thus, as explained at sentencing, this Court finds § 2B1.1 unambiguously requires courts to only consider actual loss.[1]

---

[1] The Court notes, however, that while § 2B1.1 requires a court to only use actual loss when calculating a defendant's offense level, nothing prohibits a court from considering intended loss pursuant to 18 U.S.C. § 3553(a). Courts continue to have "considerable discretion in deciding whether the § 3553(a) factors justify a variance and the extent of one that is appropriate." *See United States v. Oudomsine*, 57 F.4th 1262, 1266 (11th Cir. 2023) (quoting *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009)).

Certainly, the Court recognizes pre-*Dupree* caselaw from the Eleventh Circuit "require[d] district courts to consider the intended loss amount when calculating the loss attributable to the defendant." *Verdeza*, 69 F.4th at 794 (citing *United States v. Orton*, 73 F.3d 331, 333 (11th Cir. 1996)); *see also United States v. Moss*, 34 F.4th 1176, 1190 (11th Cir. 2022) (looking to intended loss when applying § 2B1.1). *Moss* and *Orton*, however, relied on the commentary to the Guidelines—not the text. *See Moss*, 34 F.4th at 1190; *Orton*, 73 F.3d at 333. But the Eleventh Circuit's mandate in *Dupree* is clear: if the Guidelines are unambiguous, this Court does not reach the commentary. *Dupree*, 57 F.4th at 1276–77. Additionally, while the traditional tools of construction can include the "structure, history, and purpose" of a regulation, *see Kisor*, 139 S. Ct. at 2415, the Court finds no need to consider the "context and purpose of" § 2B1.1. *You*, 74 F.4th at 397. Generally, a court's inquiry "must begin, and usually end[], with the text." *See United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021) (quoting *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995)). Where the text of a provision is "plain and unambiguous, there is no need for further inquiry." *See id.* (quoting *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 (11th Cir. 2018)); *see also Dupree*, 57 F.4th at 1279 ("We conclude that the text of § 4B1.2(b) unambiguously excludes inchoate crimes. Under *Kisor*, that concludes our analysis, and we have no need to consider, much less defer to, the commentary[.]"). Here, § 2B1.1 is unambiguous. So, the Court cannot consider the commentary and is bound by § 2B1.1's plain text.

In sum, as explained on the record at sentencing, Defendant's objection to the use of intended loss—namely, the total amount billed to Medicare by Defendant as opposed to the actual amount paid out by Medicare—is **SUSTAINED**. *See* Def.'s Mem. in Aid of Sentencing, [ECF No. 530], at 11–15; Def.'s Objs. to the Presentence Investigation Report, [ECF No. 526], at 4–5.

Therefore, the calculations found in paragraph 71 of Defendants' Presentence Investigation Report, [ECF No. 525], were adjusted accordingly at sentencing to reflect the proper loss figure under § 2B1.1.  *See* Paperless Minute Entry, [ECF No. 542].  Instead of the intended loss amount of $463,889,078, which generated a 28-level increase under § 2B1.1(b)(1)(O), the Court relied on the actual loss amount of $187,369,693.38, which generated a 26-level increase under § 2B1.1(b)(1)(N).

    **DONE AND ORDERED** in Miami, Florida, this 23rd day of August, 2023.

                                                                                      _____  
                                                                                      **RODOLFO A. RUIZ II**  
                                                                                      **UNITED STATES DISTRICT JUDGE**