UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-CR-80181-RAR

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MINAL PATEL,

        Defendant.
_____/

# REPORT AND RECOMMENDATION ON MOTION TO DISMISS PETITION TO ADJUDICATE ASSETS [ECF No. 572]

Petitioners Christopher Grant and Tymekah Ferguson ask for a ruling that their rights to certain forfeited assets is superior to the Government's rights to the same assets. I have reviewed the Verified Petitions, ECF Nos. 560, 564, the Motion to Dismiss, ECF No. 572 and the Response, ECF No. 575. No timely Reply was filed.[1] I am fully advised and this matter is ripe for decision.[2]

---

[1] Two materially identical petitions were filed, both verified by Mr. Grant and Ms. Ferguson. *Compare* ECF No. 560 *with* ECF No. 564. For simplicity, this Report and Recommendation will only cite to the first-filed pleading.

[2] Title 21, United States Code, Section 853(n), gives the petitioning party a right to an evidentiary hearing. Here, Petitioners affirmatively waived their right to a hearing. ECF No. 564 at 15.

Petitioners have not met their burden of showing an interest in the forfeited property that is superior to the Government's interest, so the Government's Motion to Dismiss the Verified Petitions should be GRANTED.

## I.  PROCEDURAL BACKGROUND

On December 14, 2022, a jury convicted Minal Patel of health care fraud and money laundering crimes that occurred between July 2016 and August 2019. ECF Nos. 391, 393. After the verdict, the Court entered an Amended Preliminary Order of Forfeiture that forfeited Mr. Patel's right, title, and interest in vehicles, funds seized from bank accounts, and real property ("the Forfeited Assets"). ECF No. 552.[3] After that, Mr. Grant and Ms. Ferguson filed a Verified Ancillary Petition under 21 U.S.C. § 853(n)(2) claiming an interest in the Forfeited Assets.

Petitioners were the relators in a False Claims Act *qui tam* action against Mr. Patel and others filed August 22, 2018, in the District of South Carolina. In that case, a default final judgment of approximately $616 million was entered on June 6, 2023. ECF No. 560-1. On July 9, 2023, Petitioners filed the default judgment with the Clerk of this Court under case number 23-mc-61300-WPD (the "Default Judgment"). ECF No. 560-6. On August 15, 2023, Petitioners filed the default judgment with the Broward County Clerk of Court. ECF No. 560-7. On August 24, 2023, the South Carolina judge awarded Petitioners "a relators' share of twenty-five percent (25%) which shall be paid out of any recovery obtained by the United States in regard to the

---

[3] The Preliminary Order of Forfeiture also entered a forfeiture money judgment against Mr. Patel for approximately $187 million.

Defendants LabSolutions, LLC and Minal Patel." ECF No. 560-2 at 9 (the "South Carolina Order").

The United States now moves to dismiss the Verified Petition for failure to state a claim upon which relief can be granted. ECF No. 572. The United States says Petitioners are unsecured creditors whose interest in the Forfeited Assets is inferior to the rights of the United States.

## II. LEGAL PRINCIPLES

Proceeds and property derived from, or involved in, federal health care fraud and money laundering crimes are forfeited to the United States by operation of law. 18 U.S.C. §982(a)(1), (a)(7). Procedurally, after conviction, "the court must determine whether the Government established the requisite nexus between the property and the offense of conviction. Once this determination is made, the court must promptly enter a [Preliminary Order of Forfeiture] without regard to any third party's interest in the property." *United States v. Davenport,* 668 F.3d 1316, 1320 (11th Cir. 2012) (citation omitted); Fed. R. Crim. P. 32.2(b)(2). The Preliminary Order of Forfeiture is incorporated into the defendant's sentence; it extinguishes the defendant's right, title, and interest in the property and transfers those interests to the United States. 21 U.S.C. § 853(a); Fed. R. Crim. P. 32.2(b)(4). Importantly, the Preliminary Order of Forfeiture leaves in place third party rights in the property. Under the relation-back doctrine, the Government's interest in the property is deemed to have vested at the time of the act that gives rise to the forfeiture. 21 U.S.C. § 853(c).

After the Preliminary Order of Forfeiture, the Court conducts ancillary proceedings in which third parties can assert they should get the property instead of the Government, because they have a right, title, or interest in the property that is superior to the Government's interest. 21 U.S.C. § 853(n); Fed. R. Crim. P. 32.2(c). Ancillary proceedings are the exclusive way for a non-defendant to assert a claim to the forfeited assets. 21 U.S.C. § 853(k). "In fact, § 853 affirmatively bars third-party claimants from intervening in a trial or appeal of a criminal case involving the forfeiture of the subject property, as well as commencing an action against the Government concerning the validity of an alleged interest in the property." *Davenport*, 668 F.3d at 1320 (internal citations omitted).

The third party initiates the ancillary proceeding by filing a verified petition setting forth "the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. §853(n)(3). The petitioner has the burden of showing by a preponderance of the evidence that (1) at the time of the acts giving rise to the forfeiture, it had a vested right, title, or interest in the property that was superior to the defendant's right, title, or interest, or (2) it acquired an interest in the asset as an innocent bona fide purchaser for value after the crime. 21 U.S.C. § 853(n)(6)(A). Once all ancillary proceedings end, the Court enters a Final Order of Forfeiture that extinguishes all remaining third-party claims and gives the Government clear title

4

to the assets. Fed. R. Crim. P. 32.2(c)(2); *United States v. Avila-Torres,* No. 17-20148-CR, 2019 WL 2177342, at *5 (S.D. Fla. May 20, 2019).

"Ancillary forfeiture proceedings that arise out of criminal cases are civil in nature and are thus governed by the Federal Rules of Civil Procedure." *United States v. Negron-Torres*, 876 F. Supp. 2d 1301, 1304 (M.D. Fla. 2012) (citing *United States v. Gilbert,* 244 F.3d 888, 907 (11th Cir. 2001)). So, to withstand a motion to dismiss for failure to state a claim, the verified petition must plausibly allege a sufficient interest in the property. *Ashcroft v. Iqbal,* 556 U. S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).[4]

Ancillary proceedings are to resolve claims to an identifiable asset. For that reason, an unsecured creditor of the defendant cannot assert a claim in an ancillary proceeding. *United States v. Eldick,* 223 F. App'x 837 (11th Cir. 2007); *United States v. Jewelry,* No. 14-cr-60094, 2015 WL 9700962, at *4 (S.D. Fla. Dec. 23, 2015), *report and recommendation adopted,* No. 14-cr-60094, 2016 WL 183314 (S.D. Fla. Jan. 13, 2016).

---

[4] Some Eleventh Circuit cases, including *Eldick*, use the term "standing" to describe whether a person has the necessary property interest to assert a claim through Section 853(n) ancillary proceedings. I interpret those decisions to be referencing so-called "statutory standing," which relates to whether a party has stated a claim upon which relief can be granted, not Article III constitutional standing, which affects the Court's subject matter jurisdiction. *See Palm Beach Concours, LLC v. SuperCar Wk. Inc.,* No. 22-cv-80888, 2022 WL 18034428, at *3 (S.D. Fla. Dec. 30, 2022) (discussing the distinction between statutory standing and Article III standing), *report and recommendation adopted,* No. 22-cv-80888, 2023 WL 249937 (S.D. Fla. Jan. 18, 2023).

### III. DISCUSSION

Petitioners make a series of arguments that rely on the same flawed premise — that they are differently situated from other third parties who want to assert claims to the Forfeited Assets because they are *qui tam* relators. Or, in their own words,

> By the very nature of Petitioners' Order of Default Judgment, and Relators' Share Order, the criminal forfeiture proceedings against defendants Minal Patel and LabSolutions, LLC constitute an "alternative remedy" under 31 USC 3730(c)(5), in which "the person initiating the action shall have the same rights in such proceedings as such person would have had if the action had continued under this section." 31 U.S.C. § 3730(c)(5).

ECF No. 575 at 1; *see also, e.g., id.* at 6 ("Petitioners have standing to assert their concrete legal interests in the Subject Property pursuant to the Relators' Share Order obtained by Petitioners and the FCA's 'alternate remedy' provision."); ECF No. 560 at 7 (Because criminal prosecution was an alternate proceeding under Section 3730(c)(5), Petitioners' right, title, or interest in the Forfeited Assets "vested at the same time that the United States obtained its right, title, or interest in the forfeited property [because] the relator's interest is not a direct interest in the Defendant's property itself, but rather it is an interest in the United States' interest in the property.").

This argument is directly foreclosed by the Eleventh Circuit's binding decision in *United States v. Couch,* 906 F.3d 1223 (11th Cir. 2018). Because Petitioners misread *Couch*, I first explain the legal principles that derive from that case.

6

### A. *United States v. Couch*

Even though a relator initiates a *qui tam* lawsuit on behalf of the United States, the Government may decide not to intervene and/or may decide to seek remedies through other legal proceedings (such as a criminal prosecution or administrative action). To try to prevent the relator from being unduly prejudiced if the Government chooses one of these other paths, Section 3730(c)(5) says the relator "shall have the same rights in such proceeding as [the relator] would have had if the [*qui* tam] action had continued."[5]

In *Couch,* a relator filed a *qui tam* lawsuit against a pain management clinic. 906 F.3d 1223. The Government did not intervene. Instead, the Government prosecuted the doctors who ran the clinic.

After the doctors were convicted, a preliminary order of forfeiture was entered. The relator tried to intervene in the forfeiture proceedings "to claim the share of the assets she would have been entitled to if the government had intervened in her *qui tam* action. In the alternative, she petitioned to assert an interest in the forfeited property under 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2." *Id*. at 1226. She conceded that she did not meet the requirements to be a third-party

---

[5] Section 3730(c)(5) says in full:

Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

7

claimant under 21 U.S.C. §853(n)(6). "The government argued [the relator] has no right to intervene under the alternate-remedy provision because her *qui tam* case remains pending — meaning she has not yet established a right to a relator's share. It further asserted that the False Claims Act does not permit intervention in criminal cases." *Id.*

The Eleventh Circuit first addressed the United States' argument that the relator lacked standing to participate in the forfeiture proceedings. The Court of Appeals treated this argument as a challenge to its subject matter jurisdiction, not a question of statutory standing. *Id.* at 1226–27 (discussing *Lujan v. Defs. Of Wildlife,* 504 U.S. 555 (1993) and *Spokeo, Inc. v. Robbins,* 578 U.S. 330 (2016)). It held, "[w]e have jurisdiction to decide whether [the relator's reading of Section 3730(c)(5)] is correct." *Id.* at 1227.

The Eleventh Circuit then turned to the merits questions of whether the criminal case was an "alternate proceeding" for purposes of Section 3730(c)(5) and, if so, whether Section 3730(c)(5) gave a relator the right to intervene in ancillary proceedings. *Id.* at 1228. It first noted that the criminal forfeiture statutes expressly make ancillary proceedings under Section 853(n) the exclusive way for a third party to assert a claim against forfeited assets. *Id.* (citing 21 U.S.C. § 863(k)). In contrast, "the alternate-remedy provision does not expressly provide a right of intervention in an 'alternate proceeding.' Neither does it define 'alternate remedy' to include criminal fraud prosecutions." *Id.* So, the Court of Appeals concluded as a matter of statutory construction that a criminal prosecution was not an "alternate proceeding" under

8

Section 3730(c)(5). Even though the relator's status as a relator did not give her the right to intervene in the ancillary proceedings, the Eleventh Circuit acknowledged that she could assert a claim under Section 853(n) if — like any other third party — she claimed to have a right, title, or interest in the forfeited property. *Id.*

So, the takeaway from *Couch* is that a person's status as a *qui tam* relator does not create a right to intervene in an ancillary forfeiture proceeding. Two other Courts of Appeals have reached the same conclusion. The Third Circuit in *United States v. Wegeler,* 941 F.3d 665 (3d Cir. 2019) held that "the rights to participate in a proceeding that the alternate-remedy provision gives a relator does not extend to a criminal proceeding." *Id.* at 669. Similarly, the Ninth Circuit in *United States v. Van Dyk,* 866 F.3d 1130 (9th Cir. 2017), held that Section 3730(c)(5) did not give the relator a right to intervene in a related criminal case.

Petitioners attempt to distinguish *Couch* on the grounds that they have established their right to a relator's share, whereas the *Couch* relator did not. It is true that the Government argued in *Couch* that the relator should lose because she had not yet established a right to a relator's share. But, that fact was not discussed as a basis for the Eleventh Circuit's decision. The Court of Appeals held that the "alternate remedy" provision of the False Claims Act did not override Section 853(k)'s bar on third-party intervention in ancillary proceedings.

### B. Do Petitioners State a Claim to the Forfeited Assets?

Under *Couch,* Petitioners have no more rights in these forfeiture proceedings than any other third-party claimant. So, I turn to the question whether Petitioners

9

can state a claim, that is, whether they have plausibly alleged a sufficient right, title, or interest in the Forfeited Assets.[6]

Petitioners argue that they have an interest in the Forfeited Assets because of the Default Judgment in the *qui tam* case and/or the South Carolina Order. *See, e.g.,* ECF No. 560 at 6, 10–11 (Petitioners were in privity with the United States in the *qui tam* litigation, so "the United States' interests are identical to that of the Petitioners and *res judicata* applies."). I reject these arguments.

Even assuming the Petitioners accrued the same rights as the Government in the *qui tam* litigation, that litigation did not vest Petitioners with the kind of "right, title, or interest" in the Forfeited Assets necessary to sustain a claim under Section 853(n). In short, Petitioners lack statutory standing.

The filing of the *qui tam* action did not create any property interest in Mr. Patel's assets. At best, the later Default Judgment created a lien in favor of the Government on Mr. Patel's real property, which vested on or after June 6, 2023 — the date of the judgment. *See* 28 U.S.C. §§ 3201, 3203(b). The Default Judgment did not create a lien or other property interest in Mr. Patel's non-real property. Under both federal and Florida law, additional steps were necessary to perfect that lien interest. *See, e.g.,* 28 U.S.C. § 3203(b) (judgment lien on personal property accrues when property is levied; lien dates from the time of the levy); 28 U.S.C. §§ 3203(d), 3102(d) (personal property levied when the United States Marshal takes possession

---

[6] No one challenges this Court's subject matter jurisdiction to consider Petitioner's claim.

10

of it; real property levied when the Marshal posts the writ of execution and notice of levy on the property); 28 U.S.C. §§ 1962, 1963; *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* 805 So. 2d 835, 839 (Fla. 4th DCA 2001) (judgment must be domesticated before lien accrues); Fla. Stat. § 55.503 (same). And, any such lien interest would have vested in or after June 2023.[7]

Through the criminal conviction and the relation-back doctrine, the Government's interest vested between 2016 and 2019. It therefore predates any interest allegedly arising from the Default Judgment. So, whatever property interest (if any) that Petitioners got through the Default Judgment was not vested before Mr. Patel's crimes nor is it otherwise superior to the Government's interest in the Forfeited Assets.[8]

Similarly, the South Carolina Order did not create any property interest in the Forfeited Assets. It gave Petitioners a legal claim to 25% of the *qui tam* recovery and said that this claim should be funded from the forfeiture proceeds. But, it did not grant Petitioners any right, title, or interest in any of the specific Forfeited Assets. At most, it gave Petitioners a claim to a portion of the forfeiture *recovery*, not to any specific underlying Forfeited Asset. As discussed above, the forfeiture recovery is not completed until a Final Order of Forfeiture is entered and title transfers to the United States. A claimant like Petitioners who merely holds an unsecured right to be paid

---

[7] I do not reach the question whether any lien rights arising from the Default Judgment belong to Petitioners or to the Government. Either way, those rights post-date the Government's interest in the Forfeited Assets.

[8] Petitioners do not claim to be innocent bona fide purchasers.

11

has no statutory standing to challenge a forfeiture. *See, e.g., Eldick,* 223 F. App'x at 840–41; *see also United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) ("Section 853 requires more than a showing of a legal interest in the debtor's property. It requires that the interest exist in the property subject to forfeiture."). And, even if the South Carolina Order created a property interest in the Forfeited Assets, that interest vested in 2023, long after the Government's interest vested.

Finally, Petitioners argue that their interest in the Forfeited Assets relates back to 2016 because they are partial assignees of the United States whose "interest in the Subject Property is *identical* to that of the United States." ECF No. 575 at 18 (emphasis in original) (citing *Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765 (2000)). They argue that their interest coincides with the Government's interest because their *qui tam* claim was "on behalf of, and in the interest and name of the United States, as the real party in interest." *Id.* at 19.

This argument conflates two independent concepts. Criminal forfeiture "is a form of punishment imposed by the jury to divest the criminal defendant of the profits of the illegal activity for which he has been convicted." *United States v. Gilbert*, 244 F.3d 888, 919 (11th Cir. 2001) (citations omitted). When this punishment is imposed, the Government takes the property in its role as sovereign prosecutor. *Id.* (citing *United States v. Seifuddin,* 820 F.2d 1074, 1076–77 (9th Cir. 1987)). In contrast, "relators are simply civil litigants" who bring a claim on behalf of the United States. *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 755 (5th Cir. 2001). They cannot exercise the sovereign's criminal prosecutive powers. *Linda R.S. v. Richard D.*, 410

U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Whatever rights Petitioners might have as a partial assignee of the Government's *qui tam* civil damages claim, they have no legal interest in the criminal prosecution, so they do not accrue any property rights from the criminal forfeiture. And, even a successful *qui tam* damages claim does not earn the Government (and derivatively the relator) a property interest in the defendant's property. Therefore, being partial assignees of the damages claim did not give Petitioners a vested interest in the Forfeited Assets.

Petitioners rely heavily on the unpublished District Court decision in *United States v. Bisig,* No. 100CV335JDTWTL, 2005 WL 3532554, at *2 (S.D. Ind. Dec. 21, 2005), for the idea that the criminal forfeiture proceedings are an "alternate proceeding" under the False Claims Act, so they should be allowed to intervene. ECF No. 575 at 7–10. In *Couch,* the Eleventh Circuit noted that District Courts, including the court in *Bisig,* were divided on whether a a criminal fraud prosecution was an "alternative remedy." *See* 906 F.3d at 1228 n.1. After making this observation, the *Couch* Court ultimately disagreed with *Bisig*'s holding. Whatever the merits of *Bisig,* this Court must follow *Couch,* which holds that Petitioner's status as *qui tam* relators gives them no special status in these forfeiture proceedings.

Petitioners also cite to the recent District Court decision in *United States ex rel. Rushing v. Lick*, No. 1:20-CV-210-SA-DAS, 2024 WL 170762 (N.D. Miss. Jan. 16, 2024). That case also involved a *qui tam* case and a related criminal conviction with

forfeitures. After the criminal sentencing, the Government intervened in the *qui tam* case. A default judgment was later entered. The Government and relator agreed that the relator would receive 15% of "all money collected" on the judgment, including forfeited assets that "had been liquidated by the United States Marshals Service." *Id.* at *1. The Government and the relator then jointly asked for an Order directing the Marshal to pay the relator 15% of the criminal forfeiture proceeds.

The court framed the issue before it as "whether a relator (Rushing) may recover a portion of a criminal forfeiture order in a separate criminal case against the defendant." *Id.* at *2. It ultimately held that Section 3730(c)(5) authorized the relator to receive a share of the forfeiture proceeds.

The *Rushing* decision has no effect on the issues before this Court. First, it is a non-binding decision from outside the Eleventh Circuit. Second, it did not involve an effort to assert a claim in an ancillary forfeiture proceeding. Third, it conflicts with binding Eleventh Circuit precedent in *Couch* to the extent it holds that "the alternate remedy provision [of the FCA] applies to a criminal forfeiture." *Id.* at *2. Fourth, at most, it says that a *qui tam* relator can take its relator's share from funds that have been finally forfeited to the United States. That issue is not before this Court.

## IV. CONCLUSION

Ancillary forfeiture proceedings adjudicate vested property interests in the specific assets to be forfeited. Petitioners have not met their burden of plausibly pleading that they have a right, title, or interest in any of the Forfeited Assets that

existed prior to Mr. Patel's crimes. So, their Verified Petitions must be dismissed for failure to state a claim upon which relief can be granted.

Petitioners may be able to enforce that South Carolina Order other ways, including possibly from funds that have been finally forfeited to the United States. This Report and Recommendation addresses only whether the Petitioners can claim their relator's share through ancillary forfeiture proceedings; without a vested superior property interest in identifiable assets, they cannot.

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court GRANT the Motion to Dismiss, ECF No. 572.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodolfo A. Ruiz, II, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 18th day of March 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE